**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Luisa Janssen Harger Da Silva, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| New York City Transit Authority, | ) |
| Metropolitan Transportation Authority, and | ) Jury Trial Demanded |
| Raqia Shabazz, | ) |
| | ) Civil Action No. |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## INTRODUCTION

Plaintiff, Luisa Janssen Harger Da Silva, files this Complaint against Defendants, New York City Transit Authority, Metropolitan Transportation Authority, ("Authorities") and Raqia Shabazz, the operator of said the subway train that struck the plaintiff.  The defendants herein were negligent in the operation of the subway train that struck the plaintiff as the Operator knew or should have known the plaintiff was on the tracks and had the opportunity with the use of reasonable care to stop the train before it struck the plaintiff.

The plaintiff herein was waiting for a subway at the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York when she fainted and fell onto the tracks.  After falling onto the tracks, as will be detailed herein, the subway negligently struck the plaintiff, a University student visiting from Brazil and horrifically amputated her left arm above the elbow and her left leg above the knee.

Upon information and belief, the Authorities, according to their own published statistics have been on notice that in the last 15 years approximately 400 – 750 people have been killed

1

after being struck by the Authorities' subways.  Upon information and belief, an additional 1,500 people have been struck by the Authorities' subways.  Said train strikes often result in catastrophic injuries such as amputations of body parts.  Upon information and belief almost all of the deaths and the more than a thousand catastrophic injuries could have been prevented had the Authorities used platform edge protection to stop people from falling onto the subway tracks. Upon information and belief since the Air Train has commenced operations, utilizing platform edge doors no passengers have been struck by trains.  If the Authorities had installed any platform edge  protection at the Atlantic Avenue- Barclays Center Subway Station the plaintiff would not have fallen onto the tracks.

Upon information and belief, the Authorities have failed to follow recommendations for the use of platform edge safety, have failed to conduct adequate studies, have provided misleading data, and have failed to take any action to protect passengers from falling into the tracks.  The Authorities through their signage program have actually attempted to shift their nondelegable duty to keep their subway stations safe to the general public by using stick figure signs to indicate that if someone looks sick or is intoxicated, members of the public should go and assist the person to try to stop them from falling onto the tracks.

Upon information and belief, the Authorities were aware, based upon more than 15 years of statistics prior to the plaintiff fainting and falling onto the tracks, that it was a moral certainty that innocent people, such as the plaintiff, would fall onto the tracks if the Authorities did not take steps to install platform edge safety devices.  Upon information and belief platform edge doors, gates, barriers and/or other technology have been known to the Authorities for more than 10 years prior to the plaintiff being injured, and the Authorities chose to ignore their obligation to the public as well as the plaintiff and they have turned their back on safety.  As the

2

Authorities, have turned their backs on the public and continue to allow families and lives to be destroyed, despite having notice of the danger, the Authorities should be stripped of their shield of immunity and the Authorities should be required to accept responsibility for turning their backs on their sacred obligation of public safety.  Upon information and belief, only by removing the shield of governmental immunity will the Authorities finally be forced to take responsibility for the horrific trail of dead bodies and ruined lives which defendant's own statistics detail, and which resulted from defendant's failure to use reasonable care in the operation of their subway stations.

### NATURE OF THE ACTION

1.      Plaintiff is seeking all available relief for the personal injuries she sustained due to the negligence of the defendants.  The following allegations are based on plaintiff's personal knowledge and upon information and belief of the plaintiff.

2.      Plaintiff seeks damages for personal injuries she sustained due to the negligence of the defendants in the operation, ownership, control, maintenance, and design of their subway trains, tracks, platforms and communications systems.

### JURISDICTION AND VENUE

3.      Plaintiff, Luisa Janssen Harger Da Silva was and still is a resident of Florianopolis, SC – Brazil.

4.      Defendant, New York City Transit Authority was and still is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 130 Livingston Street, Brooklyn, New York, 11201.

5.      Defendant, New York City Transit Authority was and still is a public benefit corporation duly organized under and by virtue of the laws of the State of New York, with offices at 130 Livingston Street, Brooklyn, New York, 11201.

