# Roth & Roth, LLP

192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

March 19, 2018

By Electronic Case Filing System

United States Magistrate Judge Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re.: Harger Da Silva v. New York City Transit Authority, et al
      Case. No 1:17-cv-04550-FB-VMS

Dear Magistrate Scanlon:

  My office along with Co-Counsel, Gershbaum & Weisz, PC, represent the Plaintiff, Luisa Jansen Harger Da Silva, in the above referenced matter. We write in response to the Defendants' March 15, 2018 letter requesting to extend their time to supplement their initial disclosures regarding their qualified immunity defenses.

  As this case was recently transferred to your Honor, Plaintiff will briefly summarize some of the issues that were raised at the rule 26f conference.

  On August 2, 2016 Plaintiff, a 21-year-old architectural student from Brazil, was in New York visiting her boyfriend. They had entered the Atlantic Avenue-Barclays center subway station and were waiting for a subway train on the "B" and "Q" train platform. Plaintiff fainted and fell onto the subway tracks at approximately 7:00 pm. A subway train then entered the subway station and amputated the Plaintiffs left leg and left arm.

  The Plaintiff has two essential claims in this case. First that the municipal Defendants failed to install platform edge protection to stop people from falling into the tracks despite being aware of thousands of deaths, amputations and other very severe injuries due to subway trains striking people in the New York City subway system. According to a "customer contact with train report" issued by the municipal Defendants herein, in just a twelve-year period between

2001 and 2012 [1] there have been 522 deaths and more than 1600 injuries caused by people being struck by trains. Plaintiff claims that the Defendant Authorities, were and continue to, unnecessarily place the public in danger. As specifically stated in the complaint, to a "moral certainty" subway riders will continue to die and suffer severe injuries from falling into the tracks with the platforms current design based upon the Transit Authorities own signage.[2] Platform edge protection, screens doors, even fences or railings would prevent customers, including the Plaintiff, from falling into the tracks. The Plaintiff's other main claim is that the subway train was negligently operated and maintained, essentially that the train operator had the opportunity to stop the train, should have seen what was there to be seen, prior to hitting the Plaintiff, and negligently failed to do so.

 The basic defenses pursuant to the answer and statements made at the Rule 26 Conference are that the Transit Authorities will rely upon various governmental immunities to avoid responsibility for the happening of this incident and that the train operator stopped the train, reacted in a reasonable manner, and was not negligent.

The Defendants did not request Plaintiff's consent in filing this application and Plaintiff was first made aware of this request when it was received Via ECF filing. The Defendants did not contact our office to seek our consent and discuss the way in which this would affect the other deadlines that the Court set at the February 13, 2018 conference; initial disclosures due March 23, 2018, document and interrogatories requests due April 6, 2018 and responses to same are due May 11, 2018.

At the rule 26 meet and conferral, as well as during the Rule 26 Court Conference, Plaintiff proposed focusing primarily on the discovery of the immunity defenses as that will drive the manner and focus of the rest of the case. The proposal was that we conduct limited discovery by the exchanging of all the documents related to the investigation of the incident, deposing the Plaintiff, and her boyfriend, as well as the train operator, and other eyewitnesses to the event, which would preserve their memories of the incident. The extent to which the Plaintiff will seek discovery from all the Transit Authorities employees, their investigative techniques, the records created, and the possible accident reconstruction and the outstanding witnesses will be dependent on whether the Transit Authorities will be entitled to the immunity defenses and whether Plaintiff's claims regarding platform edge protection will survive summary judgement motions.

The basis of the Plaintiff's proposed plan was that it would avoid doing unnecessary and costly discovery and that if the Defendants did not agree to this phased discovery, Defendants would likely fail to meet every discovery deadline the court set.  Defendants refused this proposal and Plaintiff noted that only limited discovery would be sought from Plaintiff and that Defendants discovery burden would be onerous in light of their immunity defenses.  Further, Plaintiff explained at the Conference that Plaintiff did not even need Defendants' demands to exchange discovery, as the Plaintiff would (and has) provided all medicals in her possession,

---

[1] Defendants publish a record of customer contact with train incidents that is publicly available. Plaintiff exchanged same with Defendants despite this being a document created by the NYCTA/MTA.

