# KRINSKY, PLLC
### 160 BROADWAY • SUITE 603
### NEW YORK, NEW YORK 10038
### 212.543.1400
### WWW.KRINSKYPLLC.COM

PERY D. KRINSKY, ESQ.
WRITER'S DIRECT DIAL: 212.380.8262
WRITER'S DIRECT E-MAIL: PKRINSKY@KRINSKYPLLC.COM

October 11, 2018

**BY ECF**

Honorable Vera M. Scanlon
United States Magistrate Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re: *Da Silva v. New York City Transit Authority, et al.,*
> 1:17-cv-04550 (FB)(VMS)

Dear Judge Scanlon:

### PRELIMINARY STATEMENT.

The within letter is respectfully submitted on behalf of David Roth A. Roth, Esq., counsel in the above-captioned action for Plaintiff Luisa Janssen Harger Da Silva, and in *opposition* to the September 21, 2018 letter-motion ("Motion to Disqualify") of Smith Mazure ("Defense Counsel"), counsel for Defendants Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("NYCTA"). In a transparent attempt to deny Plaintiff the counsel of her choosing, Defense Counsel falsely accuses Mr. Roth of attorney misconduct and demands that Mr. Roth "be disqualified as counsel, sanctioned, or prohibited from further inappropriate contact with represented parties." (Motion to Disqualify, pp. 3-4.) Defense Counsel's claims of attorney misconduct and *ad hominem* attacks against Mr. Roth are unwarranted, and are legally and factually devoid of any merit; and accordingly, Defense Counsel's Motion to Disqualify should be denied in its entirety.

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 2

As Your Honor previously made clear, with language particularly relevant here:

> "'Motions to disqualify are generally *not favored*. They are often *tactically motivated*; they causes delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation....Although federal courts often look to state disciplinary rules for guidance, 'such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.'… In deciding whether to disqualify counsel, a court must balance 'the need to maintain the highest standards of the profession" against 'a client's right freely to choose his counsel.'
>
> ….Disqualification is appropriate *only* if the attorney's misconduct tends to '*taint the underlying trial*'….In deciding whether to disqualify counsel, a court must balance 'the need to maintain the highest standards of the profession' against 'a client's right freely to choose his counsel.' … the Court of Appeals has demanded 'a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel.'"[1]

As evidenced by the factual and legal discussion below, Defense Counsel has failed to meet the high burden of proof required for this Court to disqualify Mr. Roth. The burden is on the moving party (here Defense Counsel), of "demonstrating specifically how and as to what issues ... prejudice may occur,'" thereby warranting disqualification. *SEC v. Lek*, 2018 U.S. Dist. LEXIS 6704, at *10-11 (S.D.N.Y. Jan. 16, 2018), citing *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citation omitted). *Indeed, fatal to the Motion to Disqualify as a threshold*

---

[1] *Guan v. Long Is. Bus. Inst., Inc.*, 1:15-cv-02215, 2017 U.S. Dist. LEXIS 10490, at *23-46 (E.D.N.Y Jan. 24, 2017) (VMS) (emphasis added; internal citations and quotations omitted) (Report & Recommendation, ECF Docket No. 158 ["*Guan* Case Report & Recommendation"], a copy of which is attached hereto as "Exhibit A"); *see also Guan v. Long Is. Bus. Inst., Inc.*, 1:15-cv-02215, ECF Docket No. 162 (Memorandum & Order of the Honorable Carol Bagley Amon, dated March 6, 2017, adopting Your Honor's Report & Recommendation).

**KRINSKY, PLLC**

Honorable Vera M. Scanlon
October 11, 2018
Page 3

*matter, Defense Counsel does not allege that absent disqualification, this litigation will be tainted by Mr. Roth's continued representation of Ms. Da Silva.  See Araujo v. Macaire*, 2018 U.S. Dist. LEXIS 153728, at *14-15 (S.D.N.Y. Sep. 7, 2018) (PAE) (KNF) (movant's failure to establish continued "representation … poses a threat of taint to the trial in this action and his assertion of an appearance of impropriety alone is not sufficient to warrant [counsel's] disqualification … on ethical grounds") (internal citation omitted).

Accordingly,  we respectfully submit that there is a credible basis, in law and in fact, for Your Honor to deny Defense Counsel's Motion to Disqualify in its entirety, and grant such other and further relief, which as to this Court deems just, equitable and appropriate, including attorneys' fees and costs incurred in connection with responding to Defense Counsel's Letter Motion (a matter we leave to the Court's discretion).

Your undersigned counsel respectfully requests that Your Honor accept the within oversized Opposition Letter in light of the serious allegations set forth in Defense Counsel's Motion to Disqualify, which made it necessary:  to defend Mr. Roth against Defense Counsel's untrue claims of *supposed* attorney misconduct – including attorney fraud; and to defend against Defense Counsel's tactical stratagem to rid Plaintiff of the counsel of her choosing – Mr. Roth.

