EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CHUN LUN GUAN, QIHUAI LIU, ZIQIANG     :
LU, and HUIDE ZHOU, on behalf of themselves  :
and others similarly situated,                               
                                               :     **REPORT AND RECOMMENDATION**
                    Plaintiffs,       :
                                   :     15 Civ. 2215 (CBA) (VMS)
        -against-                :
                                   :
LONG ISLAND BUSINESS INSTITUTE, INC.,  :
MONICA FOOTE, and WILLIAM DANTIVA,  :
                                   :
                 Defendants.      :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Chun Lun Guan, Qihuai Liu, Ziqiang Lu, Huan Yu and Huide Zhou (the

"Plaintiffs")[1] bring this action against Defendants Long Island Business Institute, Inc. ("LIBI"),

Monica Foote and William Dantiva, alleging violations of the Federal Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq.; New York Labor Law ("NYLL"), 42 U.S.C. § 1981; Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City

Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.[2]  On referral before the

Court from the Honorable Carol B. Amon is Defendants' motion pursuant to Federal Rule of

Civil Procedure ("FRCP") 37(b) to dismiss or in the alternative to disqualify Plaintiffs' counsel,

---

[1] The parties stipulated to the dismissal of former Plaintiff Youxing Zhao.  Stip. of Dismissal,
ECF Nos. 129-131.

[2] District Judge Amon dismissed Plaintiffs' ADEA claims without prejudice.  Mem. & Order,
ECF No. 122 at 10-13.

partner John Troy ("Mr. Troy") and his associate Kibum Byun ("Mr. Byun") of the law firm Troy Law.  Defendants also asked that the Court refer this matter to Chief District Judge Dora L. Irizarry for referral to the Committee on Grievances to consider the imposition of discipline, pursuant to Local Rule 1.5(f).

Defendants also move for reconsideration of a portion of District Judge Amon's Order granting conditional certification of this FLSA action.  Specifically, Defendants seek review of the portion of her Order that "instructs defendants to provide to plaintiffs the names, last known addresses, and known email addresses for non-managerial, non-exempt employees who worked for LIBI's Flushing campus between April 18, 2012, and the date of this memorandum and order."  Mem & Order, ECF No. 123 at 10.  For the reasons stated herein, this Court respectfully recommends that the District Court deny the motion to dismiss or disqualify Mr. Troy without prejudice, deny without prejudice the request for a referral and deny the motion for reconsideration.

I.      **Background**

Named Plaintiffs are current and former Chinese employees of LIBI's building-maintenance department at the Flushing campus.  See Am. Compl., ECF No. 41 ¶¶ 15-19. Plaintiffs allege that under Defendants' supervision, the maintenance department gave preferential treatment to the department's Hispanic employees and made several comments disparaging Plaintiffs' Chinese ethnicity.  See id. ¶¶ 109-43.  Plaintiffs also allege that Defendants violated various overtime provisions of the FLSA and NYLL.  See id. ¶¶ 194-201.

Mr. Troy and his colleague Mr. Byun represent the five named Plaintiffs in this case. Plaintiffs moved for an order seeking conditional certification of a collective action under the

FLSA that would include as potential opt-in plaintiffs all of LIBI's non-exempt, hourly employees at its three locations. See ECF Nos. 56-58.

Before Plaintiffs filed their motion seeking conditional certification, but after the deadline to add parties under the Court's August 18, 2015 scheduling order, Plaintiffs filed a consent form to join the collective action for Plaintiff Huan "Hazel" Yu ("Ms. Yu"), a mid-level supervisor in the maintenance department at LIBI's Flushing campus. See Consent Form, ECF No. 39. Defendants objected to Ms. Yu's attempt to join the lawsuit, arguing that she is an exempt supervisor and is not entitled to overtime compensation under the FLSA or the NYLL. See Letter, ECF No. 40 at 1. Plaintiffs submitted a letter motion seeking a determination that Ms. Yu is a plaintiff in this action, see Mot., ECF No. 96, which Defendants opposed, see Opp. to Mot., ECF No. 97. The Court granted Plaintiffs' motion for conditional certification and held that Ms. Yu was a valid opt-in Plaintiff. See Mem. & Order, ECF No. 123.

Defendants allege that throughout discovery, Mr. Troy has engaged in unethical conduct and practices of differing degrees of severity.

### A. Failure To Adhere To Deadlines

Plaintiffs' counsel's litigation of this matter has not been exemplary. A review of the docket confirms Mr. Troy's failure to adhere to deadlines imposed by this Court. He submitted his response to Defendants' pre-motion conference letter to dismiss portions of the initial Complaint 39 days late. See Letter, ECF No. 29 at 1. He submitted his Second Amended Complaint after the Court's deadline. See Letter, ECF No. 37 at 1. He moved to add Ms. Yu as a Plaintiff three weeks after the joinder deadline set in the Court's Scheduling Order. See Letter, ECF No. 40 at 1. He failed to serve discovery requests until 18 days after the deadline set in the Court's Scheduling Order. See Letter, ECF No. 43 at 1. He failed to submit a promised letter

outlining discovery deficiencies.  See Letter, ECF No. 76.  He belatedly provided information

related to translators for depositions.  See 4/26/2016 Order.

Although the Court has granted Plaintiffs' counsel significant leniency, Plaintiffs'

counsel has been generally warned about the need to comply with Court orders and has also been

sanctioned.  In a May 26, 2016 Order, the Court granted Defendant's motion for sanctions

relating to the scheduling of depositions.  In that Order, the Court noted that "[d]iscovery in this

matter has been unduly difficult."  The Court determined that the conduct of Plaintiffs and their

counsel was not substantially justified or excusable.  Plaintiffs' counsel were "reminded that

failure to comply with the Court's orders may result in an award of sanctions, including

attorneys' fees or preclusive orders."  Id.

### B.  Engaging In Improper Ex Parte Discovery

Defendants allege that Mr. Troy engaged in improper ex parte discovery.  Mot. to

Disqualify, ECF No. 117 at 4.  On May 10, 2016, Defendants' counsel learned that Mr. Troy,

acting on behalf of Plaintiffs, had caused subpoenae to be served on Eddie Razzo and Beatriz

Lopez, both non-parties who had briefly worked for LIBI.  See Mot. for Sanctions, ECF No. 84

at 1-4.  The subpoenae were purportedly served after May 6, 2016, and they directed the

witnesses to appear at Troy Law's offices to testify at depositions scheduled for May 12, 2016.

See id. at 1.  Mr. Troy did not serve Defendants' counsel with copies of these subpoenae as

required by Federal Rule of Civil Procedure 30(b)(1), and Defendants' counsel only came to

learn about the subpoenae after being contacted directly by the non-party witnesses.  See id. at 1.

