# LANDMAN CORSI BALLAINE & FORD P.C.

A NEW YORK PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

| | | |
|---|---|---|
| **ANDREW P. KEAVENEY**<br>MEMBER<br><br>TEL: (212) 238-4833<br>EMAIL: akeaveney@lcbf.com | 120 BROADWAY<br>13TH FLOOR<br>NEW YORK, NEW YORK 10271<br>TELEPHONE (212) 238-4800<br>FACSIMILE (212) 238-4848<br>www.lcbf.com | One Gateway Center<br>22nd Floor<br>Newark, NJ 07102<br>Tel: (973) 623-2700<br><br>One Penn Center<br>1617 JFK Boulevard, Suite 955<br>Philadelphia, PA 19103<br>Tel: (215) 561-8540 |

July 23, 2021

*Via ECF*
Hon. Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Luisa Janssen Harger Da Silva v. New York City Transit Authority, et al.*
     **Civil Action No.:  17-CV-04550-FB-VMS**

Dear Magistrate Scanlon:

  We represent defendants New York City Transit Authority (NYCT), Metropolitan Transportation Authority (MTA), and Raqia Shabazz in the above referenced matter and we are submitting this joint letter on *ex-parte* interviews pursuant to the Court's July 2, 2021 scheduling order.

### Dispute

  The relevant portion of the scheduling order stated: "counsel are to submit a joint letter detailing their respective positions regarding which former employees Plaintiff may interview or whom Plaintiff may only communicate with via deposition. If counsel cannot come to an agreement, the joint letter must include sufficient information for the Court to evaluate the parties' positions."  Transit has not provided Plaintiff with information as to which level of employees (or specific job titles) Transit believes Plaintiff may only contact via deposition.  Similarly, Plaintiff has not provided Transit with a list of witnesses that Plaintiff intends to contact *ex parte*.  The parties' respective positions are below.

  A. **Plaintiff's Position**

  The issue before this Honorable Court is what is the best way to determine what level employee is high up enough in the NYCTA/MTA's organizational charts to have speaking authority to bind defendants. If the person lacks binding speaking authority, plaintiff may interview them *ex parte*.

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
July 22, 2021
Page 2

The basis of a person having binding speaking authority is that person's title/position in an organization. The higher level the employee is, the greater their authority and knowledge. There are essentially two places to draw these lines. The first is by the person's overall position in the organization. The second is by their position in the pertinent department(s).

Defendants apparently have misinformed their defense counsel herein who stated to us and put in their section of the initial proposed joint status letter the following:

> Following the conference, it was discovered that Transit does not maintain a hierarchical chart in the ordinary course of business *nor* can it rely on generic categories (*e.g.*, director, vice-president, superintendent) in determining whether a former employee could "bind" them. Transit has approximately 50,000 employees, 10-20% who potentially fall in the category of policy makers. These potential policy makers hold approximately 1000 different job titles, each with unique responsibilities. It is therefore not feasible for Transit to allocate the time and resources researching each unique job title and function to determine (and substantiate) whether a specific individual could "bind" them regarding the issues being litigated in this case. (It should be noted that Defendants have already spent significant resources obtaining this information.)

After defense counsel represented that there were NO such organizational flow charts for the NYCTA, plaintiff's counsel did some investigation that revealed that this assertion was inaccurate. Although plaintiff's counsel does not have all of the relevant charts, as noted, we have some, which belies defendants' assertions that NO such records exist.

Attached hereto as **Exhibit A** are organization flow charts for the NYCTA, both overall and for some of the pertinent departments.[1] For each department listed, it lists the number of Managerial employees. For example, for the Department of Subways has a total of 28,562 employees, but only 904 total managers (see pg. 3); for the Office of System Safety, there are only 37 total managers (see pg. 55). Of those managers, only a fraction would have knowledge of the issues in this case, and only a fraction would have speaking authority.

The charts annexed are for 2016 (the year of the subject incident), and defendants should be required to produce all relevant charts for the relevant time period herein.

---

[1] Doubtless there are similar charts for the MTA.

4844-8925-0035v.1

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
July 22, 2021
Page 3

Clearly, defendants have possession of these charts, which would allow them to designate those titles/positions to which they claim their employees have speaking authority.

Despite having furnished a copy of the Transit Authority's own organizational chart from the year of this accident, which lists relevant departments, titles, positions and names of employees – all of which are easily verifiable facts – they deny the existence of this document. Their denial is baffling and the rest of their arguments similarly lack merit.

Using these charts, as plaintiff has suggested, is the simplest, fastest and most efficient way to decide which employees defendants' claim have binding "speaking" authority.

It is plaintiff's understanding that the titles/positions noted in these charts identify those employees that defendants' claim have binding speaking authority. If defendants claim that any title/position identified in these charts lacks speaking authority, they should so state. If there are any additional charts that have titles/positions/names for the relevant time period that they claim have speaking authority, they should produce them. Anyone not identified by title/position and name in these charts or other charts provided, lacks such binding speaking authority and plaintiff's counsel may conduct *ex parte* interviews of them.

To assist the defendants in identifying the applicable organizational charts, plaintiff has identified below[2] (from review of defendants' discovery production made thus far), different departments within the NYCTA/MTA that are relevant to the issues herein. While plaintiff believes that many of the departments below are covered by the attached charts (but not for all years), the defendants are in the best position to produce ALL applicable charts related to the following, and doing so clearly eliminates the "massive" amount of work defendants have claimed would be otherwise necessary.

