# LANDMAN CORSI BALLAINE & FORD P.C.

### A NEW YORK PROFESSIONAL CORPORATION

### ATTORNEYS AT LAW

ANDREW P. KEAVENEY
MEMBER

TEL: (212) 238-4833
EMAIL: akeaveney@lcbf.com

120 BROADWAY

13TH FLOOR

NEW YORK, NEW YORK 10271

TELEPHONE (212) 238-4800

FACSIMILE (212) 238-4848

www.lcbf.com

One Gateway Center
22nd Floor
Newark, NJ 07102
Tel: (973) 623-2700

One Penn Center
1617 JFK Boulevard, Suite 955
Philadelphia, PA 19103
Tel: (215) 561-8540

April 29, 2022

***Via ECF***

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>       **Re:**   ***Luisa Janssen Harger Da Silva v. New York City Transit Authority, et al.***
>                 **Civil Action No.:  17-CV-04550-FB-VMS**

Dear Magistrate Scanlon:

We represent defendants New York City Transit Authority (NYCT), Metropolitan Transportation Authority (MTA), and Raqia Shabazz in the above referenced matter and submit this letter in response to plaintiff's letter motion for a protective order[1] regarding depositions in this matter.  For the following reasons, plaintiff's motion must be denied.

Plaintiff's counsel highlights the fact that this is their second motion relating to depositions in this matter.  However, the first motion was made against defendants' prior counsel.  As such, an over-riding consideration should be whether two separate law firms improperly objected to plaintiff's counsel's questions or whether plaintiff's counsel's questions are so objectionable as to the manner in which they are posed.  A reading of the transcript, including the portions movant highlights, clearly demonstrates it is the latter.

The witness, Andrew Bata, is a former employee of NYCT who retired in 2015.  His non-party deposition was conducted by plaintiff's counsel Bob Genis, a seasoned litigator with almost 40 years of experience consisting of numerous trials and countless depositions.  Yet despite this,

---

[1] Under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c).  Plaintiff's motion for a protective order is procedurally defective because she failed to certify that they conferred in good faith with Defendant prior to filing their motion. Plaintiff, on April 14, 2022, merely advised defense counsel that it would be making the motion.

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 2

counsel, whether intentionally or unintentionally, could not ask a simple question that was not leading, argumentative, compound, ambiguous, assuming facts, speculative, cumulative, repetitive, or, worse, hostile and badgering, over the seven hour, 343 page, deposition.[2]  Movant now wants defense counsel to pay for and then sit on their hands while they conduct a further deposition of a non-party witness who defendant has no control over and no guarantee that he will be within the Court's jurisdiction at the time of trial.

An attorney defending a deposition not only has a right, but an obligation to make timely objections or risk having them waived.  The transcript demonstrates that all of defendant's objections were proper and that there were no instances of "coaching" the witness.  The objections were simply stated so as to not suggest any particular response from the witness and were not made in bad faith.  Nor did they cause any delay in the deposition or prevent plaintiff's counsel from inquiring about any topic.

Initially, it should be noted that defense counsel, at the beginning of the deposition, instructed the witness to answer all questions:

> Q.      So, you are telling us, according to good and accepted practices and procedures, it is okay for the Transit Authority to unnecessarily expose the public to unnecessary harm?
>
> MR. KEAVENEY: Objection. You can answer, unless I say not to.
>
> MR. GENIS: I am going to withdraw that question and ask another one. Let me ask a better question.
>
> MR. KEAVENEY: Answer the question unless I say don't answer. My objections are for the record, but please answer unless I say otherwise. Thank you.

(Plaintiff's Exhibit "A" at pp 43-44.)

However, it did not take long for plaintiff's counsel to begin a relentless stream of condescending and badgering questions that served no purpose other than to "unreasonably annoy, embarrass, or oppress" the witness (*see* Fed. R. Civ. P. 30(d)(3)(A))[3].  For example:

---

[2] Plaintiff's counsel meticulously recorded the time of each break to ensure that a full 7-hour deposition, that went from 10:07 a.m. to 6:12 p.m.

[3] Defendants did consider moving for relief under Fed. R. Civ. P. 30(d)(3)(A) but did not want to delay the completion of discovery.