6.      Defendant, Metropolitan Transportation Authority, was and still is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 2 Broadway, New York, New York, 10017.

7.      Defendant, Metropolitan Transportation Authority, was and still is a public benefit corporation duly organized under and by virtue of the laws of the State of New York, with offices at 2 Broadway, New York, New York, 10017.

8.      Upon information and belief, defendant, Raqia Shabazz, was and still is a resident of the State of New York.

9.       There is complete diversity of citizenship between plaintiff and defendants.

10.     The amount in controversy between the parties exceeds the sum of $75,000 exclusive of interest and costs.

11.     The jurisdiction of this Court is proper under 28 U.S.C. 1332(a)(2).

12.     Venue in this district is proper under 28 U.S.C. 1391 because a substantial part of the events giving rise to this action occurred in this district.

13.     Upon information and belief, Defendants regularly conduct business in this district.

## THE PARTIES

14.     Plaintiff, Luisa Janssen Harger Da Silva was and still does reside in Florianopolis, SC – Brazil.

4

15.     Upon information and belief, defendant, New York City Transit Authority was and still is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 130 Livingston Street, Brooklyn, New York, 11201.

16.     Upon information and belief, defendant, Metropolitan Transportation Authority, was and still is a Public Authority duly organized under and by virtue of the laws of the State of New York, with offices at 2 Broadway, New York, New York, 10017.

17.     Upon information and belief, defendant, Raqia Shabazz, a resident of the State of New York was the operator of the northbound B train which struck plaintiff.

18.     That heretofore and on or about the 26th day of October, 2016, plaintiffs Notice of Claim was duly served upon and filed with the defendants New York City Transit Authority and Metropolitan Transportation Authority, within ninety (90) days after the cause of action herein accrued.

19.     That prior to the commencement of this action, a statutory hearing was conducted of the plaintiff by defendants New York City Transit Authority and Metropolitan Transportation Authority, on July 19, 2017.

20.     That at least thirty (30) days have elapsed since the demand or claim upon which this action is predicated was presented to defendants New York City Transit Authority and Metropolitan Transportation Authority for adjustment and they have neglected and/or refused to make adjustments or payment thereof.

21.     That this action is commenced not more than one year and ninety days after the cause of action accrued.

22.     That plaintiff has met all conditions precedent for making and filing this lawsuit.

## **FACTS PRESENTED**

23.     On August 2, 2016 plaintiff, Luisa Janssen Harger Da Silva, a 21-year-old

architectural student from Brazil, was in New York visiting her boyfriend.  Earlier that day they

had met for a late lunch and after work plaintiff once again met her boyfriend in lower Manhattan.

They both took the subway from Manhattan to Brooklyn, with the intention of shopping at the

Atlantic Terminal Target store.  Plaintiff and her boyfriend had finished shopping at Target, where

they had purchased household items and some food and were heading back to the boyfriend's

apartment for supper.

24.     Plaintiff and her boyfriend entered the Atlantic Avenue-Barclays center subway

station with the intent of taking a northbound, "B" or "Q" train and at approximately 7:00 p.m.

and were waiting on the northbound "B" and "Q" platform close to the stairway where they had

descended to the platform.  The platform was not crowded and plaintiff recalls a female performer

who was singing opera in the station.  There was no train in the station, plaintiff and her boyfriend

were waiting for a train and were talking.  There was no train entering the station, and plaintiff did

not see or hear a train approaching the station, when plaintiff fainted and fell onto the tracks.

Plaintiff had not been sick earlier in the day and does not suffer from fainting spells.  Upon

information and belief, it was only after the plaintiff was on the tracks that the train entered the

station.

25.     Plaintiff was struck by the train and dismembered.  Plaintiff's left arm above the

elbow was severed above the elbow.  Plaintiffs left leg was severed above the knee.  Plaintiff

required extensive medical care, as well as multiple surgeries at Bellevue Hospital over her

approximate 24 day stay, including but not limited to surgeries to repair the wound sites, and

extensive skin grafting to repair the wound sites.  Said grafting left extensive scarring.