[2] There are numerous signs throughout the subway system warning riders to not to become a statistic. One sign reads: "Stand Back! 141 people were struck by trains in 2012, 55 were killed."

authorizations for all relevant medical and school records, from both the United States and Brazil. Plaintiff's discovery obligations as to factual record exchanges are presently completed and will not need to be supplemented unless Defendants seek some additional records that would be unusual that Plaintiff could not anticipate. In contrast, it was pointed out that the Defendants would have a very difficult time obtaining the records regarding their immunity defenses, finding witnesses, documents and responding to Plaintiffs comprehensive discovery demands which would be forthcoming regarding their immunity defenses. Defendants noted during the Rule 26 Court Conference that the subway system was built as early as 1904 and that their immunity defense was somehow tied into the age of the system, which would of course give rise to discovery on that allegation as well.

Defendant served their Rule 26 disclosures as noted in their letter dated March 15, 2018 without addressing their immunity defenses. Plaintiff immediately informed the Defendants via email noting that there was no information regarding the various immunity defenses Defendants claimed they would be asserting during the Rule 26 conference. Defendants responded that the email was premature, although this is true, Plaintiff wanted to give the Defendants the opportunity to correct same before the disclosures were due.

Additionally, it should be noted that Defendants rule 26 disclosure Paragraph 21 states:

> 21. Additional Documents May Be Presently Unknown to New York City Transit Authority et al and it Reserves its Right to Supplement These Disclosures to the Extent That Discovery or Additional Investigation Reveals Further Evidence Supporting its Positions and Defenses. Upon Information and Belief, New York City Transit Authority et al May Rely Upon Documents, Data Compilations and Tangible Things Produced to it by Plaintiff if any.

Aside from the immunity defenses that Defendants admit were not addressed in their initial disclosures, also missing were very basic records and witnesses related to same, including video if any, audio communications related to the event and its investigation, as well as the event data recorder information related to this incident.

As predicted, Defendants need additional time to gather documents related to their immunity defenses, despite rejecting Plaintiff's offer to separate out the discovery so that the Defendants would be able to meet their discovery obligations. Plaintiff is never against extending a courtesy but would reiterate that the initial focus should be on a discovery timeline that can accommodate the extensive discovery that the Defendants will need to produce for their immunity defenses, while the parties conduct limited discovery related to the event, so that the scope and necessity of the additional discovery related to the event can be ascertained.

As Defendant did not contact Plaintiff to ask if we would consent to the extension, Plaintiff is obligated to request that if the Defendants are granted the extension, then the Defendants be required to supplement their initial disclosures with the video, audio, and the event data recorder information as well.

Plaintiff again requests that a discovery schedule be set with the timeline focused on the Defendants immunity defenses, while taking limited discovery and depositions related to the event for the reason stated above. If this proposal is something the Court would entertain, then Plaintiff respectfully requests a conference to set a new discovery schedule to address same. If the Court is not inclined to separate out the discovery, then Plaintiff requests that the other dates

contained within the current discovery schedule be changed to reflect the extension requested by the Defendants. Plaintiff's requests for production and interrogatories currently due April 6 will rely in part on the initial disclosures that will be exchanged by the Defendants, but this is problematic as under Defendants current request, that will not occur until April 27, 2018. Plaintiff requests that the Court extend the discovery schedule so that requests are due, May 11, 2018 and responses are due June 15, 2018 which follows the initial timeline and that a conference thereafter be scheduled at the Court's convenience.

          Respectfully
          S/*David A. Roth*
          David A. Roth

cc:
Smith, Mazure, Director, Wilkins, Young & Yagerman, PC
NYCTA Law Department
(Via ECF)