## SUMMARY OF THE ARGUMENT & THE RELEVANT FACTS.

The Motion to Disqualify is, at its core, predicated upon Defense Counsel's claim that, *supposedly*, Mr. Roth violated New York's "No-Contact" Rule 4.2(a) of New York Rules of Professional Conduct ("Rule" or "N.Y.R.P.C."), which provides, in relevant part, that "[i]n representing a client, a lawyer shall not communicate … about the subject of the representation

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 4

with a party ... represented by another lawyer in the matter, unless the lawyer has the prior consent

of the other lawyer or is authorized to do so by law."  Defense Counsel further alleges that in the

act of intentionally violating Rule 4.2(a), Mr. Roth also intentionally made false statements by

omission in violation of Rule 4.1, and engaged in intentional acts of dishonesty, fraud, deceit *and*

misrepresentation in violation of Rule 8.4(c).  (Motion to Disqualify, p. 3)

The alleged attorney misconduct concerns Mr. Roth's presence at an August 21, 2018

"town hall-style public meeting" ("Town Hall Public Meeting"), at York College, sponsored by

NYCTA in connection with its "Fast Forward" Plan.[2]  Defense Counsel claims that "Mr. Roth

attempted to gain unauthorized discovery by making direct contact with a high-ranking

representative of the MTA and NYCTA with speaking power [Andy Byford, President of

NYCTA], without disclosing his relationship to litigation involving the NYCTA, and without

contacting counsel representing NYCTA for consent."  (Motion to Disqualify, p. 2)

The *now-historic facts* make it clear that Defense Counsel's allegations of attorney

misconduct have been created from whole cloth for the purpose of manufacturing a basis to file its

tactically motivated Motion seeking Mr. Roth's disqualification in the case at bar (and, as

discussed below, *in three other cases not before Your Honor*).  We say "now-historic," because

the factual statements asserted by Defense Counsel, and which form the basis for their Motion to

Disqualify, cannot reasonably and credibly be reconciled with *Mr. Roth's recorded words* at the

---

[2] *See* MTA Press Releases, "MTA NYC Transit to Host First Town Hall Meeting on 'Fast Forward' Plan to Modernize Subways, Buses & Paratransit…." (Aug. 19, 2018) (a copy of which is attached hereto as "Exhibit B").

K~RINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 5


Town Hall Public Meeting held on August 21, 2018, which was video recorded and subsequently

transcribed on or about August 30, 2018, in advance of Defense Counsel filing its Motion to

Disqualify on September 21, 2018.[3]

    As evidenced by the following assertions set forth in their Motion to Disqualify, Defense

Counsel attempts to intimate, through innuendo and hyperbole that Mr. Roth – in a Perry Mason-

like moment – somehow cross-examined Mr. Byford about Ms. Da Silva's case, peppering him

with hostile, lawyer-like questions for an extended period of time, with the intent of somehow

breaking Mr. Byford into confessing:

- *Supposedly*, "Mr. Roth appeared before the panel and ***questioned*** Andy Byford … about platform edge safety in blatant violation of Rule 4.2(a)…." (Letter Motion, p. 1; emphasis added.)

- *Supposedly*, "[t]he salient portion with the ***question*s** posed by Mr. Roth to President Byford is reflected in pages 81 through 84 of the transcript." (Letter Motion, p. 1; internal footnote omitted.)

- *Supposedly,* "Mr. Roth … without disclosing his status as the attorney representing Ms. Harger Da Silva … proceeded to ***question*** President Byford on that very issue as it relates to individuals being contacted by subway trains allegedly because of the absence of those devices." (Letter Motion, pp. 1-2; emphasis added.)

- *Supposedly,* "Mr. Roth ***questioned*** Mr. Byford about whether NYCTA would be installing platform safety devices at all stations as part of the Fast Forward initiative." (Letter Motion, p. 2; emphasis added.)

---

[3] The video recording of the Town Hall Public Meeting is available at the following website link: https://drive.google.com/file/d/1yBGBW5DntTJ8yoW0Oz6-2YUrkAmyY6Vk/view (Mr. Roth appears at time-stamp 1:47:35); and the written transcription of the video recording of the Town Hall Public Meeting is attached hereto as "Exhibit C" (Mr. Roth appears at pages 81-84).

**KRINSKY, PLLC**

Honorable Vera M. Scanlon
October 11, 2018
Page 6

- *Supposedly,* at the Town Hall Public Meeting, Mr. Roth had a "***conversation***" with Mr. Byford." (Letter Motion, p. 2; emphasis added.)

- *Supposedly,* " … Mr. Roth made contact with a high-ranking potential witness [Mr. Byford] … without disclosing his representation of Ms. Harger Da Silva … pertaining to the propriety of platform screen doors – the very issue Mr. Roth raised in his ***questions***." (Letter Motion, p. 3; emphasis added.)

- *Supposedly,* Mr. Roth violated Rule 4.2(a) by his "failure to disclose his role … and ***questioning*** President Byford concerning the gravamen of that complaint [in Ms. Da Silva's case]…." (Letter Motion, p. 3; emphasis added.)