Mr. Troy stated that the subpoenae were served on the non-parties inadvertently by one of Troy

Law's non-attorney staff members "who thought there was an impending deadline."  Opp. to

Mot. for Sanction, ECF No. 119 at 2.  Mr. Troy characterizes the event as an "honest mistake."

Id.

### C.  Failure To Fulfill Discovery Obligations

Defendants' counsel allege that Mr. Troy has not fulfilled his discovery obligations.  Mot.

to Disqualify, ECF No. 117 at 5.  Defendants' initial discovery requests asked for the following:

> All documents concerning communications of any sort (including, without
> limitation, emails, text messages, WeChat messages, and messages sent using any
> other computer, mobile, or social media service/application) that any of Plaintiffs
> sent to, or received from, any person (including, without limitation,
> communications with each other or any other person at LIBI or any friends or
> family members) concerning Plaintiffs' employment at LIBI or any of Defendants.

Id.

Plaintiffs objected to this request, arguing it was overbroad, unduly burdensome and an

invasion of their privacy.  See Letter, ECF No. 76 at 1.  The parties' dispute over this request

was submitted to the Court in a joint letter dated March 16, 2016.  See id.  The Court overruled

Plaintiffs' objections and directed Plaintiffs to produce responses to this request on or before

April 12, 2016.  See Order, ECF No. 77 at 2.  Plaintiffs responded to this request by stating that

they do not have any responsive documents:  "Plaintiffs does [sic] not use any other electronic

means to communicate with each other or any other person at LIBI or any friends of family

members concerning Plaintiffs' employment at LIBI or any of Defendants.  Accordingly,

Plaintiffs does [sic] not have in their possession, custody, or control of such documents for

Plaintiffs other than those already produced."  Mot. to Disqualify, ECF No. 117, Ex. C at 2.  Mr.

Troy repeated this contention in an unrelated motion, stating that he "asked Plaintiffs about their

communications regarding their employment using any means and they stated that they did not

communicate about their employment with anyone using any electronic means."  See Opp. to

Mot. to Compel, ECF No. 79 at 2.

Defendants' counsel then learned during depositions that some Plaintiffs did have documents responsive to this request, and Defendants eventually received those documents.  See Mot. to Disqualify, ECF No. 116, Ex. D at 11.  Several Plaintiffs, including Chun Lan Guan, Qihuai Liu, Ziqiang Lu, and Youxing Zhao, testified during their depositions that neither Mr. Troy nor anyone else from Troy Law had ever asked them if they had any LIBI-related communications.  See id. at 4, 7-8, 11, 15-16.[3]

In response to the disqualification motion, Mr. Troy includes in his opposition to this motion nearly identical affidavits from him and each Plaintiff stating that, on April 10, 2016, they attended a meeting at Troy Law's offices where Mr. Troy asked plaintiffs whether they had any LIBI-related communications, to which each plaintiff answered "no."  See Troy Decls., ECF No. 118, Ex. 1 ¶¶ 3-11, Ex. 2 ¶¶ 3-11, Ex. 3 ¶¶ 4-5, Ex. 4 ¶¶ 4-5, Ex. 5 ¶¶ 4-5, Ex. 6 ¶¶ 4-5, Ex. 7 ¶¶ 4-5, Ex. 8 ¶¶ 16-17.  Plaintiff Qi Huai Liu states in his affidavit that "Mr. Troy or anyone from his office did not ask me to go through WeChat texts."  Id., Ex. 3 ¶ 7.  Similarly, Plaintiff Chun Lan Guan, who testified during her deposition that she had LIBI-related communications in her WeChat account, states that "Mr. Troy or anyone from his office did not ask me to produce my WeChat messages relating to the LIBI."  Id., Ex. 7 ¶ 6.

### D.  Misrepresentations To The Court

Defendants' counsel allege that Mr. Troy made multiple misrepresentations to Defendants and to this Court.  Mot. to Disqualify, ECF No. 117 at 5-8.

First, Mr. Troy represented to the Court during a February 26, 2016 status conference that

---

[3] Defendants characterize this incident both as 1) a failure on Troy's part to meet his discovery obligations by conducting a reasonable inquiry to ensure his clients' discovery responses were accurate and as 2) an example of Troy's alleged misrepresentations to this Court, each of which is discussed below.

he knew nothing about charges filed by Plaintiffs with the National Labor Relations Board

("NLRB") in January 2016.  See Aloe Aff., ECF No. 116 ¶ 2.  Copies of the charges filed show

that Mr. Troy signed and filed them on behalf of Plaintiffs.  Id., Ex. A.  Mr. Troy responds that

he signed and filed the charges late in the evening while attending his mother's funeral in Taiwan

and experiencing the effects of jetlag.  See Mot. to Disqualify, ECF No. 117 at 4-5.  He says that

"other than drafting, signing, and coordinating schedule with the NLRB agent for Plaintiffs . . .

Troy Law had no involvement in Plaintiff's NLRB proceedings" and characterizes his omission

as another honest mistake.  Id. at 5.

Second, as noted above, Mr. Troy stated that he asked Plaintiffs if they had any LIBI-

related communications responsive to Defendants' document requests.  In an opposition

submitted to this Court, he said that he "asked Plaintiffs about their communications regarding

their employment using any means and they stated that they did not communicate about their

employment with anyone using any electronic means."  See Opp. to Mot. to Compel, ECF No.

79 at 2.  Certain Plaintiffs in their depositions said that Mr. Troy did not ask them about their

communications, although in later-submitted affidavits attached to Mr. Troy's opposition to this

motion, Plaintiffs now say he asked them for the responsive communications.  See Mot. to

Disqualify, ECF No. 117, Ex. 1 ¶¶ 3-11, Ex. 2 ¶¶ 3-11, Ex. 3 ¶¶ 4-5, Ex. 4 ¶¶ 4-5, Ex. 5 ¶¶ 4-5,

Ex. 6 ¶¶ 4-5, Ex. 7 ¶¶ 4-5, Ex. 8 ¶¶ 16-17.

Third, Defendants allege that Mr. Troy did not translate the affidavits submitted by

Plaintiffs in support of their motion for conditional certification of a collective action under the

FLSA.  The affidavits were substantially identical, each containing a closing paragraph that

stated as follows:  "This document has been translated to me in my native language of Mandarin

Chinese, and I fully comprehend the contents."  Troy Aff., ECF No. 47, Ex. 2 ¶ 19, Ex. 3 ¶ 19,

Ex. 4 ¶ 19, Ex. 5 ¶ 19, Ex. 6 ¶ 19, Ex. 7 ¶ 19, Ex. 8 ¶ 19, Ex. 9 ¶ 19.[4]  In opposition to the

certification motion, Defendants objected to the affidavits under Rules 604 and 901 of the

Federal Rules of Evidence, arguing that they were not properly authenticated because they

lacked certified translations.  Opp. to FLSA Cert. Mot., ECF No. 66 at 17-18.  In response, Mr.