1. Department Subways
    a. Service delivery
    b. Division of Station Environment
    c. Rolling Stock
    d. Maintenance of Way
    e. Safety
    f. Service Delivery
    g. RTO
    h. Operations
    i. Any sub department involved with TIDS or Platform Edge Doors

---

[2] Plaintiff has identified departments that may or my not be duplicative or departments within other departments, which is why these charts are necessary.

4844-8925-0035v.1

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
July 22, 2021
Page 4

2. Capital Program Management
3. Capital Planning & Budget Division
4. Capital Projects
5. Capital Programs
6. Procurement
7. Materiel
8. Security
9. Systems and security CPM
10. Law – re their involvement as stakeholders
11. Operations Support
12. Office of System Safety
13. MTA Dept. of Corporate Communications
14. Technology and Information Services
15. Division of Operations Planning
16. Strategic Capital Project Planning
17. ADA Office
18. MTA Real Estate
19. Subway Operations Improvement
20. NYCT Operations Planning
21. Office of technology and Innovations or office of strategic innovation and technology
22. Strategic Improvements and best practices
23. MTA Capital Construction (believed to be MTACC)
24. CCM Capital Construction management
25. Station environment and operations
26. Government & Community relations MTA
27. Communications
28. Media relations
29. Track engineering
30. Capital Program development engineering
31. Capital Security Program
32. Operations Analysis
33. Operations support
34. Risk assessment and fire safety
35. Fire protection and safety  - Office of system safety
36. Service delivery
37. President's office
38. Office of System Safety - Rapid Transit Investigations
39. CSE Engineering

B. **Defendants' Position**

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
July 22, 2021
Page 5

During the June 29, 2021 conference, Defendants advised that, when the issue of *ex parte* interviews was first raised, the Court suggested that plaintiff provide an overly inclusive list of individuals that counsel sought to contact *ex parte*. Defendants further advised that they could not properly assess which former employees could potentially "bind" them without knowing who counsel intended to contact. Plaintiff's counsel advised that it was not practical to provide names (or specific titles) given that it was a "large list."

Following the conference, it was discovered that Transit does not maintain a hierarchical chart in the ordinary course of business *nor* can it rely on generic categories (*e.g.*, director, vice-president, superintendent) in determining whether a former employee could "bind" them. (See **Exhibit B**). Transit has approximately 50,000 employees, 10-20% who potentially fall in the category of policy makers. These potential policy makers hold approximately 1000 different job titles, each with unique responsibilities. It is therefore not feasible for Transit to allocate the time and resources researching each unique job title and function to determine (and substantiate) whether a specific individual could "bind" them regarding the issues being litigated in this case. (It should be noted that Defendants have already spent significant resources obtaining this information.)

Defendants alerted plaintiff's counsel to these feasibility issues and again advised that the process could be significantly expedited if counsel provided an overly inclusive list of potential interviewees. Counsel would not agree. Since Plaintiff will not provide that information and has neither noticed any formal depositions on the immunity defense nor supplemented her Rule 26 disclosures, Defendants would be compelled to analyze thousands of policy makers in order to generate an accurate list. Clearly, this list would include certain titles, but in light of the above, there is no bright line separating the two categories.

During the course of drafting this letter, plaintiff's counsel provided Defendants with a document he claims contradicts the results of Transit's internal investigation (and statements made by Transit chief Sarah Feinberg, see **Exhibit B**). However, the document does not rebut Transit's argument about the significant manpower required to evaluate the unique responsibilities of each of Transit's policy makers. The determination as to who at Transit actually has "binding authority" for the issues in this case must be made on a case-by-case basis. Plaintiff's list of departments (provided in an attempt to limit which employees Transit must research) does little to alleviate the burden on Transit. In that regard, Plaintiff has identified departments covering tens-of-thousands of employees (10-20% of which are potential policy makers).[3] In short, Transit is still left with a task that is not feasible.

---

[3] For example, plaintiff's counsel identifies various departments like Department of Subways (employing over 28,000 individuals), Capital Program Management (1,354 employees), and Operations Support (467 individuals). See Exhibit A, pp. 7, 9.

4844-8925-0035v.1

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
July 22, 2021
Page 6

      To the extent plaintiff's counsel also argues that Defendants should be forced to produce any charts like **Exhibit A**, plaintiff's counsel has served no discovery demand for same.

      In the event the Court finds that Plaintiff may contact, *ex parte*, *any* of Defendants' former employees (besides Board Members), Defendants are concerned about the interviewee's right to counsel and the potential that the interviewee may divulge privileged information. Therefore, Defendants suggest the following guidelines govern any *ex parte* communications: 1) plaintiff's counsel must identify himself/herself and the purpose of the contact; 2) advise that the former employee may have his or her own counsel present; 3) advise the former employee should not disclose the substance of any communications with counsel or divulge any privileged information; and 4) honor any request by the interviewee that the interview either not take place *or* that it take place only in the presence of his or her own counsel.

      Respectfully submitted,

*Andrew P. Keaveney*

Andrew P. Keaveney

cc:    All Counsel (via ECF)

4844-8925-0035v.1