Landman Corsi Ballaine & Ford p.c.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 3

Q.   Well, there are things that are necessary and things that are unnecessary; correct?

A.   I find it difficult to answer that question with that unnecessary and necessary. I am sorry.

Q.   Not a problem. I am here to help.  So, let's see how I can help you. Let's look up the word necessary in *dictionary.com*. According to *dictionary.com*, the definition of necessary, it is an adjective, "Being essential, indispensable, or requisite, acting or preceding with compulsion or necessity." So, can we agree on the definition of necessary?

(Plaintiff's Exhibit "A" at pp 47.)

Counsel continued:

Q.   ***It is a simple question***. It is a black and white question. Either they are allowed to unnecessarily expose people to harm or they are not, according to professional standards of care.

A.   There are incidental circumstances that can be explained.

Q.   ***Are you here to help the Transit Authority today***, sir, that you get a pension from and you are sitting in their lawyer's office and you contacted them after receiving a subpoena?

MR. KEAVENEY: Objection. The witness is here subject to a subpoena.  Don't answer the question.

MR. GENIS: You are directing him not to answer.

MR. KEAVENEY: Yes.

Q.   ***And you do understand that when you are perceived as evasive by not answering a direct simple question, a jury might view you as evasive?***

MR. KEAVENEY: Objection. That's an improper question. Don't answer that.

Q.   Sir, credibility is an issue of every witness. You understand that if you are evasive to questions, you might be viewed as less than credible by a jury by virtue of being evasive?

MR. KEAVENEY: Objection. That's an improper question. Don't answer that.

(Plaintiff's Exhibit "A" at pp 49-50 [emphasis added].)

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 4

Regardless, the witness answered a similar question:

Q.      Because, sir, you told us, you not here to protect the interest of the defendant in this
        lawsuit, are you; are you here to do that, sir?

        MR. KEAVENEY: Objection.

Q.      Are you here to do that, sir?

A.      I am trying to give you my best knowledge.

But counsel continued:

Q.      I know. But could you answer that question I just put to you; *are you here to protect
        the interest of the Transit Authority who pays you a pension and brought you to
        their attorney, to their office, for this deposition today?*

        MR. KEAVENEY: Objection. Don't answer that question.

Q.      Are you here to protect the interest of the Transit Authority, sir?

        MR. KEAVENEY: Don't answer that question. It is an improper question.

(Plaintiff's Exhibit "A" at pp 75-6 [emphasis added].)

And asked again:

Q.      *How much are you being paid to be here by the Transit Authority?*

        MR. KEAVENEY: Objection.

Q.      How much are they paying you?

A.      You want to me to answer? Zero.

Q.      How much are you being promised?

A.      Zero.

Q.      What have you been promised?

A.      Zero.

Q.      For loyalty and your pension that you are doing this?

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 5

A.      Coffee.

Q.      Loyalty and pension is why you are trying to help the Transit?

        MR. KEAVENEY: Objection. Don't answer that question.

(Plaintiff's Exhibit "A" at p 304 [emphasis added].)

        And again:

Q.      Sir, when you volunteer words non-responsively to my questions, you are doing so
        each and every time to assist the Transit Authority; true?

MR. KEAVENEY: Objection.

Q.      You can answer.

A.      It is not true at all.

Q.      Have you volunteered a single thing yet, in response to any of my questions, that
        would be of assistance to any of the victims who were killed or maimed by being
        run over by these trains that platform edge doors could have prevented?

(Plaintiff's Exhibit "A" at pp 109-110.)

        And again:

Q.      Is the reason you can't answer with a yes or no because you are here to help the
        Transit, sir?

        MR. KEAVENEY: Objection. Improper question. Don't answer that.

(Plaintiff's Exhibit "A" at p 313.)

Counsel continued badgering the witness with sarcastic and insulting questions:

Q.      *Just answer my nice, simple question*. Did you ever send a follow-up e-mail, to
        your e-mail of November 7, 2011, to the Transit Authority, "When will we listen
        to/follow proven international best practices here," boldfaced; did you ever send a
        follow-up e-mail saying, *"Geez, don't listen to me. I was not objective"?*

A.      No, I did not.

(Plaintiff's Exhibit "A" at p. 99 [emphasis added].)

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 6

Counsel continued:

Q.      So, when you wrote "absolutely" in response to platform doors should have been the standard for new stations ten years ago, "absolutely" with four exclamation points, you didn't actually mean what you wrote; is that what you are telling me right now under oath?