6

26.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority owned the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

27.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees operated the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

28.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees managed the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

29.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees controlled the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

30.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees maintained the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

31.      That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees designed the subway platform,

subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

32.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority leased the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

33.     That on August 2, 2016, and at all times herein mentioned, Metropolitan Transportation Authority owned the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

34.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees operated the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

35.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees managed the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

36.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees controlled the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays

Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

37.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees maintained the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

38.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees designed the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

39.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees leased the subway platform, subway tracks and subway station known as the Atlantic Avenue- Barclays Center Subway Station for the northbound B and Q line, in the County of Kings, City and State of New York.

40.     That on August 2, 2016, and at all times herein mentioned, defendant, New York City Transit Authority owned the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

41.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees operated the subway train known as

9

the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

42.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees managed the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

43.     That on August 2, 2016, and at all times herein mentioned, defendant, New York City Transit Authority its agents, servants and/or employees controlled the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

44.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees maintained the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

45.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority its agents, servants and/or employees repaired the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

46.     That on August 2, 2016, and at all times herein mentioned, defendant New York City Transit Authority leased the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

47.    That on August 2, 2016, and at all times herein mentioned, Metropolitan Transportation Authority owned the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

48.    That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees operated the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

49.    That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees managed a subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

50.    That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees controlled the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

51.    That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees maintained the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

52.    That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority its agents, servants and/or employees repaired the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

53.     That on August 2, 2016, and at all times herein mentioned, defendant, Metropolitan Transportation Authority leased the subway train known as the 1848 "B" BBC/145 train which operated from Brighton Beach, Brooklyn to Bedford Park, Bronx, New York.

54.     That on August 2, 2016, and at all times herein mentioned, defendant Raqia Shabazz, was a train operator employed by defendant New York City Transit Authority.

55.     That on August 2, 2016, and at all times herein mentioned, defendant Raqia Shabazz, was a train operator employed by defendant Metropolitan Transportation Authority.

56.     That on August 2, 2016, and at all times herein mentioned, defendant Raqia Shabazz, was operating the aforementioned northbound "B" train at approximately 7:07 p.m., with the permission, knowledge and consent, and within the scope of their employment with defendant New York City Transit Authority.

57.     That on August 2, 2016, and at all times herein mentioned, defendant Raqia Shabazz, was operating the aforementioned northbound "B" train at approximately 7:07 p.m., with the permission, knowledge and consent, and within the scope of their employment with defendant Metropolitan Transportation Authority.

58.     That on August 2, 2016, there existed a "B" train New York City subway line with an Atlantic Avenue- Barclay Center subway stop, with a subway station, subway platform and subway tracks thereat.

59.     At the location of the incident in question, there were no platform edge safety devices, such as doors, railings, walls, or any other device to prevent a passenger or straphanger from falling onto the tracks.

60.     At the location of the incident in question, there was no "intrusion technology" or other technology which can detect people who have fallen onto the tracks or are present on the

tracks so as to alert the train operator or other employees of the Authorities so that they may stop the train before hitting someone.

61.     As a result of the negligence of the defendants, plaintiff was dismembered, her life altered, her ability to enjoy life was greatly diminished and she continues to suffer daily as a result of the injuries she suffered.  Every action that she takes requires thought and effort.  For example, as plaintiff cannot drive and the transportation for wheelchair bound people is difficult and limited, plaintiff must plan each trip and factor in how to get from one location to another and the increased time it will take.  Furthermore, plaintiff has finished 4 ½ years out of the 5 years required by her University to become a licensed Architect and Urban Planner.  The Architect and Urban Planner job requires one to actually go to the work site and access sites with limited or no handicap access. This will make her obtaining a job in her chosen profession extremely difficult if not impossible.