It is respectfully submitted that the foregoing assertions by Defense Counsel simply cannot be reconciled with Mr. Roth's own words at the Town Hall Public Meeting. Mr. Roth *never* asked Mr. Byford "question***s***"; Mr. Roth *never* had a "conversation" with Mr. Byford concerning Ms. Da Silva's case; and Mr. Roth *never* engaged in "questioning" President Byford" concerning Ms. Da Silva's case.

It is particularly troubling that Defense Counsel spent the first three of four pages of its Motion to Disqualify falsely accusing Mr. Roth of engaging in attorney misconduct – while appearing to *deliberately* conceal from this Court, until the last paragraph of the last page of its Motion, the fact that *Mr. Roth's mother is blind*. Mr. Roth attended the Town Hall Public Meeting related, first and foremost, to his mother and matters of concern, generally, for the safety of others; and *Mr. Roth asked a single question* about accessibility of subways as to this matter of safety. Mr. Roth's question was simply, straightforward and uncalculated – "*What's your plan to protect them?*" (Exhibit C, Tr. at 81-82; emphasis added.)

K<small>RINSKY</small>, <small>PLLC</small>

Honorable Vera M. Scanlon
October 11, 2018
Page 7

At the Town Hall Public Meeting, like all other speakers, Mr. Roth was permitted to ask as many questions within the 90 seconds he was allotted. As confirmed by the video recording of the Town Hall Public Meeting, and the following transcription of same, for approximately 82 seconds Mr. Roth spoke about the concern for his blind mother and the need to make subways safe and accessible, first and foremost, driven by the concern for his mother and safety in general, and then Mr. Roth spent a total of approximately 2.5 seconds asking Mr. Byford a *single question*:

> "**MR. DAVID ROTH:** Thank you for hearing me today. **So my mom is blind and I think that to be truly accessible, the subway needs to be safe**. According to your signage, 50 people a year are getting hit and killed by subways, 170 I think, well, whatever the sign that I saw in the subway today, in 2015, were hit by subways, causing major amputations. I was very, I felt compelled to come here today because in your plan to modernize, you're not taking it to a platform edge safety into your plan. There's no, there is a method to prevent, I think since 2013 there's been about, until today, if it's 50 a year, that's 500 deaths, excuse me, 750 deaths. And if this plan is going to go forward ten more years without platform edge doors, there's going to be another 500 deaths, and you can stop it because at the AirTrain, as you know, there's zero, nobody's been hit by a car, nobody's been amputated, nobody's been killed. **And I can't let my mom go on the subway. And even if you get escalators and you get elevators, she's not going down there**, because as you know, in London, they put them in. In Tokyo, in Toronto, I think there's just an add that they're going to put them in when one person died. **What's your plan to protect them?** Because modernization includes safety." (Exhibit C, Tr. at 81-82; emphasis added.)[4]

---

[4] In fact, at the conclusion of the Mr. Byford's comments, Mr. Roth stated, "Thank you for your response and it was before your time, but Second Avenue subway doesn't have them"; and Mr. Byford responded, "And they could have. I'm well aware of that. Thank you." (Exhibit C, Tr. at 83-84) The Second Avenue subway line is *not* the subject of Ms. Da Silva's case at bar, but,

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 8

In its Motion to Disqualify, Defense Counsel claims that, *supposedly*, "Mr. Roth attempted to gain *unauthorized discovery* by making direct contact with a high-ranking representative of the MTA and NYCT...." (Motion to Disqualify, p. 2; emphasis added.)  Curiously, however, Defense Counsel *fails* identify what specific "unauthorized discovery" Mr. Roth was *supposedly* seeking in connection with the case at bar.  Moreover, nowhere in its Letter Motion does Defense Counsel expressly state the supposed "question**s**" that Defense Counsel claims Mr. Roth asked Mr. Byford during the Town Hall Public Meeting; nor does Defense Counsel identify the statement, admission or disclosure made by Mr. Byford that somehow poses a threat of taint to the trial at the case at bar, or otherwise demonstrates specifically how and as to what issues may be prejudiced by Mr. Roth's continued representation of Ms. De Silva.

Although Defense Counsel claims that Mr. Roth engaged in fraud and deceit by not identifying himself as Plaintiff's counsel at the Town Hall Public Forum, there was no legal or ethical obligation to even provide his name.  Defense counsel further claims that "[a]t no point did Mr. Roth gain consent from any individual from the New York City Transit Authority let alone the Law Department or outside counsel to (a) *attend the town meeting* and (b) discuss salient matters with the President of the Authority."  (Motion to Disqualify, p. 3; emphasis added.)  Even if Rule 4.2(a) applies to the within facts, there is no basis, legally or ethically, that would have

---

rather, is the subway line located one block from where Mr. Roth's mother lives and would be her subway line if it was safe to use.