Troy stated that "Plaintiffs' respective declarations have been translated by their attorney, who

speaks fluent Chinese (Mandarin), and can accurately interpret Chinese into English and vice-

versa."  Reply to Opp. to FLSA Cert. Mot., ECF No. 62 at 3.  During Plaintiffs' depositions held

on May 18 and 19, 2016, counsel for Defendants presented each Plaintiff with a copy of his or

her affidavit submitted in support of the motion seeking conditional certification to inquire

whether each was familiar with and could verify the accuracy of the documents they had signed

under oath.  Plaintiffs Chun Lan Guan, Qihuai Liu, Huide Zhou, Youxing Zhao and Ziqiang Lu

testified that they could not read the English language affidavits and that they were not provided

with written translations in Mandarin Chinese when they signed.  Mot. to Disqualify, ECF No.

116, ECF No. 116 Ex. E at 6, 10, 17, 21 & 27.  One Plaintiff, Ziqiang Lu, testified that he had

the document read to him line-by-line in Mandarin Chinese.  Id. at 27.  The three other plaintiffs

stated that they either had their affidavit read to them and did not provide further detail, or said

that that they were told what was in the affidavit.  Id. at 6, 10, 17 & 21.

In response, Mr. Troy states that staffers at Troy Law who speak Chinese translate and

explain affidavits to plaintiffs who cannot speak English, though he does not provide further

detail on his office's process.  Mr. Troy states that his firm usually has "three to four Chinese

---

[4] The affidavits of Plaintiffs submitted by Mr. Troy as part of his opposition to Defendants'
pending summary judgment motion also contain this sentence.  Guan Aff., ECF No. 148 ¶ 10;
Liu Aff., ECF No. 149 ¶ 9; Zhou Aff., ECF No. 150 ¶ 9, Zhao Aff., ECF No. 151 ¶ 11, Lu Aff.,
ECF No. 152 ¶ 11.

speaking staffs who assist non-English [sic] speaking attorney or legal staffs whenever translation or interpretation is required." Opp. to Mot. for Sanction, ECF No. 119 at 2-3. He says that "after someone drafts affidavits, Chinese interpreters review every paragraphs with clients and make corrections if necessary before clients sign the affidavits," and "[f]or this instant case, Chinese staff member at Troy Law kindly translated and explained the affidavits to the Plaintiffs before they sign the affidavits." Id. at 3. This appears to contradict Mr. Troy's assertion in his FLSA Certification Reply that an attorney translated the affidavits. Reply to Opp. to FLSA Cert. Mot., ECF No. 62 at 3 ("Plaintiffs' respective declarations have been translated by their attorney, who speaks fluent Chinese (Mandarin), and can accurately interpret Chinese into English and vice-versa."). Each of the affidavits by Plaintiffs submitted with Mr. Troy's opposition to the present motion contains the identical sentence: "Whenever I come to Mr. Troy's office to sign any document relating to this lawsuit, his staff members always have kindly translated and explained about the documents." Id., Ex. 3 ¶ 12, Ex. 4 ¶ 14, Ex. 5 ¶ 15, Ex. 6 ¶ 12, Ex. 7 ¶ 12.

Plaintiffs' set of affidavits for the present motion state that they were "translated and explained" to Plaintiffs, a middle ground between what the first affidavits said (the affidavits were translated) and Plaintiffs' deposition testimony (the affidavits were explained, not translated).

### E. Improper Communications With Ms. Yu

Defendants' counsel also allege that Mr. Troy's communications with opt-in Plaintiff Ms. Yu were ethically improper. Mot. to Disqualify, ECF No. 117 at 8. As noted above, Ms. Yu was not listed as a Plaintiff in either the original or operative Complaints. Instead, on November 7, 2015, Mr. Troy submitted a consent form seeking to join Ms. Yu to the action. Consent Form,

ECF No 39.  Defendants contended that Ms. Yu's managerial role renders her ineligible for overtime protection under the FLSA, but District Judge Amon granted Plaintiffs' motion for conditional certification and held that Ms. Yu could be an opt-in Plaintiff.  See Mem. & Order, ECF No. 123.  Whether she is eligible for or entitled to relief is a matter to be resolved at a later stage of the case.

Mr. Troy's communications with Ms. Yu first became an issue during Plaintiff's depositions, which Mr. Troy wanted Ms. Yu to attend.  Defendants objected, arguing that Ms. Yu had no right to attend because the depositions were confidential pursuant to the parties' confidentiality agreement.  Mot. to Disqualify, ECF No. 117 at 9.  Defendants also argued that Mr. Troy's communications with her were inappropriate under Rule 4.2 of the New York Rules of Professional Conduct because Ms. Yu was employed by LIBI and had discussed this matter with defense counsel.[5]  Defendants noted that until this point, Plaintiffs and Mr. Troy had proceeded as if Ms. Yu were not a plaintiff in the action.  Id.  Plaintiffs did not produce any documents or interrogatory responses from Ms. Yu in response to Defendants' document requests.  Id. Mr. Troy did not enter a notice of appearance on behalf of Ms. Yu.

LIBI ultimately terminated Ms. Yu's employment.  See id. at 10.  On the day of her termination, they learned that she possessed several USB drives containing documents that she had copied from LIBI's computer systems.  Id.  Defendants note that they cannot know whether Ms. Yu had removed files from LIBI computers at an earlier time.  Id.  This Court ordered Ms. Yu to produce the drives for a forensic examination.  Order, ECF No. 100 at 1.  According to

---

[5] Rule 4.2 states that "[i]n representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law."

Defendants, the preliminary analysis showed that Ms. Yu's USB drives at times contained thousands of LIBI's files, ranging from Excel spreadsheets containing employee work schedules and payroll reports to pictures of students, faculty and staff used to create school identification cards. Mot. to Disqualify, ECF No. 117 at 10. Defendants also analyzed Ms. Yu's LIBI email account and allege that they discovered that she had forwarded dozen of work emails—some relating to her, others relating to Plaintiffs—from her work email account to her personal email account. Id.

## II.   DISCUSSION

Defendant moves under FRCP 37(b) to have this action dismissed or, in the alternative, to have Mr. Troy and his law firm disqualified. Mot. to Disqualify, ECF No. 117 at 12-23. Defendants also ask that the matter be referred "to the Chief Judge for referral to the Committee on Grievances to consider the imposition of discipline." Id. at 23 (quoting Local Rule 1.5(f)).

### A.  This Matter Should Not Be Dismissed

Rule 37(b) states that if a party "fails to obey an order to provide or permit discovery," the court may "dismiss[] the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). As emphasized by the Second Circuit, "[i]mposing sanctions pursuant to Rule 37 is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012) (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)).