A.      What I meant is that we should look at it to see if it is feasible and makes sense.

Q.      So, you are *lying* when you wrote the word "absolutely"?

        MR. KEAVENEY: Objection.

(Plaintiff's Exhibit "A" at p. 111 [emphasis added].)

And again:

Q.      So, the Transit didn't think it was unethical to ask people to do it for free, the people reviewing the RFI didn't think it was unethical to send it for free, and it was sent, and you told us it was not unethical to send it; is that an accurate summary?

        MR. KEAVENEY: Objection. You can answer.

A.      In your view, probably. In your definition, probably, yes.

Q.      *How about on the planet earth, in reality*, factually, was that an accurate summary?

A.      I am not going to get into debate of ethics. It is not black and white.

Q.      By the way, since we are on the topic of ethics, *would it be ethical for a witness to shave their testimony to favor one litigant over another; would that be ethical?*

(Plaintiff's Exhibit "A" at pp. 198-99 [emphasis added].)

And again:

Q.      My question was, do they put safety first? It is a yes or no question.

A.      I cannot give you a yes or no, but in general.

Q.      If you can't, you can't. *If it is too complicated for you*, I understand that, sir. *You know, yes or no questions can be hard. I get it.*

(Plaintiff's Exhibit "A" at p. 271 [emphasis added].)

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 7

And again:

Q.      Okay. So, when you were looking for safety, did you even consider what the speed of the trains were when you were looking for safety solutions?

A.      Worldwide best practice --

Q.      Can you just answer my question, sir?

MR. KEAVENEY: He was answering your question.

MR. GENIS: He did not answer the question. He did not. No. We are here so long because *he babbles* without answering the question. He goes on, and on, and on, and on.

(Plaintiff's Exhibit "A" at pp. 293-4 [emphasis added].)

And again:

Q.      *You have a master's degree. I would imagine you would be able to answer a yes or no question with a yes or no.*

MR. KEAVENEY: Objection. Stop badgering the witness.

(Plaintiff's Exhibit "A" at p. 303-4 [emphasis added].)

And again:

Q.      Sir, does your word mean anything to you?

MR. KEAVENEY: Objection.

A.      Absolutely.

Q.      So, when you have given me your word, repeatedly, that you will answer a yes or no question or a true or false question with a yes or no or true or false, were you lying or telling the truth?

MR. KEAVENEY: Objection. Do you understand the question; yes or no?

A.      I am a truthful person and I am trying to explain, but you don't listen.

Q.      *Anytime somebody tells me how truthful they are, I know what that means.*

(Plaintiff's Exhibit "A" at p. 321 [emphasis added].)

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 8

Counsel also asked questions that were appropriately responded to but not to his liking, so the badgering continued:

Q.     Okay. So, platform screen doors have been around for many, many decades; correct?

A.     Correct.

Q.     They are not new, they are not different in the world; correct?

A.     They are very different in many stations.

MR. GENIS: That's not my question, sir. Move to strike.

THE WITNESS: They are different worldwide.

MR. GENIS: Move to strike. That's not my question.

Q.     ***You are not here to help the Transit; right? I am just checking.***

A.     I am giving the facts.

(Plaintiff's Exhibit "A" at pp. 152-3 [emphasis added].)

And again:

Q.     When you said you would look at best practices and look internationally, did that include looking into the U.S., as well?

A.     The U.S. doesn't have any.

MR. GENIS: Sir, that's not my question. Move to strike.

(Plaintiff's Exhibit "A" at p. 224.)

Counsel also took issue with a response to an exhibit that the witness was viewing for the first time and asked:

Q.     So, for example, in the year of 2001, 110 people were struck by trains; correct?

A.     Yes. Does that include suicides?

Q.     Sir, if you just -- let me do a preface here. If I ask you, sir, a yes or no question, or a true or false question, would you please just answer with a yes or no, or a true or

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 9

false. I can go along much quicker and take up less of your time if you are responsive.

A.      It is a natural question from knowing the business.

(Plaintiff's Exhibit "A" at pp. 56-7.)