62.     Plaintiff required and continues to have extensive physical therapy, psychological therapy and therapy in regard to her left leg and left arm and for her leg prosthesis.  Plaintiff is to date is still effectively confined to a wheelchair and can only take a few steps using her only recently received prosthesis.  The process of fitting and getting used to the prosthesis is painful.  Currently plaintiff is on a waiting list to obtain a prosthesis for her arm, said prosthesis will only be cosmetic in nature.  The fitting of the prosthesis is a difficult, lengthy and extremely painful process.  Plaintiff continues to suffer from "phantom" pain to the parts of her body that were lost due to the acts of the defendants, their agents, servants and/or employees.  Plaintiffs life has been upended and changed and will continue to change due to the injuries sustained.

## AS AND FOR A FIRST CAUSE OF ACTION
### negligence in the operation of the subway train

63.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "62" of this complaint, with the same force and effect as though more fully set forth at length herein.

64.     That on August 2, 2016, plaintiff, Luisa Janssen Harger Da Silva, was lawfully on the aforesaid subway platform.

65.     That on August 2, 2016, while plaintiff, Luisa Janssen Harger Da Silva, was lawfully at the aforesaid location, plaintiff was caused to fall onto the tracks/roadbed as a result of the defendants' negligence in failing to properly design, repair and maintain the aforesaid platform.

66.     That on August 2, 2016, the aforesaid northbound subway train was not yet in the station when plaintiff fell onto the tracks.

67.     That on August 2, 2016, at approximately 7:07 p.m., the aforementioned "B" train did approach and pull into the Atlantic Avenue- Barclays Center Subway station.

68.     That on August 2, 2016, Defendant, Raqia Shabazz, was operating the aforesaid northbound "B" train, and as she approached and entered the Atlantic Avenue- Barclay Center subway station, Raqia Shabazz saw the plaintiff on the tracks/roadbed.

69.     That on August 2, 2016, Defendant, Raqia Shabazz, was operating the aforesaid northbound "B" train, and as it approached and entered the Atlantic Avenue- Barclay Center subway station, Raqia Shabazz failed to see the plaintiff on the tracks/roadbed until after the train struck her.

70.     That on August 2, 2016, at the location, the motorman, operator, conductor and crew of the aforesaid subway train were employed by defendant New York City Transit Authority.

71.     That on August 2, 2016, New York City Transit Authority, via the said train's motorman, operator, conductor and crew, had adequate prior notice that plaintiff, Luisa Janssen Harger Da Silva, was on the tracks at the aforesaid subway station and with the exercise of reasonable care could have been able to stop the train before it hit the plaintiff.

72.     That on August 2, 2016, via the said train's motorman, operator, conductor and crew had adequate prior notice and should have been aware that plaintiff Luisa Janssen Harger Da Silva was on the tracks at the aforesaid subway stop.

73.     That on August 2, 2016, defendant, New York City Transit Authority, its agents, servants, and/or employees, nevertheless  carelessly and negligently struck plaintiff with said train

74.     That on August 2, 2016, defendant, New York City Transit Authority, its  agents, servants, and/or employees, nevertheless carelessly  and  negligently caused,  permitted  and allowed  its train to hit the plaintiff.

75.     That on August 2, 2016, at the aforementioned location,  the motorman, operator, conductor and crew of the aforesaid subway train were employed by defendant, Metropolitan Transportation Authority.

76.     That on August 2, 2016,  defendant  Metropolitan Transportation Authority, via the said train's motorman, operator, conductor and crew, had adequate  prior notice that plaintiff, Luisa Janssen Harger Da Silva, was on the tracks at the aforesaid subway station and with the exercise of reasonable care could have been able to stop the train before it hit the plaintiff.

77.     That on August 2, 2016,  defendant  Metropolitan Transportation Authority, via the said  train's  motorman, operator,  conductor and crew had adequate  prior notice  and should

have been aware that plaintiff Luisa Janssen Harger Da Silva, was on the tracks at the aforesaid subway stop.

78.      That on August 2, 2016, Metropolitan Transportation Authority, its agents, servants, and/or employees, nevertheless carelessly and negligently struck plaintiff with said train.

79.      That on August 2, 2016, defendant, Metropolitan Transportation Authority, its agents, servants, and/or employees, nevertheless carelessly and negligently caused, permitted and allowed its train to hit the plaintiff.

80.      That on August 2, 2016, prior to entering the Atlantic Avenue- Barclays Center Subway station, there is a signal timer with a speed restriction.