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 9

required Mr. Roth to obtain advance consent from Defense Counsel, or anyone else, to simply

attend the Town Hall Public Meeting as an observer.[5]

It is respectfully submitted that Defense Counsel does not point this Court to any such

admission, disclosure or other statement to preclude for the following reasons: *first*, contrary to

Defense Counsel's assertions, and as further discussed below, Rule 4.2(a) is not applicable to the

facts herein because Mr. Roth did "not communicate … about the subject of the representation

[*i.e., in* Ms. Da Silva's case] with a party [*i.e., Mr. Byford*] the lawyer knows to be represented by

another lawyer in the matter [*i.e., in Ms. Da Silva's case*]…."; and *second*, no such threat of taint

or prejudice can exist with respect to statements made at the Town Hall Public Meeting because

---

[5] There is some legal authority to support the position that Mr. Roth could have used a "straw"-type speaker or an investigator to attend the Town Hall Public Meeting in his place. *See* N.Y. State Comm. Open Govt. AO 2894. However, Mr. Roth did not believe that there was any reason to do so (or to otherwise not disclose his name) because Mr. Roth was not attending the Town Hall Public Meeting in connection with the case at bar. At least one federal district court decision suggests that a good purpose and relevant policy consideration may, in limited circumstances, justify conduct which would otherwise constitute a violation of the attorney ethics rules. In *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp.2d 119 (S.D.N.Y. 1999), an attorney used undercover private investigators to meet with, and tape record, conversations with a salesperson of a company (the eventual defendant in the litigation), which was believed to be violating a federally registered trademark. Plaintiff's counsel specifically directed undercover investigators to misrepresent their identities when visiting defendant's showrooms and warehouse, and through such deception, those investigators were able to obtain key evidence in the case. The conduct of plaintiff's counsel in the *Gidatex, S.r.L.* case in directing deception by his investigators arguably violated the language of D.R. 1-102(A)(4), New York's ethical rule prohibiting attorneys from engaging in deceptive conduct or in misrepresentation or causing others to do the same. 82 F. Supp.2d at 121. Nonetheless, the court refused to find a disciplinary violation, because the "policy interests" in forbidding misrepresentation were not present in that case and the enforcement of the ethical rule in the circumstances of the case "would not promote the purpose of the rule." Id. at 122 (emphasis added).

K<small>RINSKY</small>, <small>PLLC</small>

Honorable Vera M. Scanlon
October 11, 2018
Page 10

Defense Counsel publicly filed and made available the recording and transcript of the Town Hall Public Meeting; Defense Counsel has not moved to otherwise seal those materials; and the matters discussed at the Town Hall Public Meeting have already been reported to the public.[6]

At all times and in all respects, Mr. Roth's conduct while in attendance at the Town Hall Public Meeting was proper and ethical – and entirely consistent with express purpose of, and invitation to attend, the Town Hall Public Meeting.  On August 19, 2018, the MTA issued a Press Release, "MTA NYC Transit to Host First Town Hall Meeting on 'Fast Forward' Plan to Modernize Subways, Buses & Paratransit … ," which stated in relevant part:

> "MTA New York City Transit announced today that it is hosting a series of town hall-style public meetings … to discuss … Fast Forward Plan to modernize the subway system … including subway service and subway stations…. *The plan also sets out to improve accessibility across all services* …. President Byford and MTA New York City Transit staff will be presenting the plan at the town hall meetings …, speaking to customers and soliciting feedback on how the Fast Forward Plan will affect their commutes and how NYC Transit plans to improve accessibility and customer service. **Members of the public are highly encouraged to attend and ask questions to President Byford and his staff**…."  (Exhibit B; emphasis added.)

---

[6] *See* Ameena Walker, "NYCT Chief Hosts First Town Hall on Ambitious Plan to Fix Subway," Curbed New York (Aug. 22, 2018) (accessed at (https://ny.curbed.com/2018/8/22/ 17769068/nyct-fast-forward-plan-subway-repair-andy-byford-town-hall [last visited Oct. 11, 2018] reporting on the August 21, 2018 Town Hall Public Meeting, stating, in part, that "[o]n Tuesday night, the New York City Transit Authority held its first of several scheduled town hall meetings, where agency president Andy Byford presented his 10-year Fast Forward plan to vitalize the city's subway, bus, and accessibility services. The estimated $38 billion plan was laid out to the public, where they were then given an opportunity to have questions and concerns addressed by Byford himself.").

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 11

Defense Counsel's brazen accusations against Mr. Roth rather further confirm that Defense Counsel's Motion to Disqualify is tactically motivated to remove Plaintiff's choice of counsel in the case at bar. Defense Counsel's false claims of attorney fraud and *ad hominem* attacks against Mr. Roth are wholly inappropriate, wrong as a matter of fact, law and attorney ethics. In this regard, in their Motion to Disqualify, Defense Counsel claims that Mr. Roth's misconduct requires that Mr. Roth (*but only Mr. Roth*) "be disqualified as counsel, sanctioned, _or_ prohibited from further inappropriate contact with represented parties." (Motion to Disqualify, pp. 3-4; citations omitted.) It is respectfully submitted that there is no credible basis in law or in fact to grant the alternative relief sought by Defense Counsel – that Mr. Roth be sanctioned. The foregoing general denial is necessitated by the fact that, in its Motion to Disqualify, Defense Counsel *fails* to articulate what sanction it seeks to have this Court impose upon Mr. Roth; Defense Counsel *fails* to cite to a single statute, rule, case or other legal authority in support of its demand that this Court sanction Mr. Roth.