When exercising discretion pursuant to Rule 37, courts in the Second Circuit are guided by the following factors: "(1) the willfulness of the non-compliant party or the reason for

noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." World Wide, 694 F.3d at 159 (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)); see Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 451 (2d Cir. 2013); Ruiz v. Citibank, N.A., 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, *2 (S.D.N.Y. Aug. 19, 2014). Although these four factors are often the only ones specifically listed in the context of discovery sanctions motions, "[b]ecause the text of the rule requires only that the district court's orders be 'just,' however, and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these factors are not exclusive." World Wide, 694 F.3d at 159 (quoting S. New England Tel. Co. v. Global NAPs Realty, Inc., 624 F.3d 123, 144 (2d Cir. 2010)).

The Court is mindful that sanctions dismissing the action altogether are "drastic remed[ies]." World Wide, 694 F.3d at 159. Nevertheless, "discovery orders are meant to be followed." S. New England, 624 F.3d at 144 (quoting Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995)). Therefore, "judgment against a defendant . . . may be appropriate in extreme situations, as when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party." Guggenheim, 722 F.3d at 451 (internal quotations omitted).

Defendants argue that dismissal pursuant to Rule 37(b) is justified by Mr. Troy's failure to ask Plaintiffs whether they had documents responsive to Defendants' initial discovery request for communications made by the Plaintiffs about their employment at LIBI, as described supra in section I.C.

### 1. Willfulness

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." In re Fosamax Prods. Liab. Litig., No. 06 MD 1789 (JFK), 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013) (citation omitted). Willful non-compliance is routinely found, for instance, where a party has "repeatedly failed to . . . produce documents . . . in violation of the district court's orders." Robertson v. Dowbenko, 443 F. App'x 659, 661 (2d Cir. 2011) (summary order); see Battiste-Downie v. Covenant House, 471 F. App'x 78, 79 (2d Cir. 2012) (summary order) (willfulness found where plaintiff "repeatedly defied discovery orders, despite the District Court's explicit instructions on several occasions that she was to respond to specific discovery demands propounded by defendants or face sanctions"); Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (willfulness found where plaintiff "violated a series of court orders requiring the production of documents").

Plaintiffs opposed Defendants' discovery request, and this Court overruled Plaintiffs' objections. See Order, 3/29/2016. The discovery request, as well as the Order by this Court to respond to it, were clear. Plaintiffs make no argument to the contrary and do not suggest that they did not understand the request or Order. At the same time, Plaintiffs ultimately produced the responsive documents revealed by the depositions, so the Court cannot conclude that Plaintiffs have repeatedly or continuously violated its Order in this matter. For these reasons, the Court does not hold that Plaintiffs' conduct was willful, so this factor does not favor dismissal.

### 2. Efficacy Of Lesser Sanctions

"[A] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." Doe v. Delta Airlines, Inc., No. 13 Civ. 6287 (PAE), 2015 WL 798031, at *9 (S.D.N.Y. Feb. 25, 2015). Severe sanctions such as

dismissal and judgment by default are to be applied sparingly, where no other sanction will

suffice.  See Agiwal, 555 F.3d at 302.  A "district court is not required to exhaust possible lesser

sanctions before imposing dismissal . . . if such a sanction is appropriate on the overall record,"

and "deliberate and persistent noncompliance will render lesser sanctions inappropriate."  Urbont

v. Sony Music Entm't, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6,

2014) (quotations & internal alterations omitted).

　　　　This factor does not favor dismissal.  Defendants' ability to defend against Plaintiffs'

claims has not been compromised by Plaintiffs' discovery lapses.  Defendants argue that

Plaintiffs' failure to produce the requested information severely prejudiced Defendants in the

defense of this case.  Before Plaintiffs complied with the Court's Order, this representation may

have been correct.  At present, however, it is no longer so because Plaintiffs have now produced

the requested records and releases, and Defendants have not pointed to any gap in these records.

Doe, 2015 WL 798031, at *9 (efficacy of lesser sanctions weighs against dismissal when a party

ultimately complies with a court's orders and produces relevant documents).

　　　　Given Plaintiff's belated cure of their discovery failures, that their noncompliance with

the Court's orders does not follow an earlier sanction with regards to this Order, and that

Defendants have not suffered any prejudice other than the expenses of the additional effort to

obtain discovery, the Court finds, as to this factor, that dismissal is not warranted.

**3.  Duration Of Non-Compliance**

　　　　The third of the relevant factors is "the duration of the period of noncompliance."  World

Wide, 694 F.3d at 159 (quoting Agiwal, 555 F.3d at 302).  On this front, durations of time as

brief as a few months have been held to weigh in favor of dispositive sanctions.  See, e.g.,

Embuscado, 347 Fed. App'x at 701 (three months); Georgiadis v. First Boston Corp., 167 F.R.D.

24, 25 (S.D.N.Y.1996) (four months).  Periods of six months or more weigh even more heavily

toward such remedies.  See, e.g., Agiwal, 555 F.3d at 303 (six months); Phelan v. Cambell, 507

Fed. App'x. 14, 16 (2d Cir. 2013) (seven months); Ruzsa v. Rubenstein & Sendy Attorneys at

Law, 520 F.3d 176, 177 (2d Cir. 2008) (seven months); Battiste-Downie, 471 Fed. App'x at 79

(one year); see also Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982) ("[A]

pattern of dilatory tactics ... consist[ing], for example, of groundless motions, repeated requests

for continuances or persistent late filings of court ordered papers . . . may warrant dismissal after

merely a matter of months.").

 The Court ordered Plaintiffs to produce the documents at issue during a March 29, 2016

conference.  See Order, 3/29/2016.  Plaintiffs were deposed on May 18, 2016, when it was

revealed responsive documents had not been produced to Defendants.  The record and the

parties' papers do not state when precisely Plaintiffs turned over the relevant documents.  The

best the Court can surmise is that Plaintiffs complied shortly after the depositions, two or three

months after they were ordered to do so.  Given that this length of time is close to the outward

limit of noncompliance that has been found to justify dismissal, see Embuscado, 347 Fed. App'x

at 701, and given that the Court cannot say with precision how long Plaintiffs were not in

compliance the Court's Order, the Court cannot find that this factor weighs strongly in favor or

against dismissal.

  **4.  Notice**

 The next evaluative factor is "whether the non-compliant party had been warned of the

consequences of . . . noncompliance."  World Wide, 694 F.3d at 159 (quoting Agiwal, 555 F.3d

at 302).  This factor has been identified as the "[m]ost critical" of those listed in Agiwal and

World Wide.  See, e.g., Ruiz, 2014 WL 4635575, at *3 (quoting World Wide, 694 F.3d at 160).