It should be noted that movant did not provide defense counsel with a list of planned exhibits prior to the deposition, so as to streamline the testimony. *See, e.g., In re Takata Airbag Prods. Litig.*, MDL No. 15-2599, 2016 WL 6844311, *5 (S.D. Fla).[4] Instead, counsel, at one point, consumed six deposition pages and countless time reading from a document (Exhibit"1") and asking the witness to confirm his accuracy. (Plaintiff's Exhibit "A" at pp. 57-62.)

Counsel repeated this behavior by reading a document into the record and asking "Did I read that correctly?" after each paragraph. (Plaintiff's Exhibit "A" at pp. 162-4.) Counsel continued this unnecessary and wasteful practice by reading a document and asking the witness if he read it correctly. (Plaintiff's Exhibit "A" at pp. 175-80.) (*See e.g. Williams v Fire Sprinkler Associates Inc.*, No. 15Civ. 3147, 2017 WL 1156012, *3 (E.D.N.Y.)("Plaintiff's counsel controlled the structure of the deposition, including the number of documents placed before the witness as exhibits to be reviewed. In doing so, she assum[d] the risk for time expended in reviewing these documents before the witness answered. Likewise, counsel was free to alter her questioning or move on if too much time was taken up in reading the exhibits.").

Counsel also showed the witness a post-accident photo of the injured plaintiff (Exhibit "2") and asked the following wasteful question to this particular witness:

Q.      That's the young woman I represent in this case. Are her injuries somewhat typical of these injuries we have been discussing when people get run over by trains in the subway system in New York?

MR. KEAVENEY: Objection.

A.      I don't know what is typical.

(Plaintiff's Exhibit "A" at pp. 63-4.)

---

[4] *Takata*, *supra*, addresses the use of translated documents but is submitted herein for the proposition that "the [p]laintiffs should be adequately incentivized to use the time spent with each deponent wisely. If translated documents have not been produced beforehand, and the witness is forced to review them for the first time on the record, valuable deposition time will pass without questioning while the subject document is under review." *Id.* The court went on to say: "[a]lthough advance production will not be required, [p]laintiffs should thus consider voluntarily producing deposition exhibits in advance, particularly if [p]laintiffs intend to seek additional time with a particular witness." *Id.*

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 10

Movant complains about defense counsel advising the witness not to answer certain questions. But counsel clearly knew some questions were improper. For example:

Q.      And you are familiar with the George Washington Bridge; correct?

A.      Correct.

Q.      And the George Washington Bridge, to your knowledge, are there fences on it to prevent people from committing suicide by jumping off of the bridge?

MR. KEAVENEY: Objection.

A.      I am not aware. I used to walk across the bridge and there was no fence.

Q.      So, if there was sworn testimony and photographs and documents of evidence of fencing on that bridge to prevent suicides, would that be true or false?

MR. KEAVENEY: Objection. If there was, would it be true or false?

MR. GENIS: Well, we know there were. We know this for a fact.

MR. KEAVENEY: It is a poor question. Don't answer it.

MR. GENIS: You know what, I will rephrase it.

Q.      If you saw a photo of fencing on the GW Bridge, would that be an accurate photo or would that be invented?

MR. KEAVENEY: Objection. Don't answer that.

MR. GENIS: Let's do this another way.

(Plaintiff's Exhibit "A" at pp. 70-1.)

Plaintiff's counsel continued to badger the witness:

Q.      Can you please name one, involving the New York City Transit Authority, that has no rail, no fencing, for a bridge, a walkway or passageway that goes over train tracks of the Transit Authority that lacks that railing or fencing?

A.      Honestly, *I don't know*. It is a huge system. *I don't know*.

Q.      In fact, even inside stations there are frequently walkways to go from, let's say, the northbound to the southbound side of the train; correct?

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 11

MR. KEAVENEY: Objection. You may answer.

A.      Yes.

Q.      Those walkways, do they have railings or fencing of some sort?

A.      I said there are many. ***I don't know***. Some do and some don't, probably.

Q.      So, you are telling us, the Transit Authority, they have walkways in an underground station to go from one side to the other, and  above  the  train  tracks  there  are  no fences or railings or anything?

MR. KEAVENEY: Objection. He said ***he didn't know***.

MR. GENIS: That's what I am asking. I am following up.

MR. KEAVENEY: You are asking him the question again.

MR. GENIS: I am asking another follow-up question. Can I please get an answer?