81.      That on August 2, 2016, the aforementioned subway train, operated by defendant Raqia Shabazz, entered the station at a speed equal to or less than the posted speed restriction.

82.      That on August 2, 2016, the aforementioned subway train, operated by defendant Raqia Shabazz entered the station at a speed greater than the posted speed restriction.

83.      That on August 2, 2016, defendant Raqia Shabazz failed to apply the emergency brakes to the aforementioned subway train in a timely manner so as to prevent the train from striking the plaintiff.

84.      That on August 2, 2016, defendant Raqia Shabazz failed to stop the aforementioned subway train before the lead car struck the plaintiff's body.

16

85.     That on August 2, 2016, the wheels of the lead car (car #5148) of the aforementioned subway train, which was being operated by defendant Raqia Shabazz, ran over and struck plaintiff's body.

86.     That on August 2, 2016, the aforementioned subway train came to an emergency stop due to plaintiffs body activating the tripping device mechanism located on the lead car of the train.

87.     That on August 2, 2016, the aforementioned subway train was equipped with an event data recorder ("EDR").

88.     That on August 2, 2016, the EDR recorded information and data regarding the aforesaid occurrence.

89.     That defendants downloaded the information and data recorded by the EDR after the aforesaid occurrence.

90.     The defendants investigated the event and aftermath of the subway train striking the plaintiff.

91.     The defendants investigated the event and aftermath of the subway train striking the plaintiff and took videos and photographs of the scene.

92.     Pursuant to the FRCP, the defendants their agents, servants and/or employees were required to file reports with the Public Transportation Safety Board (PTSB) regarding this incident.

93.     The defendants, their agents, servants and/or employees did not file any written reports nor submit any reports to the PTSB.

94.     The abovementioned occurrence, and the results thereof, were caused by the carelessness and/or negligence of the defendants, their agents, servants, employees and/or

licensees, in the ownership, operation, management, maintenance, design and control of the aforesaid subway platform.

95.     The above-mentioned occurrence, and the results thereof, were caused by the carelessness and/or negligence of the defendants and/or said defendants' agents, servants, employees and/or licensees in the ownership, operation, management, maintenance and control of the aforesaid subway train.

96.     That no negligence on the part of the plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

97.     It was foreseeable that the plaintiff and other members of the public might fall onto the subway tracks.

98.     The operator of the train, defendant Raqia Shabazz, negligently failed to see what was there to be seen as she approached the subway station causing her to run over the plaintiff.

99.     The Authorities were negligent, careless, reckless and grossly negligent in their ownership, management, operation, maintenance and control of the aforesaid subway train, failed to keep the aforesaid subway train under proper, prudent and reasonable control; in operating the aforesaid subway train at an excessive and unreasonable rate of speed under the conditions and circumstances prevailing at or prior to the occurrence; in operating said subway train without due care or regard for persons occupying the platform and/or who have fallen onto the roadbed or tracks thereat; in failing to keep a proper look out; in failing to observe what was available to be observed; in failing to observe the plaintiff; in failing to sound a warning; in operating the train while distracted; in negligently causing said subway train to violently strike and run over the plaintiff; in causing and permitting said subway train to be operated in a manner contrary and in violation of the statutes, codes,

ordinances, rules and regulations in such cases made and provided; in failing and omitting to stop or take proper evasive measures in order to avoid the aforesaid contact and collision between said subway train and the plaintiff, despite a full opportunity to avoid same; in operating said subway train with a total disregard for the health, safety and welfare of others; in failing to avoid contact with plaintiff, Luisa Janssen Harger Da Silva; in failing to make prompt and timely use of brakes; in failing to have adequate and efficient brakes; in operating said subway train in such a negligent manner so as to precipitate the aforesaid occurrence; in failing to slow down said subway train; in failing to observe signs, signals and/or traffic control devices at the time and place of the occurrence; in failing and omitting to take prompt, proper and suitable precautions for the plaintiff's safety and the safety of the public in general; and in failing to operate said subway train with due regard for the safety of others.