Although Defense Counsel fails to articulate what sanction it seeks to have this Court impose upon Mr. Roth, in their Motion to Disqualify, Defense Counsel dedicates a single sentence, citing to single case, to suggest that *Defense Counsel may be seeking an order of preclusion*. Defense Counsel asserts that "Courts have also excluded the resulting statement from evidence for a party who has violated Rule 4.2." (Motion to Disqualify, p. 3), citing *SEC v. Lines*, 669 F. Supp.2d 460, 464 (S.D.N.Y. 2009) (DLC). However, nowhere in its Motion to Disqualify does Defense Counsel identify for the Court a single admission, disclosure or other statement made by

K<small>RINSKY</small>, <small>PLLC</small>

Honorable Vera M. Scanlon
October 11, 2018
Page 12

Mr. Byford in response to the single question asked by Mr. Roth at the Town Hall Public Meeting

that Defense Counsel now seeks to preclude.

Accordingly, for  the foregoing reasons, we respectfully submit that Defense Counsel's

Motion to Disqualify be denied in its entirety.

A<small>RGUMENT</small>:
D<small>EFENSE</small> C<small>OUNSEL'S</small> M<small>OTION</small> T<small>O</small> D<small>ISQUALIFY</small>
F<small>AILS</small> T<small>O</small> M<small>EET</small> T<small>HE</small> "H<small>IGH</small> B<small>URDEN</small>" O<small>F</small> P<small>ROOF</small>
R<small>EQUIRED</small> T<small>O</small> D<small>ISQUALIFY</small> M<small>R</small>. R<small>OTH</small>.

A.     T<small>HE</small> S<small>ECOND</small> C<small>IRCUIT</small> R<small>EQUIRES</small> T<small>HAT</small> A H<small>IGH</small> B<small>URDEN</small> O<small>F</small> P<small>ROOF</small> B<small>E</small>
M<small>ET</small> B<small>EFORE</small> C<small>OUNSEL</small> M<small>AY</small> B<small>E</small> D<small>ISQUALIFIED</small>.

The law is well-settled in the Second Circuit that the "decision to disqualify is committed

to the sound discretion of the trial court" *Guan* Case R&R (Exhibit A), p. 17, citing *Cresswell v.*

*Sullivan & Cromwell*, 92 F.2d 60, 72 (2d Cir. 1980); and the Court's "discretionary authority to

disqualify a civil litigant's counsel stems from its responsibility to supervise members of the bar

and its 'inherent power to preserve the integrity of the adversary process.'"  *Almonte v. City of*

*Long Beach*, 2007 U.S. Dist. LEXIS 21782, at *8 (E.D.N.Y. Mar. 27, 2007) (JS) (JO), quoting

*Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005);

*Guan* Case R&R (Exhibit A), p. 17 (same). [7]

---

[7]It is well-settled that that "'Rambo lawyering" in litigation shall not be tolerated.  *Revson v.*
*Cinque & Cinque*, P.C., 70 F. Supp.2d 415, 417-18 (S.D.N.Y. 1999), *rev'd in part, vacated in part*,
225 F.3d 71 (2d Cir. 2000) (rejecting attorney's zealous advocacy defense, and stating that "[a]n
attorney is…not a hired gun or mercenary whose sole motivation is to win or an attack dog whose
sole purpose is to destroy"); *see also Matter of Holtzman*, 78 N.Y.2d 184, 192 (1991) ("reckless
or irresponsible" – even though not necessarily "knowing" or "intentional" – attorney conduct was
not immunized from attorney discipline).

Krinsky, pllc

Honorable Vera M. Scanlon
October 11, 2018
Page 13

"'In a technical sense the only truly binding authority on disqualification issues is [Second] Circuit precedent, because [the Court's] authority to disqualify an attorney stems from the Court's inherent supervisory authority.'"  *Guan* Case R&R (Exhibit A), p. 17, quoting *Skidmore v. Warburg Dillon Read LLC*, 2001 WL 504876, *2 (S.D.N.Y. May 11, 2001) (NRB).  "Although federal courts often look to state disciplinary rules for guidance, 'such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.'" *Guan* Case R&R (Exhibit A), p. 17, quoting *Hempstead Video*, 409 F.3d at 132.

Not surprisingly, to avoid mischief and gamesmanship, "'[m]otions to disqualify are generally not favored.  They are often tactically motivated; they cause delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation." *Guan* Case R&R (Exhibit A), pp. 16-17 (internal citation omitted); *see European Community v. RJR Nabisco*, 134 F. Supp.2d 297, 305 (E.D.N.Y. 2001) (NGG) (same), citing *Nyquist*, 590 F.2d at 1246 (other internal citations and quotations omitted).