"[S]evere sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply." <u>Urbont</u>, 2014 WL 6433347, at *3; <u>see</u> <u>Manigaulte v. C.W. Post of Long Island Univ.</u>, 533 F. App'x 4, 6-7 (2d Cir. 2013) (summary order), <u>cert. denied</u>, 134 S. Ct. 1036 (2014) (dismissal appropriate where district court twice warned dismissal would follow from non-appearance at deposition); <u>Murray v. Mitsubishi Motors of N. Am., Inc.</u>, 462 F. App'x 88, 90 (2d Cir. 2012) (summary order) (dismissal appropriate where plaintiff "continued to ignore the court's orders despite the court's warning on February 10, 2010 that further noncompliance could result in dismissal of the action"). "Judicial intervention serves to alert the offending party to the seriousness of its noncompliance and . . . also functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations." <u>Id.</u>

The Court has not warned Mr. Troy against non-compliance with the particular discovery order at issue here, and has not threatened sanctions, including dismissal. Plaintiffs' counsel were, however, warned in April 2016 that a failure to comply with the Court's orders may result in sanctions being awarded. This factor weighs slightly against dismissal.

Given that no factor favors dismissal, the Court respectfully recommends that the motion to dismiss this matter be denied.

### B. Mr. Troy Should Not Be Disqualified From This Action

Defendants argue that Mr. Troy should be disqualified from this case for his alleged unethical conduct. Mot. to Disqualify, ECF No. 117 at 14. Although Rule 37 does not include disqualification as a possible sanction, federal courts have the inherent power to disqualify attorneys in order to "preserve the integrity of the adversar[ial] process." <u>Hempstead Video, Inc. v. Village of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). "Motions to

disqualify are generally not favored.  They are often tactically motivated; they cause delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation." Felix v. Balkin, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (internal citation omitted).  The decision to disqualify is committed to the sound discretion of the trial court.  Cresswell v. Sullivan & Cromwell, 92 F.2d 60, 72 (2d Cir. 1990).  "In a technical sense the only truly binding authority on disqualification issues is [Second] Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority." Skidmore v. Warburg Dillon Read LLC, No. 99 Civ. 10525 (NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001).  Although federal courts often look to state disciplinary rules for guidance, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, 409 F.3d at 132.  In deciding whether to disqualify counsel, a court must balance "the need to maintain the highest standards of the profession" against "a client's right freely to choose his counsel." Hempstead Video, 409 F.3d at 132 (citations omitted).

The balance struck in the Second Circuit reflects a "restrained approach that focuses primarily on preserving the integrity of the trial process." Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC, 896 F. Supp. 2d 330, 331 (S.D.N.Y. 2012) (quoting Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), rev'd on other grounds, 449 U.S. 1106 (1981)); see Bottaro v. Hatton Assocs., 680 F.2d 895, 896 (2d Cir. 1982).  Disqualification is appropriate only if the attorney's misconduct "tends to 'taint the underlying trial' by affecting his or her presentation of the case." Tradewinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (JFK), 2009 WL 1321695, at *4 (S.D.N.Y. May 12, 2009) (quoting Bd. of Ed. of City of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  "The business of the court is to dispose of litigation and not to act as a general

overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." W.T. Grant Co. v. Haines, 531 F.2d 671, 678 (2d Cir. 1976); see Nyquist, 590 F.2d at 1246. In addition, the Court of Appeals has demanded "a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel." Secured Worldwide, LLC v. Kinner, No. 15 Civ. 1761 (CM), 2015 WL 4111325, at *3 (S.D.N.Y. June 24, 2015).

The Second Circuit has held that disqualification is justified in two instances. See Nyquist, 590 F.2d at 1246. First, disqualification is merited if an attorney's concurrent representation of two clients undermines the court's confidence in the attorney's loyalty to his clients. See id.; All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund, No. 08 Civ. 1816 (LDW) (AKT), 2010 WL 2243351, at *2 (E.D.N.Y. June 1, 2010); Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC, 542 F. Supp. 2d 296, 306 (S.D.N.Y. 2008). Second, disqualification may be necessary if the attorney is actually or potentially in a position to use privileged information gained from a former client to the advantage of a current client. See id.; Tradewinds Airlines, Inc., 2009 WL 1321695, at *4; Med. Diagnostic Imaging, PLLC, 542 F. Supp. 2d at 306.

Outside of these two situations, courts "have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct." Tradewinds Airlines, Inc., 2009 WL 1321695, at *4 (quoting Nyquist, 590 F.2d at 1246). The Second Circuit has cautioned that the "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." Nyquist, 590 F.2d at 1247. In order for the appearance of impropriety to be sufficient to support disqualification, a "violation of either the duty to preserve client confidences or the duty to exercise independent judgment on the client's behalf is generally also required." Blue Cross & Blue Shield of New Jersey v. Philip Morris, Inc., 53 F.

Supp. 2d 338, 345 (E.D.N.Y. 1999).  In all cases, courts are hesitant to disqualify an attorney

from representing his client in litigation, and the key to justifying disqualification is

demonstrating a conflict of interest or a potential breach in attorney-client confidentiality.  See

Nyquist, 590 F.2d at 1246.

Blue Cross & Blue Shield is an example from this District of an attorney disqualification

based on solely the appearance of impropriety.  53 F. Supp. 2d at 345.  In Blue Cross & Blue

Shield, District Judge Weinstein dealt with mass tobacco litigation where two of the twenty-one

plaintiffs were represented by Winston & Strawn on a matter unrelated to tobacco.  Id. at 340.

The firm was simultaneously representing the defendant Philip Morris in other tobacco litigation.

Id.  Although Winston & Strawn did not represent the two plaintiffs, Empire and National, in a

tobacco action, concern existed that the firm could access and transfer information to Philip

Morris's New York counsel for use against them in the New York tobacco litigation.  Id.  While

the "chances of an actual conflict [were] insignificant," id., Judge Weinstein nonetheless

disqualified Winston & Strawn from acting as Philip Morris's counsel in the New York tobacco

litigation.  Id. at 347.

Defendants allege that Mr. Troy 1) abused discovery by serving subpoenae on former

LIBI employees ex parte and failing to reasonably ensure his clients' responses to document

requests were accurate; 2) made misrepresentations to this Court, his clients and Defendants; and

3) engaged in improper communications with Ms. Yu, whom Defendants argue was at that time

a party represented by them.  Even were this Court to find that Defendants met the "high

standard of proof on the part of the party seeking to disqualify an opposing party's counsel,"

Secured Worldwide, LLC, 2015 WL 4111325, at *3, Defendants do not allege that Mr. Troy is

compromised due to his concurrent representation of multiple clients, or that he has misused

documents that he has received due to his prior representation of Defendants.  These are the general circumstances where the Second Circuit has held disqualification is justified.