A.      Some probably do and some probably don't. ***I don't know.***

(Plaintiff's Exhibit "A" at pp. 71-3 [emphasis added].)

The above are just a few of the examples of plaintiff's objectionable questions.  As noted by movant, the direction not to answer was only made 12 times.  Movant claims each one was improper as it prevented entire lines of questioning.  However, movant fails to explain, for example, what valid line of questions would be developed if the witness answered the numerous questions as to whether he is being paid for his testimony or if he is being truthful (*see e.g. Thomas v. Rockin D Marine Services, LLC*, No 12 Civ. 1315, 2013 WL 2459217, *6 (E.D.La.)("Upon evaluation of the transcript, the Court agrees with Clark that Discon's line of questioning, although initially related to Clark's deposition history, veered into an in irrelevant and intrusive discussion about Clark's personal medical history.  Discon's argument in support of this turn of events was apparently that he was entitled to "discover things" about a third party so long as that party is willing  to  submit  to  a  deposition.  The  Court  cannot  accept  such  opaque  justifications.").  Nevertheless, it should be noted that the witness did answer these questions (*see* Plaintiff's Ex. "A" at pp. 75-6; 109-110; 304).

Regardless, movant ignores those harassing questions in its motion and instead highlights the irrelevant question of how much time the witness spent with counsel prior to the deposition, despite already obtaining information regarding what he did when he received the deposition subpoena, who he spoke to after he received it, and what he reviewed to prepare for the deposition (Plaintiff's Ex. "A" at pp. 6-10).  Even if answered, any follow-up could only lead to privileged information (*e.g.*, what was said, *see* Plaintiff's Ex. "A" at p. 23) and, therefore, the question was

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 12

clearly designed to annoy the witness (*see e.g.*, Fed. R. Civ. P. Rule 30(d)(3). Plaintiff's reliance on *Gavirty v City of New York*, No. 12 Civ. 6004 (2014 WL 4678027, *3 (EDNY 2014) is misplaced, since the case only allowed counsel to ask if he met with an attorney, which plaintiff herein had already established.

Plaintiff's next claim that defense counsel improperly directed the witness not to answer questions regarding speed policy. It was and is defendant's position that "speed policy" was never pled, the issues was discussed and left unresolved at the December 15, 2021 status conference, and was subject to the then pending cross-motion for a protective order (*see* ECF Doc. No. 164; *see also* defendant's renewed motion for a protective order at ECF Doc. No. 169). Plaintiff argues that the cross-motion was only related to documents and not testimony (*see* Plaintiff's Motion at FN 4.) However, Fed. R. Civ. P. 26(b) limits the scope of ***discovery*** to "any nonprivileged matter that is relevant to any party's claim or defense" (emphasis added). "To hold otherwise would force parties to conduct often wasteful discovery on myriad unpled, but arguably factually-plausible claims" (*Lifeguard Licensing Corp. v. Kozak*, No. 15 Civ. 8459, 2016 WL 3144049, *3 [S.D.N.Y.]).

Regardless, movant was allowed to and did ask the witness speed policy related questions that consumed over 45 pages (almost 15% of the deposition) of testimony (*see* Plaintiff's Ex. "A" at pp. 283-329).

Movant claims the witness' responses to plaintiff's counsel questions prevented a full and fair hearing.[5] However, "[d]uring the taking of a deposition, the witness has, in general, the same rights and privileges as would a witness testifying in court at trial" (*Thomas v. Rockin D Marine Services, LLC*, No 12 Civ. 1315, 2013 WL 2459217, *4 (E.D.La.) [emphasis in original], *citing* 8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2113 2d ed. 1994). Yet, movant claims that witness "babbled" and failed to answer question with a "yes" or "no." *Thomas, supra*, addressed a similar issue:

> What this exchange reflects is not Clark's attempt to elude an answer, but rather his refusal to answer the question in the manner which Thomas wished him to. Specifically, Clark stated that the "accident report" did not require him to put down "reasons" for the accident. Therefore, because a "no" answer to any of Discon's questions might lead to the mistaken inference that Clark had purposefully failed to include any information about the reason for Thomas' accident on his form, he qualified his answers to indicate that the form did not require him to provide this information. Thomas is not entitled to re-depose Clark on a topic which has already been adequately answered.