100.    That as a result of the aforesaid occurrence, plaintiff Luisa Janssen Harger Da Silva was rendered sick, sore lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo hospital and medical aid, treatment and attention; has suffered loss of enjoyment of life; was prevented from engaging in her usual occupation for a long period of time; and since some of her injuries are of a permanent nature, she will continue to suffer similar damages in the future.

101.    Due to Defendant's negligence plaintiff is entitled to recover from Defendants said amount of damages to be determined at time of trial, said amount greatly exceeds the jurisdictional requirements of this court.

### AS AND FOR A SECOND CAUSE OF ACTION
### negligence in the ownership, maintenance, and design of the platform edge

102.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "101" of this complaint, with the same force and effect as though more fully set forth at length herein.

103.     That on August 2, 2016, and at all times herein mentioned, it was the nondelegable duty of defendant New York City Transit Authority its agents, servants and/or employees to maintain the aforesaid subway platform, station and tracks, in a reasonably safe condition.

104.     That on August 2, 2016, and at all times herein mentioned, it was the nondelegable duty of Defendant Metropolitan Transportation Authority its agents, servants and/or employees to maintain the aforesaid subway platform, station and tracks in a reasonably safe condition.

105.     That on August 2, 2016, and at all times herein mentioned, it was the nondelegable duty of Defendant New York City Transit Authority, in its ownership and operation of the subway platform, to maintain the aforesaid subway platform, station and tracks, in a reasonably safe condition.

106.     That on August 2, 2016, and at all times herein mentioned, it was the nondelegable duty of Defendant Metropolitan Transportation Authority, in the ownership and operation of the subway platform, to maintain the aforesaid subway platform, station and tracks, in a reasonably safe condition.

107.     Upon information and belief, according to the Authorities own published statistics in the last 15 years approximately 400 – 750 people have been killed after being struck by the Authorities' subways.

108. Upon information and belief, more than 1,000 people have been struck by the Authorities' subway that were not killed but sustained catastrophic injuries.

109. It was foreseeable that the plaintiff, Luisa Janssen Harger Da Silva, and other members of the public could fall from the platform onto the subway tracks and roadbed and be struck by an approaching subway train thereat.

110. The aforesaid occurrence was caused by the negligence, carelessness, recklessness and gross negligence of defendants in the ownership, management, operation, maintenance and control of the aforesaid subway station and subway platform.

111. As of August 2, 2016, the defendants were aware that hundreds of people were killed and that more than a thousand were severely injured sustaining amputations and other catastrophic injuries by being struck by trains.

112. The Authorities have kept statistics of the hundreds of people killed and more than a thousand injured over the 15 years prior to the plaintiff being struck by the subway.

113. The Authorities were aware that if they installed platform edge doors, or any other platform edge safety equipment, such as railings, it would prevent people from being catastrophically injured or killed because it would be virtually impossible for anyone to fall onto the tracks.

114. The Authorities failed to conduct safety studies that would go to alleviating the risk of passengers falling onto the tracks.

115. The Authorities failed to conduct adequate safety studies that would go to alleviating the risk of passengers falling onto the tracks.

21

116.     The Authorities have altered statistics of such incidents and specifically the claims of the number of deaths that were related to suicides, to avoid their responsibilities for platform edge safety and down play the severity of the risk to the public.

117.     The Authorities are members of numerous transit and safety organizations and are intimately aware of numerous options that are available to protect passengers from falling onto the tracks or getting struck by passing trains and have ignored their non-delegable duty to keep the subway system safe by permitting and allowing the platform edge to remain in a dangerous condition.

118.     The Authority keeps statistics of customer contact incidents.  The Authority is aware that the Air Train has no customer contact incidents and only has minor incidents involving closing of doors.

119.     The Authorities, despite being aware of the success of Platform Edge Protection, have chosen to ignore that information and permit approximately 40-50 deaths a year and more than 100 people being struck by subways which often result in catastrophic injuries.

120.     The studies that the Authorities have conducted were not adequate and the number of people injured and killed by subways have provided enough notice to the Authorities that their subway platforms are not reasonably safe.