"The Second Circuit has adopted a restrained approach, where '*disqualification is called for only where an attorney's conduct tends to taint the underlying trial*.'"  *SEC v. Lek*, 2018 U.S. Dist. LEXIS 6704, at *10-11 (S.D.N.Y. Jan. 16, 2018) (DLC), citing *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (citation omitted); *Araujo*, 2018 U.S. Dist. LEXIS 153728, at *10-11 (" … disqualification is warranted only if 'an attorney's conduct tends to taint the underling trial'"), quoting *GSI Commerce Solutions, Inc. v. Baby Cent*er, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010) (citation omitted).

K<small>RINSKY</small>, <small>PLLC</small>

Honorable Vera M. Scanlon
October 11, 2018
Page 14

"In deciding whether to disqualify counsel, a court must balance 'the need to maintain the highest standards of the profession' against 'a client's right freely to choose his counsel.'" *Guan* Case R&R (Exhibit A), pp. 16-17, quoting *Hempstead Video*, 409 F.3d at 132 (citations omitted); *see also Culver v. Merrill Lynch & Co., Inc.*, 1997 WL 223088, *2 (S.D.N.Y. May 5, 1997) (LBS) (the courts in the Second Circuit have held that a party's choice of counsel is generally not to be disturbed unless an attorney's conduct tends to "taint the underlying trial"), citing *Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (other citations omitted).  "Two competing interests are at stake in this analysis:  an individual's right to the counsel of her choice and 'the need to maintain the highest standards of the profession.' …  This rigorous standard is both equitable and pragmatic." *Almonte*, 2007 U.S. Dist. LEXIS 21782, at **7-9 (internal citations and quotations omitted).

Thus, "the Court of Appeals has demanded 'a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel.'" *Guan* Case R&R (Exhibit A), p. 17, quoting *Secured Worldwide, LLC v. Kinner*, 2015 WL 4111325, *3 (S.D.N.Y. June 24, 2015); *Araujo*, 2018 U.S. Dist. LEXIS 153728, at *10-11("there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify….") (internal citations and quotations omitted).  The burden is on the moving party (here Defense Counsel), of "demonstrating specifically how and as to what issues ... prejudice may occur,'" thereby warranting disqualification.  *SEC v. Lek*, 2018 U.S. Dist. LEXIS 6704, at *10-11 (S.D.N.Y. Jan. 16, 2018), citing *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citation omitted).

Kʀɪɴsᴋʏ, ᴘʟʟᴄ

Honorable Vera M. Scanlon
October 11, 2018
Page 15

It is clear that Defense Counsel is seeking to disqualify Mr. Roth to gain a tactical advantage in Ms. Da Silva's case, which is reason enough to deny the Motion to Disqualify. The Second Circuit has repeatedly lamented the unfortunate, but too common, practice of litigants using disqualification motions in order to obtain some tactical advantage over their adversary. Defense Counsel's allegations of attorney misconduct are not only unsubstantiated, but are completely contrived. Defense Counsel's Motion to Disqualify is a transparent act of harassment against Mr. Roth simply because Mr. Roth has zealously pursued actions against the Defendants in prior separate and unrelated litigations on behalf of other plaintiff clients. Defense Counsel's Motion to Disqualify Mr. Roth is a tactical ploy to remove Plaintiff's choice of counsel for the case at bar. As detailed herein, Defense Counsel has failed to meet its heavy burden to warrant or otherwise require Mr. Roth's disqualification.

**B. Mʀ. Rᴏᴛʜ's Cᴏɴᴅᴜᴄᴛ Aᴛ Tʜᴇ Tᴏᴡɴ Hᴀʟʟ Pᴜʙʟɪᴄ Mᴇᴇᴛɪɴɢ Dɪᴅ Nᴏᴛ Vɪᴏʟᴀᴛᴇ – Oʀ Eᴠᴇɴ Tʀɪɢɢᴇʀ – Rᴜʟᴇ 4.2(ᴀ)'s Nᴏ-Cᴏɴᴛʀᴀᴄᴛ Pʀᴏsᴄʀɪᴘᴛɪᴏɴ.[8]**

In its Motion to Disqualify, Defense Counsel claims that, *supposedly*, in violation of New York's No-Contract Rule 4.2(a), "Mr. Roth attempted to gain *unauthorized discovery* by making direct contact with a high-ranking representative of the MTA and NYCT...." (Motion to

---

[8] As to Defense Counsel's fraud-related charges against Mr. Roth – that he engaged in fraud and other deceitful and dishonest conduct in violation of Rules 4.1 and 8.4(c) – the fraud-related claims are entirely predicated, both legally and factually, upon Defense Counsel's claim that Mr. Roth violated New York's No-Contract Rule 4.2(a). Accordingly, the fraud-related allegations will not be separately discussed, but, rather, will be discussed together with Defense Counsel's predicate allegation that Mr. Roth violated Rule 4.2(a).