It is not clear to the Court that Defendants have met their "high standard of proof."  See Secured Worldwide, LLC, 2015 WL 4111325, at *3.  For example, Defendants argue that, before Mr. Troy filed her consent form to opt into the case, Ms. Yu was represented by them, and so Mr. Troy's communications with her were in violation of Rule 4.2 of the Rules of Professional Conduct of the New York State Unified Court System (the "RPC"), which states that "[i]n representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law."  In New York, employees only constitute a "party" in the case of a corporate defendant when they are "corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel."  Niesig v. Team I, 76 N.Y.2d 363, 374 (1990); see In re Amgen Inc., No. 10 MC 0249 (SLT) (JO), 2011 WL 2442047, at *9 (E.D.N.Y. Apr. 6, 2011), R&R adopted, No. 10 MC 249 (SLT) (JO), 2011 WL 2418815 (E.D.N.Y. June 14, 2011); Estes v. City of N.Y., No. 01 Civ. 5158 (SLT), 2006 WL 2299350, at *1 (E.D.N.Y. Apr. 11, 2006).  Defendants do not present evidence suggesting Ms. Yu falls into any of the Nieseg categories, and only say that they "discuss[ed] the department's policies and practices as they related to the claims asserted in the original complaint" with Ms. Yu.  Mot. to Disqualify, ECF No. 117 at 19.  Thus, it is not clear that Plaintiffs' counsel's interactions with her were improper.

As to a separate aspect of Ms. Yu's involvement in the case, one of the more troubling issues is the allegation that Ms. Yu intentionally and wrongfully took materials from her then-employer without authority – including confidential student material not related to this case – and that Plaintiffs' counsel reviewed such material despite its seemingly obvious unauthorized release. Given the nature of the materials (e.g., student and faculty records), Plaintiffs' counsel should not have reviewed the materials without confirming with Defendants' counsel that Ms. Yu had properly obtained the materials. Alternatively, Plaintiffs' counsel could have requested any necessary materials in discovery and not used materials obtained by Ms. Yu. The willingness to review and use questionably obtained materials is troubling.

Despite these actions, this is also not one of the "rarest cases" where disqualification based solely on the appearance of impropriety is justified, as was the case in Blue Shield and Blue Cross. In a mass tort situation, the implications of possible conflicts and informed consent are very different than in a smaller suit. Key to Judge Weinstein's ruling were the size and prominence of the litigation: "What might be acceptable in a simple one-client case is not appropriate in massive cases where it is impossible to explain to each person involved the technical points of ethics that support the lawyers' legal positions . . . . Moreover, the appearance of impropriety is enhanced here due to the high profile of the case and the fact that it concerns the health care of millions of people." Blue Cross & Blue Shield, 53 F. Supp. 2d at 340-46. Judge Weinstein also noted that "[c]ourts must be particularly sensitive to the feelings of lay people about what constitutes justice in these mass cases that are widely discussed." Id. at 347.

Unlike Blue Cross & Blue Shield, this matter involves a small number of parties who have had adequate access to counsel and the court to question and understand the nature of their representation. This dispute does not impact the lay public, which intensified the need in Blue

<u>Cross & Blue Shield</u> to guard against the appearance of impropriety.  In <u>Blue Cross & Blue Shield</u>, the nature of the conflict and appearance of impropriety were also very different.  As Winston & Strawn was counsel for both the defendants and the plaintiffs, albeit in different matters, there was a real, however remote, possibility that client confidences could seep from one side to the other.  In the case at bar, Mr. Troy has never represented Defendants, and so there is no allegation that he could use confidential information obtained from his representation of Defendants to his clients' unfair advantage.

For the foregoing reasons, the Court respectfully recommends denying without prejudice Defendants' Motion to disqualify Mr. Troy.

Given Plaintiffs' acknowledged limited knowledge of English, it is respectfully recommended that Plaintiffs' counsel be required to have this Report and Recommendation and the associated District Court Order to Plaintiffs translated to Chinese and provided to Plaintiffs to ensure that they are aware of the concerns with counsel's conduct.  Plaintiffs' counsel should file a letter verifying that this has been done within two weeks of the District Court's Order on this Report and Recommendation.  This would alleviate any concern that Plaintiffs might at a later date that they were not fairly represented because they did not know of these concerns.

### C. Mr. Troy Should Not Be Referred To The Committee On Grievances To Consider The Imposition Of Discipline At This Time

Defendants also ask that this matter be referred "to the Chief Judge for referral to the Committee on Grievances to consider the imposition of discipline."  Mot. to Disqualify, ECF No. 117 at 23 (quoting Local Rule 1.5(f)).  Under Local Rule 1.5, "[d]iscipline or other relief . . . may be imposed, by the Committee on Grievances . . . if . . . [i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct."  <u>C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.</u>, No. 11 Civ. 1402

(MKB) (GRB), 2013 WL 5799908, at *8 (E.D.N.Y. Oct. 25, 2013), R&R adopted, C.M. v. Syosset Cent. Sch. Dist., No. 11 Civ. 1402 (MKB), 2013 WL 6157188 (E.D.N.Y. Nov. 22, 2013).

The Committee of Grievances in the Court of Appeals for this Circuit has found a range of attorney actions worthy of discipline. The Court reviews a few examples. In In re DeMarco, 733 F.3d 457 (2d Cir. 2013), the Committee considered the conduct of an attorney who did not properly monitor his docket (leading to his failure to file timely petitions for review from orders of the Board of Immigration Appeals in two cases, resulting in dismissals for lack of jurisdiction), failed to brief an issue that Court of Appeals had directed him to address and inadvertently misled the Court of Appeals and Committee. Specifically, the attorney misled the Committee by representing that he had not previously violated court orders when he had violated orders setting briefing schedules. See id. at 463. The Committee found that, at the time those orders were violated, there was a common misconception amongst the bar that orders setting briefing schedules were not mandatory, and so the Committee concluded that there was not "clear and convincing" evidence that his misrepresentation was intentional. See id. The Committee found that this conduct was worthy of a public reprimand. See id. at 460.

In In re DeMell, 589 F.3d 569 (2d Cir. 2009), the Committee publically reprimanded an attorney when clear and convincing evidence demonstrated that he failed to respond to a motion to dismiss, leading to a default against his client, and failed to meet deadlines in several other cases. Further, the Committee rejected the attorney's argument that he was not culpable because the attorney who replaced him on the matter failed to cure the default. See id. at 571.

The Committee found that a two-year suspension from the practice of law was warranted in In re Sobolevsky, 430 F. App'x 9 (2d Cir. 2011), when an attorney filed briefs of "shockingly

low quality," failed to supervise his non-lawyer staff and aided them in the unauthorized practice

of law, failed to comply with scheduling orders and filed petitions for review in the Second

Circuit despite venue lying elsewhere.  The Committee also found that there was clear evidence

that the attorney made a number of misstatements in the disciplinary proceedings.  See id. at 1.