---

[5] While defendants do not agree that the witness' conduct was evasive, to the extent movant seeks relief as to the witness, such remedy is unavailable as movant failed to move under Fed. R. Civ. P. 37(a)(3)(i).

LANDMAN CORSI BALLAINE & FORD P.C.

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 13

Movant also claims that defendant unilaterally ended the deposition.  However, movant was well aware of the time limits under the federal rules and at one point during a break, added up all the previous breaks to ensure he filled the allotted 7 hours.  Any inability to ask further questions was solely due to movant's own deposition questions, ineffective use of exhibits, and poor time management.

Based on the above, movant seeks two remedies.  First, movant begs this court to allow more time to question the witness.  However, a review of the transcript reveals that all relevant topic (*e.g.*, platform screen doors, track intrusion devices, signage, fencing, *etc.*) and even irrelevant topics (*e.g.*, speed policy) were inquired about and ultimately answered.  Movant has not set forth any topics in which he claims he was unable to inquire and only speculates that the witness' 33 years with NYCT somehow warrants it.  Movant also claims that the sheer volume of records in this case requires more time.  Yet, movant only showed the witness 17 exhibits, including unnecessarily showing the witness a picture of the injured plaintiff, and spending an inordinate amount of time reading his own exhibits into the record.

"A party seeking a court order to extend the time for examination or otherwise alter the limitations is expected to show good cause to justify such an order" (*Williams v. Fire Sprinkler Associates Inc.*, No. 15 Civ. 3147, 2017 WL 1156012, *2 (E.D.N.Y.)(internal citations omitted). "Likewise, whether the requisite 'good cause' exists requires a fact-specific inquiry" (*Id.*).  Clearly, movant has not met this burden.

Second, movant seeks sanctions in the form of court reporting fees and the cost of the deposition transcript, be imposed on defendants. "[U]nder Rule 32, awarding sanctions based only on the number of objections would have the perverse effect of rewarding – or at least condoning – confusing and objectionable questions" (*Edwards v Wilkie*, No. 16 Civ. 8031, 2019 WL 5957171, *3 (S.D.N.Y.)).  Courts in this Circuit have declined to impose such sanctions (*see id.*)

Movant further claim that the phrase "objection, you can answer" is somehow improper. However, this court, in *Gavirty v City of New York*, No. 12 Civ. 6004 (2014 WL 4678027, *7 (E.D.N.Y.) addressed a similar complaint and held:

I find unavailing Ms. Wolstein's complaint that Ms. Wachs's "continuous" repetition of the phrase "Objection-you can answer" "seem[ed] to signal to the deponent, falsely, that the question[s were] somehow improper so as to guide him in giving answers."  The phrase "Objection-you can answer" cannot be said to "elaborate ... on [Ms. Wachs's] reasons for objecting," *Applebaum v. Nat'l Westminster Bank*, No. 7 Civ. 916(DLI)(MDG), 2011 WL 8771843, at *6 (E.D.N.Y. Oct. 5, 2011); instead, I find that it conforms to *Meyer* and did not give any express cue to Defendant Durante, *Meyer*, 2012 WL 3536987, at *4.

*Id.*; *see also Quinio v. Aala*, No. 15 Civ. 4912, 2017 WL 8646668 (E.D.N.Y.)("Stating 'if any,' 'objection to form,' and even stating 'he didn't testify that there was a contract,' are

**LANDMAN CORSI BALLAINE & FORD P.C.**

Hon. Vera M. Scanlon, U.S.M.J.
April 29, 2022
Page 14

legitimate attempts to interpose form objections or attempts to clarify uncertainties in the question. Such form objections are not baseless; they must be made or else they are waived").

       Finally, movant claims that Defendant's conduct prevents them from "moving forward with setting up additional depositions, or questioning witnesses, whether formally or informally." This, of course, ignores the fact that this Court's prior ruling gave plaintiff's counsel unfettered access to 105 former employees of defendants in order to conduct *ex-parte* interviews without notice to defense counsel.  It strains logic to see how one is related to the other.

       Accordingly, based on the above, there is no basis to impose *any* sanctions or restrict defense counsel's representation of witnesses in this matter.

       For the foregoing reasons, it is respectfully requested that plaintiff's motion is denied in its entirety.

       Respectfully submitted,

       *Andrew P. Keaveney*

       Andrew P. Keaveney


Attachment

cc:    All Counsel (via ECF)