121.     The platform edges are points of particular danger and similar to areas next to roadsides that require greater protection than other areas which are not as dangerous.

122.     The New York City Transit Authority owns, operates and controls the subway station, in its proprietary capacity.

123.     The Metropolitan Transportation Authority owns, operates and controls the subway station, in its proprietary capacity.

124.    The Authorities were negligent, careless, reckless and grossly negligent in the ownership, management, operation, maintenance, design and control of the aforesaid subway station and platform, in failing to properly inspect, maintain, repair and design said platform; in failing to keep said platform clear from defects and hazards; in allowing and permitting a dangerous and defective condition to exist and remain on said platform; failing to prevent plaintiff, Luisa Janssen Harger Da Silva, f r o m  f a l l i n g  o n t o  the subway tracks and/or roadbed.

125.    That defendants New York City Transit Authority and Metropolitan Transportation Authority were f u r t h e r  negligent, careless, reckless and grossly negligent in their failure to install/utilize platform edge doors, platform edge rails, platform edge walls, platform edge safety barriers, and other platform edge safety devices to prevent plaintiff Luisa Janssen Harger Da Silva, as well as other straphangers, passengers and members of the general public from tripping, slipping, falling and being pushed onto the subway tracks and/or roadbed.

126.    That defendants The New York City Transit Authority and Metropolitan Transportation Authority were negligent, careless, reckless and grossly negligent in their failure to heed advice, recommendations, and results of their own and other studies, reports, assessments, trends, meetings, and proposals to install and /or utilize platform edge protection of any kind, including doors, platform edge railings, platform edge walls, platform edge safety barriers, safety technology that is readily available including but not limited to "intrusion technology" to detect whether a person is present on the tracks and other safety devices of which the defendants are aware and refuse to install onto the subway system to prevent plaintiff Luisa Janssen Harger Da Silva, as well as other straphangers, passengers and members

of the general public from being hit by the subway train because of tripping, slipping, falling or otherwise being on the subway tracks and/or subway roadbed.

127.     That as a result of the aforesaid occurrence, plaintiff Luisa Janssen Harger Da Silva, was rendered sick, sore lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo hospital and medical aid, treatment and attention; will undergo future medical treatment; has suffered loss of enjoyment of life; was prevented from engaging in her usual occupation for a long period of time; and since her injuries are of a permanent nature, she will continue to suffer similar damages in the future.

128.     That as a result of the foregoing, plaintiff has been damaged. Said amount of damages to be determined at time of trial, greatly exceeds the jurisdictional requirements of this court.

### AS AND FOR A THIRD CAUSE OF ACTION
### <u>negligence in failing to communicate with the train operator</u>

129.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through " 128" of this complaint, with the same force and effect as though more fully set forth at length herein.

130.     Plaintiff, Luisa Janssen Harger Da Silva, was caused to be injured after she fell from the platform onto the subway tracks by the acts and lack of actions of the defendants.

131.     The aforesaid injury was caused by negligence, carelessness, recklessness and gross negligence of defendants in that the Defendants, New York City Transit Authority. and Metropolitan Transportation Authority, their agents, servants, employees and executives,

24

including but not limited to the station agents and radio control/command center employees knew or should have known that plaintiff Luisa Janssen Harger Da Silva, was on the subway tracks and/or roadbed, and failed communicate said information to the train operator, defendant Raqia Shabazz; failed to take the proper precautions to advise and warn the train operator, defendant, Raqia Shabazz, that the plaintiff was on the tracks and/or road bed; failed to instruct train dispatchers, the power department, the switching department, and/or the train operator, and failed to use the communications and technology available to radio control/command to cut the electric power, stop or reroute the subway train that struck plaintiff Luisa Janssen Harger Da Silva; all of the foregoing created a dangerous and defective condition/situation that caused plaintiffs injuries.

132.    New York City Transit Authority and Metropolitan Transportation Authority their agents, servants, employees and executives, including but not limited to supervisors and/or Command, and defendant Raqia Shabazz, failed to take steps to cause the train to be re-routed or to stop the train before striking the plaintiff, Luisa Janssen Harger Da Silva, or failed to timely act so as to avoid striking of the plaintiff.