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 16

Disqualify, p. 2; emphasis added.)  Contrary to Defense Counsel's assertions, Rule 4.2(a) is not applicable to the facts herein because Mr. Roth did "not communicate … about the subject of the representation [*i.e., in* Ms. Da Silva's case] with a party [*i.e., Mr. Byford*] the lawyer knows to be represented by another lawyer in the *matter* [*i.e., in Ms. Da Silva's case*]…."  *See* N.Y.R.P.C. 1.0(l) ("'Matter' includes any litigation, judicial or administrative proceeding, case, claim, application, request for a ruling or other determination, contract, controversy, investigation, charge, accusation, arrest, negotiation, arbitration, mediation or any other representation *involving a specific party or parties*.") (emphasis added).

"The purpose of Rule 4.2 is to promote the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible over-reaching by other lawyers who represent clients in the matter. ... Although the rule is popularly known as the "no-contact" rule, by its terms the rule prohibits contact without the opposing lawyer's consent only if (a) such contact involves communication, (b) the communication is about the subject of the representation, and (c) the communication is not authorized by law."  N.Y. State Bar Assoc. Op. 894 (2011) (internal citation omitted); *see* N.Y. State Bar Assoc. Cmt. [2] to Rule 4.2 ("Paragraph (a) applies to communications with any party who is represented by counsel concerning the matter to which the communication relates."); N.Y. State Bar Assoc. Cmt. [4] to Rule 4.2 ("This Rule does not prohibit communication with a represented party or person or an employee or agent of such a party or person concerning matters outside the representation…..").

In this regard, ABA Formal Op. 95-396 (1995) is particularly instructive in addressing the mean, intent and scope of Rule 4.2:

**K**RINSKY, **PLLC**

Honorable Vera M. Scanlon
October 11, 2018
Page 17

- *First*, "Rule 4.2 makes reference to the subject matter of two representations, and requires a link between them. Thus, it provides that 'in representing a client,' a lawyer shall not communicate 'about the subject of the representation' – referring to the lawyer's representation of her client. It goes on to refer to communications with one whom the lawyer knows to be 'represented in the matter' – requiring that the second representation be within the compass of the inquiring lawyer's representation. *This required connection between the two representations, imparted by the phrase 'in the matter,' significantly limits the scope of [Rule 4.2(a)'s] prohibition*." (Internal footnotes and citations omitted; emphasis added.)

- *Second*, "By prohibiting communication about the subject matter of the representation, *the Rule contemplates that the matter is defined and specific, such that the communicating lawyer can be placed on notice of the subject of representation*. Thus, if the representation is focused on a given matter, such as one involving past conduct, and the communicating lawyer is aware of this representation, she may not communicate with the represented person absent consent of the representing lawyer. However, *where the representation is general – such as where the client indicates that the lawyer will represent her in all matters – the subject matter lacks sufficient specificity to trigger the operation of Rule 4.2*." (Emphasis added.)

- *Third*, " … retaining counsel for 'all' matters that might arise would not be sufficiently specific to bring the rule into play. *In order for the prohibition to apply, the subject matter of the representation needs to have crystallized between the client and the lawyer*. Therefore, *a client or her lawyer cannot simply claim blanket, inchoate representation for all future conduct whatever it may prove to be, and expect the prohibition on communications to apply*. Indeed, in those circumstances, the communicating lawyer could engage in communications with the represented person without violating the rule. … In the civil context also, the 'matter' with which the representation is concerned must have been *concretely identified*…." (Emphasis added.)

It is respectfully submitted that the foregoing legal discussion makes clear that Defense Counsel's claim that Mr. Roth violated Rule 4.2 is devoid of any merit. Again, it is not a coincidence that Defense Counsel *fails* identify what specific "unauthorized discovery" Mr. Roth

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 18

was *supposedly* seeking in connection with the case at bar; and nowhere in its Motion to Disqualify does Defense Counsel identify a single admission, disclosure or other statement made by Mr. Byford in response to the single question asked by Mr. Roth at the Town Hall Public Meeting demonstrating specifically how the case at bar would be tainted or what prejudice would occur if Mr. Roth were no disqualified from the case at bar.

Defense Counsel, in its Motion to Disqualify, fail to set forth the legal standard applied to disqualification motions (discussed *supra*); and based upon that standard, the Defense Counsel also fail to state how Mr. Roth's continued representation has or will taint the underlying trial of the case at bar.   Indeed, despite well-established law in this Circuit governing motions to disqualify, Defense Counsel nevertheless asserts, *ipse dixit*, that Mr. Roth's alleged violation of Rule 4.2(a) requires disqualification based upon three New York Federal cases:  *Zeller v. Bogue Electric Manufacturing Corp.*, No 71 Civ. 5502 (RO) (S.D.N.Y. 1975); *Papanicolaou v. Chase Manhattan Bank*, 720 F. Supp. 1080, 1085 (S.D.N.Y. 1989); *Zheng v. Kobe Sushi Japanese Cuisine 8, Inc.*, 15 Civ. 10125 (AKH); and *Guan v. Long Island Bus. Inst., Inc.*, 2017 U.S. Dist. LEXIS 10490, at *37-38 (E.D.N.Y. Jan 24, 2017) (CBA)(VMS).  It is respectfully submitted that tthe *Zeller, Papanicolaou*, *Zheng* and *Guan* cases are not only factually and legally distinguishable from the circumstances of the case at bar, neither the Courts' application nor its interpretation of New York's No-Contact Rule 4.2(a) support Defense Counsel's claim that Mr. Roth was in direct violation of Rules 4.1, 4.2, and 8.4.