      While the Circuit Court's Grievance Committee does not have a specific standard it uses

in making its determinations, a lawyer's failure to meet Court deadlines, when those failures lead

to dismissals, has been found to warrant a public reprimand.  See, e.g., In re Agola, 484 Fed.

App'x 594, 594-95 (2d Cir. 2012) (public reprimand issued where attorney had failed to comply

with scheduling orders and deadlines in twenty-one cases, causing the dismissal of seven cases,

and had been criticized by three district court judges and a magistrate judge); In re Spivak, 469

Fed. App'x 16, 17-18 (2d Cir. 2012) (public reprimand issued where attorney had failed to

comply with scheduling orders in ten cases, causing their dismissal); In re Mundie, 453 Fed.

App'x 9, 10-11 (2d Cir. 2011) (public reprimand issued where attorney had filed a defective

brief in one case, and failed to comply with scheduling orders in thirty-eight cases, causing their

dismissal); In re Einhorn, 428 Fed. App'x 26, 26-27 (2d Cir. 2011) (public reprimand issued

where attorney had defaulted in multiple criminal appeals and caused four to be dismissed on

default, although all four were later reinstated).

      In this litigation Mr. Troy has acted in ways not entirely dissimilar, that at best suggest

his conduct was not diligent within the meaning of Rules 1.1 and 1.3 of the RPC, and at worst

suggest that he willfully misled the Court, his clients and Defendants in violations of Rules 3.3

and 3.4 of the RPC.[6]  Knowing which is the case would require significant development and

---

[6] Rule 1.1 states that a "lawyer should provide competent representation to a client."  Rule 1.3
states that a "lawyer shall act with reasonable diligence and promptness in representing a client"

expansion of the record.

Mr. Troy repeatedly has missed deadlines, failed to ask for extensions and failed to appear at conferences, potentially in violation of RCP 1.3.  Defendants allege that Mr. Troy lied to this Court and to opposing counsel regarding 1) the subpoenas Mr. Troy alleges he innocently sent to Defendant's employees ex parte; and 2) the NLRB charges Mr. Troy drafted, filed and (according to Mr. Troy) forgot about.  Defendant also suggests that Mr. Troy did not reasonably ensure that his clients provided him with all discoverable information requested by opposing counsel.  Of concern to the Court is that there is some evidence that Mr. Troy may have submitted affidavits on behalf of his clients that he may have known or should have known were misleading or false.  The affidavits of Plaintiffs submitted with the opposition to this motion appear to contradict Plaintiffs' deposition testimony by asserting that Mr. Troy asked each Plaintiff about his or her electronic communications regarding their LIBI employment, when Plaintiffs made seemingly contrary statements during their depositions.  Compare Mot. to Disqualify, ECF No. 117, Ex. 1 ¶¶ 3-11, Ex. 2 ¶¶ 3-11, Ex. 3 ¶¶ 4-5, Ex. 4 ¶¶ 4-5, Ex. 5 ¶¶ 4-5, Ex. 6 ¶¶ 4-5, Ex. 7 ¶¶ 4-5, Ex. 8 ¶¶ 16-17 with Mot. to Disqualify, ECF No. 116, Ex. D at 4, 7-8, 11, 15-16.  The affidavits also state that their contents were translated to Plaintiffs, while at least one Plaintiff claimed during deposition that the affidavit's contents were merely described.  These contradictions, which Mr. Troy has not explained, give the Court pause, especially as it seems Plaintiffs' affidavits are substantially identical and appear to have been drafted by the

---

and "shall not neglect a legal matter entrusted to the lawyer."  Rule 3.3 forbids an attorney from making a false statement of fact or law to a tribunal or offering evidence that the lawyer knows to be false.  Rule 3.4 states that a lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal, suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce, or participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

same counsel.  None of the affidavits, including those submitted for this motion, have included a certified translation or evidence that someone competent to do so translated them, and while the affidavits state that a Troy Law staffer translated them, Mr. Troy has stated that an attorney translated them.

This is not the first matter where Mr. Troy has encountered a motion for disqualification. In <u>Zheng v. Kobe Sushi Japanese Cuisine 8, Inc.</u>, 15 Civ. 10125 (AKH), in the Southern District of New York, District Judge Hellerstein disqualified Mr. Troy.  In that case, Mr. Troy, who represents defendants as well as plaintiffs in FLSA actions, had sent a flyer advertising his services to future defendant Kobe Sushi.  Mr. Troy was retained by defendant Kobe's employees who ultimately filed an FLSA suit against their employer.  After Mr. Troy was retained, one of Kobe's managers and an individual defendant in the suit contacted Mr. Troy using Mr. Troy's flyer, and the two discussed the case for a period of time, with the defendant unaware that he was sharing information with his adversaries' lawyer.  Mr. Troy eventually realized he was speaking to an adverse party and ended the call.  Mr. Troy, much as he has done here, suggested this was an honest mistake manipulated and blown out of proportion by defense counsel, but Judge Hellerstein held that disqualification was justified.

Of note, in <u>Chen v. Marvel Food Services LLC</u>, 15 Civ. 06206 (JMA) (AYS), in the Eastern District of New York, Magistrate Judge Shields sanctioned Mr. Troy for his conduct connected to a settlement conference.  Pursuant to Judge Shields's Individual Rules, parties must communicate written settlement offers no less than 14 days before a settlement conference, and parties with authority must appear at the settlement conference.  As the conference began, Mr. Troy informed Judge Shields that he had doubled his demand based on his re-evaluation of the case that day.  The defendant's counsel explained that his client was only authorized to negotiate

up to the plaintiff's previously communicated demand, so the conference could not proceed.  The defendant moved for sanctions, and Judge Shields granted the request.

Although the Court finds Mr. Troy's conduct concerning, it cannot say at this time that there is "clear and convincing" evidence of any ethical improprieties worthy of referral to the Committee.  For example it is possible that Mr. Troy is correct when he says the ex parte subpoenas were mistakenly sent out by a Troy Law staffer, and that he forgot about his work on the NLRB charges.  While Plaintiffs' affidavits and testimony contradict each other, it is not clear whether that is due to Mr. Troy's conduct or to Plaintiffs themselves, and the deposition transcripts raise the possibility that language translation issues could have led to confusion as to Plaintiffs' answers to questions.

It is significant that there is no evidence that Defendants were prejudiced by these actions, unlike the clients of the reprimanded attorneys in the cases discussed above, in which claims were dismissed unnecessarily.

In addition, to refer these issues to the Chief Judge at this time would unduly delay the litigation of this case and call into doubt whether Plaintiffs' counsel could continue to represent his clients in this action.  That would undermine the clients' choice of counsel and possibly give Defendants an unfair litigation advantage in that Plaintiffs and Plaintiffs' possible collective action members would have to retain new counsel at this late stage of the case.  Any review of Plaintiffs' counsel's conduct is better deferred to after this case is concluded unless other issues arise.  Plaintiffs' counsel providing Plaintiffs with a copy of this Order and the District Court's Order, and translating these documents to Mandarin Chinese would give the clients sufficient notice if they wish to change counsel.