133.    The Authorities were negligent in the ownership, operation, maintenance and design of the tracks by failing to install "intrusion technology" or other technology that would warn the defendants that a person was on the track and allow them to stop the train sooner.

134.    The Authorities were aware based upon their own statistics that "intrusion technology" or other technology would protect people including the plaintiff, who fell or were present on the tracks from being hit by the subway trains.

135.    The Authorities were aware that if they did not install intrusion technology, motion sensors, or thermal image cameras, that their passengers and the public were at great

and unnecessary risk from being struck by subways once they fell onto or were present on the tracks.

136. That as a result of the aforesaid occurrence, plaintiff **Luisa Janssen Harger Da Silva,** was rendered sick, sore, lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo hospital and medical aid, treatment and attention; will undergo future medical treatment; has suffered loss of enjoyment of life; was prevented from engaging in her usual occupation for a long period of time; and since her injuries are of a permanent nature, she will continue to suffer similar damages in the future.

137. That as a result of the foregoing, plaintiff has been damaged. Said amount of damages to be determined at time of trial, greatly exceeds the jurisdictional requirements of this court.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**<u>negligence in the maintenance of the train and platform</u>**

138. Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "137" of this complaint, with the same force and effect as though more fully set forth at length herein.

139. That defendants New York City Transit Authority and Metropolitan Transportation Authority were negligent, careless, reckless and grossly negligent in the maintenance and upkeep of the train, the platform, and the station where the incident occurred.

140. That defendants New York City Transit Authority and Metropolitan Transportation Authority were further negligent, careless, reckless and grossly negligent in

their failure to properly maintain their platform and trains; failure to provide lighting on the platform sufficient to light the tracks; failure to provide adequate lighting on the platform so as to light the tracks; failure to properly maintain the lighting on the platform; failure to provide lighting for the train sufficient to light the tracks; failure to light the tracks sufficiently to detect a person on the tracks; failure to maintain the lighting on the train; failure to properly maintain the train in good working order so that it could stop in a timely fashion; failure to maintain the brakes and emergency stopping systems in good and correct working order; failure to maintain the brakes in sufficient working order so as to stop the train in sufficient time to avoid striking the plaintiff; in failing to properly repair and maintain the subway train.

141.    That as a result of the aforesaid occurrence, plaintiff, Luisa Janssen Harger Da Silva, was rendered sick, sore lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo hospital and medical aid, treatment and attention; has suffered loss of enjoyment of life; was prevented from engaging in her usual occupation for a long period of time; and since some of her injuries are of a permanent nature, s h e will continue to suffer similar damages in the future.

142.    That as a result of the foregoing, plaintiff has been damaged. S a i d amount of damages to be determined at time of trial, said amount greatly exceeds the jurisdictional requirements of this court.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Luisa Janssen Harger Da Silva, demands judgment against the defendants in a monetary sum far exceeding the jurisdictional limitations of this court (including but not limited to the minimum monetary prerequisite for diversity jurisdiction) as follows:

a.     An award of damages representing past pain and suffering;

b.     An award of damages representing future pain and suffering;

c.     An award of damages representing past medical expenses;

d.     An award of damages representing future medical expenses;

e.     An award of damages representing past and future lost earnings;

f.     An award of damages representing past and future costs of prosthesis';

g.     An award of prejudgment and post-judgment interest;

h.     An award of costs and expenses of this action together with reasonable attorneys', expert fees and an award of a service payment to the plaintiffs; and

i.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FED. R. CIV. P. 38(b), plaintiff, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: August 2, 2017                    By:      *s/Charles Gershbaum*
                                                  Charles Gershbaum

                                                  Gershbaum and Weisz, PC
                                                  192 Lexington Avenue, Suite 802
                                                  New York, NY 10016
                                                  Tel: (212) 385-2121
                                                  Charles@lawgw.com

                                                  David A. Roth,
                                                  Roth and Roth, LLP
                                                  192 Lexington Avenue, Suite 802
                                                  New York, NY 10016
                                                  Tel: (212) 425-1020
                                                  Droth@rothandrothlaw.com