A final point is appropriate in this regard.  For the reasons set forth herein, it is respectfully submitted that Defense Counsel's Motion to Disqualify should be denied in its entirety; however,

K̲r̲i̲n̲s̲k̲y̲, ̲p̲l̲l̲c̲

Honorable Vera M. Scanlon
October 11, 2018
Page 19

should any claim of attorney misconduct against Mr. Roth remain unresolved, the allegation(s)

should be referred to the appropriate attorney grievance authority at the conclusion of Ms. Da

Silva's case.  In the seminal case, *Bd. of Educ. v Nyquist*, 590 F.2d 1241, 1246 (2d Cir 1979), the

Second Circuit further explained, stating, in relevant part:

> "Weighing the needs of efficient judicial administration against the
> potential advantage of immediate preventive measures, we believe
> that unless an attorney's conduct tends to 'taint the underlying trial,'
> … courts should be quite hesitant to disqualify an attorney.  Given
> the availability of both federal and state comprehensive disciplinary
> machinery …, there is usually no need to deal with all other kinds
> of ethical violations in the very litigation in which they surface."
> (Internal citations omitted.)

Allegations of attorney misconduct should be addressed "*under the auspices of the*

*appropriate bar association and should in no way be permitted to affect the decision on the merits*

*of the case.*" *Ceramco*, 510 F.2d at 271 (emphasis added).  The Second Circuit has concluded that

"[g]iven the availability of both federal and state comprehensive disciplinary machinery, ... there

is usually no need to deal with all other kinds of ethical violations in the very litigation in which

they surface.  *Nyquist*, 590 F.2d at 1246.  Moreover, "[c]ourts are neither the sole forum for

adjudicating alleged ethical lapses nor even the best forum for doing so....[B]ar authorities ... have

a specific mandate to enforce the disciplinary rules of their respective jurisdictions and to sanction

the attorneys who violate those rules...."  *Almonte v City of Long Beach*, 2007 U.S. Dist. LEXIS

21782, at *7-9 (E.D.N.Y. Mar. 27, 2007) (JS) (JO) (internal citations and quotations omitted).

Very recently, in *Tour Tech. Software, Inc. v. RTV, Inc.*, 2018 U.S. Dist. LEXIS 130021,

at *9-15 (E.D.N.Y. Aug. 2, 2018) (MKB) (CLP), the District Court determined that, in connection

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 20

with a conflicts-related claim, there were no grounds for disqualification, but noted with particular

relevance to the case at bar:

> "It remains true that defendant's counsel possesses certain
> obligations with respect to confidential information derived from
> former clients. … Even if his representation of [the defendant] …
> in this litigation were a violation of his professional obligations,
> there is no indication that any such violation would taint the trial in
> this case. The rules promulgated by the ABA and the State of New
> York 'merely provide guidance' to federal courts in determining
> whether to disqualify an attorney, and thus 'not every violation of a
> disciplinary rule will necessarily lead to disqualification.'… Indeed,
> '[g]iven the availability of both federal and state comprehensive
> disciplinary machinery, there is usually no need to deal with all other
> kinds of ethical violations in the very litigation in which they
> surface.' …; *see* L. Civ. R. 1.5(a), (b)(5) (establishing E.D.N.Y.
> Committee on Grievances….). *That is precisely the case here.
> Plaintiff has made no demonstration that the underlying trial of this
> case on the merits would be tainted by any alleged ethical
> violation.*" (Emphasis added; internal citations omitted.)

Accordingly, it is respectfully submitted that Defense Counsel's Motion to Disqualify

should be denied in its entirety; however, upon adjudicating Defense Counsel's Motion to

Disqualify, to the extent any claim of attorney misconduct remains unresolved as against Mr. Roth,

it is respectfully submitted that any such claim should be referred to the appropriate attorney

grievance authority at the conclusion of Ms. Da Silva's case.

*            *            *            *

KRINSKY, PLLC

Honorable Vera M. Scanlon
October 11, 2018
Page 21

## CONCLUSION.

Accordingly, for the foregoing reasons, we respectfully submit that Your Honor should

deny Defense Counsel's Motion to Disqualify in its entirety, and grant such other and further relief,

which as to this Court deems just, equitable and appropriate, including attorneys' fees and costs.

Dated:  New York, New York.
        October 11, 2018

                              Respectfully submitted,

                              KRINSKY, PLLC


          By:    _____
                 Pery D. Krinsky, Esq. (PK8146)
                 160 Broadway, Suite 603
                 New York, New York 10038
                 T. 212.543.1400
                 F. 212.380.8171
                 E. pkrinsky@krinskypllc.com

                 *Attorneys for Plaintiff's Counsel*

cc:    All Counsel Via ECF