For these reasons, the Court respectfully recommends that this matter not be referred to Chief Judge Dora Irizarry for referral to the Committee on Grievances for disciplinary action at this time, and that Defendants' motion be denied without prejudice.

### D. Defendants' Motion For Reconsideration Should Be Denied

Defendants move the Court pursuant to Local Rule 6.3 to reconsider the portion District Judge Amon's Order granting conditional certification of this FLSA action that "instructs defendants to provide to plaintiffs the names, last known addresses, and known email addresses for non-managerial, non-exempt employees who worked for LIBI's Flushing campus between April 18, 2012, and the date of this memorandum and order."  Mot. for Reconsideration, ECF No. 133 at 1 (quoting Mem & Order, ECF No. 123 at 10).  Defendants argue that the evidence of Mr. Troy's alleged ethical violations, which they were not aware of when they filed their opposition to his motion for conditional certification, justify altering that Order to direct Defendants to arrange for a third-party administrator to receive the contact information and send the Court-approved notices, at Defendants' cost.

"A motion for reconsideration pursuant to Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might have materially influenced its decision.  Reconsideration is also appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice."  Ocello v. City of N.Y., No. 05 Civ. 3725 (CPS), 2008 WL 2827424, at *5 (E.D.N.Y. July 21, 2008); see Local Rule 6.3.  The standard for reconsideration under Local Rule 6.3 is "strict," and reconsideration will generally be denied unless a moving party can point to matters that "might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see Linden v. Dist. Council

1707–AFSCME, 415 F. App'x 337, 338-39 (2d Cir. 2011) (affirming dismissal of reconsideration motion where movant did not identify any relevant facts or controlling authority that the lower court had overlooked).  A motion to reconsider "should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided."  New York v. Parenteau, 382 F. App'x 49, 50 (2d Cir. 2010).  Furthermore, reconsideration is not an invitation for parties "to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." de los Santos v. Fingerson, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov.12, 1990).  Indeed, "[t]he purpose of the local rule confining reconsideration to matters 'overlooked' and barring the submission of affidavits unless authorized by the court is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Id. (internal quotation marks omitted).  In re CRM Holdings, Ltd. Sec. Litig., No. 10 Civ. 00975 (RPP), 2013 WL 787970, at *3 (S.D.N.Y. Mar. 4, 2013).  For this reason, "[f]or evidence to be considered 'newly available,' it must be 'evidence that was truly newly discovered or could not have been found by due diligence.' Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P., 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015) (quoting Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012)).

Defendants argue that the evidence of Mr. Troy's alleged ethical violations, which they were not aware of when they filed their opposition to his motion for conditional certification, justify altering District Judge Amon's order to direct Defendants to arrange for a third-party administrator to receive the contact information of potential opt-in Plaintiffs and send the Court-approved notices, at Defendants' cost.

Defendants' timeline undermines this argument. The parties filed their papers moving for and opposing conditional certification on January 21, 2016. See Mot. for Cert. of Collective Action, ECF No. 57; Aff. in Opp. to Cert. of Collective Action, ECF No. 61. Plaintiffs submitted supplemental papers in support of the motion on March 4, 2016, see Affs., ECF Nos. 70-74, and Defendants submitted supplemental opposition papers on March 11, 2016, see Supp. Opp. to Cert. of Collective Action, ECF No. 75. From Defendants' perspective, Mr. Troy's alleged ethical violations became apparent to Defendants in April 2016 and in the months thereafter. The alleged violations thus are "new evidence" for the purposes of Local Rule 6.3. Defendants do not explain why they did not request leave to supplement the record during the pendency of the motion, which was decided on August 11, 2016.

Plaintiffs oppose the modification that Defendants propose, relying on Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981). In Gulf Oil, then-Chief District Judge Joe Fisher of the Eastern District of Texas entered order imposing a complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the court's prior approval, and plaintiffs appealed. See id. at 92. The Supreme Court held that district court exceeded its authority under Federal Rules of Civil Procedure:

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

<u>Id.</u> at 101-02.  The court stated that "the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules."  <u>Id.</u> at 104.

The Second Circuit analyzed <u>Gulf Oil</u> in-depth in <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 595 (2d Cir. 1986).  <u>Rossini</u> was a sex discrimination suit.  In response to a complaint from the plaintiffs about a questionnaire circulated by a defendant among its female employees soon after the commencement of the action, District Judge Brieant issued an order requiring prior court approval of virtually all oral and written communications between the parties and potential members of the class.  <u>See id.</u> at 601.  Judge Brieant later limited the order to written communications only.  <u>See id.</u>  Plaintiffs moved to set aside the order.  <u>See id.</u>  The Second Circuit held that "[u]nlike the order at issue in <u>Gulf Oil</u>, the order here was based on specific findings of fact."  <u>Id.</u> at 602 (internal citation removed).  "Over the course of two hearings, Judge Brieant found that both parties had engaged in improper conduct which posed the dangers of possible chilling of the rights of the potential class members or seeming to pressure any of them unduly to opt out of the class or creating confusion and threatened the essence of fairness and due process in class actions."  <u>Id.</u> (internal citations & quotation marks removed).

As discussed above, certain of Mr. Troy's seeming conduct give this Court pause, but the record does not clearly suggest that the limitation on communications by Mr. Troy and potential opt-ins proposed by Defendants is necessary.  The Court cannot conclude that the errors alleged by Defendants were not inadvertent mistakes on Mr. Troy's part.  Mr. Troy's alleged ethical violations, if true, are also not of the type that would interfere with the rights of potential opt-in Plaintiffs.  It is noteworthy that it appears that Mr. Troy has never been accused of violating ethical rules or court orders when it comes to notifying potential opt-in plaintiffs.  Defendants'

proposal would unnecessarily complicate the administrative task of providing notice to potential opt-ins. Mr. Troy is obviously on notice that he must adhere strictly to the requirements of the District Court's certification Order. Failure to do so may result in an award of sanctions. This should be sufficient to alleviate any concerns going forward.

For these reasons, the Court respectfully recommends denying Defendants' motion for reconsideration.

## III.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court deny Defendants' motion to dismiss or disqualify without prejudice, deny the motion for a referral without prejudice and deny Defendants' motion for reconsideration.

## IV.   OBJECTIONS

This report and recommendation will be filed electronically.

Written objections to this report and recommendation must be filed within fourteen days of service and in accordance with the Individual Rules of the Honorable Carol B. Amon. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  Brooklyn, New York
       January 24, 2017

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge