UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
LUISA JANSSEN HARGER DA SILVA,

        Plaintiff,

  - against -                                    17-cv-04550(FB)(VMS)

NEW YORK CITY TRANSIT AUTHORITY,
METROPOLITAN TRANSPORTATION
AUTHORITY, and RAQIA SHABAZZ,

        Defendants.
----------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SANCTIONS

LANDMAN CORSI BALLAINE & FORD P.C.
Andrew P. Keaveney, Esq.
Attorneys for Defendants
120 Broadway - 13th Floor
New York, New York 10271
(212) 238-4800

4883-5323-1189v.2

**PRELIMINARY STATEMENT**

Defendants New York City Transit Authority ("NYCTA"), Metropolitan Transportation Authority ("MTA"), and Raqia Shabazz in opposition to plaintiff's motion for an order, pursuant to Fed. Rules of Civ. Pro. Rule 37(d)(1)(A)(i), granting the following relief: (1) precluding the Defendants from disputing or contradicting the testimony of their Rule 30(b)(6) witness; (2) for adverse inferences to be drawn against the Defendants; (3) resolving certain issues in accordance with documents previously exchanged by Defendants in discovery and other testimony previously given by Defendants; and (4) costs for time spent "preparing" for the 30(b)(6) deposition.

**BACKGROUND AND ACTUAL FACTS**

"The squeaky wheel gets the grease." At least that is plaintiff's counsel's *modus operandi* when litigating this case. This personal injury federal case based on diversity arises from an August 2, 2016 accident in which plaintiff, Luisa Janssen Harger Da Silva, fainted in NYCTA's Atlantic Avenue – Barclays Center subway station and fell off the platform and onto the tracks into the path of an oncoming subway train. As a result, Plaintiff's sustained serious injuries.

Discovery has been ongoing since 2017. Despite Defendants producing over 60,000 pages of documents and 15 witnesses for deposition, including a former president of NYCTA and a former chairman and chief executive of the MTA (a governor nominated and senate confirmed position), that produced over 4000 pages of testimony, plaintiff's counsel screams for more because Defendants' **_second_** 30(b)(6) witness was allegedly "unprepared" and "insufficient" (an argument also made against Defendants' first 30(b)(6) witness). However, the transcript (which plaintiff failed to include a complete copy with her motion) reveals that the witness, Eric Jones, was a prepared and suitable witness and that plaintiff's counsel, instead of conducting a proper 30(b)(6) deposition to elicit corporate policies, questioned the witness on the same topics as prior

1

witnesses using identical questions and failed to further inquire about policies the witness clearly had knowledge.

In essence, the discovery in this case disputes plaintiff's ever-expanding claims and theories and, as such, plaintiff's counsel, via their instant motion, is making a last-ditch effort to avoid having to prove the merits of their client's case. Plaintiff's counsel's motion is nothing more than "gotcha moments" based on lapses in memory on broad and obscure issues and topics that range over 20 years and that have been previously documented, disclosed, and discussed *ad nauseam* during the past five years of discovery. Plaintiff's counsel's conduct demonstrates an abuse of the 30(b)(6) deposition and does not warrant the requested relief. As this Court previously noted, "enough is enough."

## ARGUMENT

## POINT I

## TRANSIT'S 30(b)(6) WITNESS WAS PREPARED

Plaintiff asks that this Court find Defendants' Rule 30(b)(6) witness was so unprepared that it amounts to failure to appear. Plaintiff's motion should be denied.

"[I]t is well established that 'Rule 30(b)(6) is not designed to be a memory contest. It is not reasonable to expect any individual to remember every fact in an . . . investigative file." First Hill Partners LLC, v. BlueCrest Cap. Management , Ltd., 2015 WL 13885012, at * 2 (S.D.N.Y. 2015) (quoting Equal Emp't Opportunity Comm'n v. Am. Int'l Grp., Inc., 1994 WL 376052, at * 3 (S.D.N.Y. 1994)). "[S]anctions in connections with a Rule 30(b)(6) deposition are appropriate only where 'the inadequacies in a deponent's testimony [are] egregious and not merely lacking the desired specificity in discrete areas.'" Tromblee v. New York, 2022 WL 2818222, at *28 (quoting Heras v. Metro. Learning Inst., 2022 WL 20899, at *2 (S.D.N.Y. 2022)). Furthermore, "[e]ven

2

when there is a deficient Rule 30(b)(6) testimony 'courts are reluctant to award sanctions . . . when counsel fail to make a good faith effort to resolve deficiencies or when the application for sanctions appears tactically motivated.'" First Hill, 2015 WL 13885012, at *1  (quoting Agniel v. Cent. Park Boathouse, 2015 WL 463971, at * 2 (S.D.N.Y. 2015)).

In First Hill, a plaintiff moved for sanctions against a defendant, claiming that the defendant's 30(b)(6) designee's inability to testify about the 27 separate items listed on the notice was "egregious." Id. at *2.  The court stated "[g]iven the breadth of this deposition notice, it is unsurprising that [the designee] was not omniscient during her deposition." Id.  The Court next noted that the plaintiff provided "a laundry list" of topics "without context or explanation" on which the designee was allegedly unprepared. Id.  The defendant argued that the designee had "broad knowledge" of numerous topics on the notice *and* that the plaintiff had already deposed "the person possessing the direct knowledge of the events at issue." Id.  In light of the above, the court was "unpersuaded" that sanctions were warranted. Id.

The First Hill court then addressed plaintiff's complaint that the designee "plainly failed" to educate herself on the topics in the notice on which she lacked personal knowledge. Id.  The basis for the complaint was the designee's admission that - - in preparing for the deposition - - she did not speak with anyone within the organization or any other individuals involved in the underlying dispute. Id.  The defendant, however, noted the designee:

> (1) spent several hours to review the relevant documents and reasonably educate herself on any gaps to her knowledge; (2) was provided background materials to supplement her personal knowledge; and (3) reviewed a substantial amount of documents assembled by counsel . . . .

Id.  Based on defendant's representations, the Court was also "unpersuaded" that the designee "plainly failed" to educate herself for the deposition. Id.

3

Similarly, in Tromblee, a plaintiff served a 30(b)(6) notice with 39 topics on it. See Tromblee, supra at *28. During the deposition, the designee testified that she was not given the notice to review and she did not go over any of the topics with counsel prior to the deposition. Id. And, despite the breadth of issues on the 30(b)(6) notice (hiring, discrimination complaints, retaliatory actions, HR information, new employee orientation, etc.) the designee was only able to discuss certain discrete issues regarding certain messaging systems and document retention. Id. The court noted that "it is highly unlikely that any one individual had sufficient knowledge of every single topic plaintiff raised in the notice." However, the Court explained why sanctions were not appropriate: "*All the topics were addressed* – or will presumably be addressed following compliance with this Memorandum-Decision and Order - - *through various depositions, affidavits and production requests, and plaintiff has not identified an egregious amount of information left unanswered by [the defendants'] Rule 30(b)(6) witnesses*." Id. (emphasis added).

Finally, in Fashion Exchange LLC v. Hybrid Promotions LLC, 333 F.R.D. 302, 308 (S.D.N.Y. 2019) the court found that "[a] six-hour long deposition, producing a transcript over 200 pages, does not rise to the level of a failure to appear." See also Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *6 (S.D.N.Y. 2017) (inability to testify on "scattered topic areas" not sufficiently egregious); Agniel v. Central Park Boathouse LLC, 2015 WL 463971 (S.D.N.Y. 2015) (deposition "not wasted" and Rule 37 sanctions denied where designee able to testify on 6 of 9 topics); Bank of New York v. Meridien VIAO Bank Tanzania Ltd., 171 F.R.D. 135, 152, n.10 (S.D.N.Y. 1997) (no costs awarded where designee provided testimony on 1 of 3 noticed topics).

Here, Jones was adequately prepared to testify about the numerous topics identified on plaintiff's 30(b)(6) notice that spanned across 11 topics and consisting of 32 broad areas (*not including subparts*). To prepare for the deposition, Jones spent several hours reviewing documents

4

in his possession; discussed all the topics with Defense counsel over the course of three days; and reviewed *additional* documents collected by counsel[1] (See Declaration of Eric Jones). Jones' knowledge is demonstrated by the transcript that counsel was afraid to submit with their motion. Indeed, ***Jones sat for the full seven hours***, spread across two nonconsecutive days. During that time, ***counsel asked over 1,000 questions resulting in a transcript that is 371 pages long***. Based on same, it can hardly be said that Jones "failed to appear" or that the deposition was a waste. See e.g., Fashion Exchange, 333 F.R.D. at 308; Agniel 2015 WL 463971.

To the extent plaintiff argues that Jones should have had encyclopedic knowledge on the noticed topics (all of which - - per plaintiff - - cover the last 20+ years), any perceived inability to answer questions is directly attributable to Plaintiff's counsel by asking question covered by other witnesses and reflected in exchanged documents, something defense counsel believed would not be done. (See Declaration of Andrew P. Keaveney ("Keaveney Dec.")). Regardless, any difficulty Jones had in answering questions is due largely to the impropriety of the questions.

Plaintiff's current gripe is similar to the one considered by the Southern District in Oakley v. Fed. Empl. and Guidance Srvs., Inc., 2011 WL 2946133 (S.D.N.Y. 2011). There, the court refused to award sanctions based on a plaintiff's claim that a designee was unprepared. The Court explained:

> At the deposition, while [the designee] did not know the answers to all of plaintiff's counsel's question[s], he was able to answer the vast majority of questions that were within the scope of the 30(b)(6) notice and were not objectionable as argumentative, compound, confusing or otherwise improper. ***Indeed, the Court finds that the***

---

[1] To the extent Plaintiff argues she is entitled to copies of the documents reviewed by Jones, the Court denied Plaintiff request to serve additional discovery demands in its January 20, 2023 Order. Plaintiff clearly is aware of this restriction since she has filed Rule 72 objections addressing that specific aspect of the Order. Therefore, it is unclear why Plaintiff made these demands. More importantly, Plaintiff never established that the documents shown to/reviewed by Jones refreshed his recollection. See F.R.E. 612. Regardless, Jones answered plaintiff's counsel's questions about the documents he reviewed (Exh. "1" at 31:14-18; 32:22-23; 35:9-14), many which were specifically mentioned in the 30(b)(6) notice, *e.g.*, the Platform Feasibility Study (nos. 26-31), Track Intrusion Task Force Report (no. 4); contact with trains report (no. 18); and an email in response to legislation (no. 17(g)(2)). A prepared plaintiff's attorney would have had the documents referenced in their notice ready and available to show to the witness.

5

> ***primary reason [the designee] struggled with answering questions at his deposition was the problematic nature of plaintiff's counsel's questions.*** Some of the questions posed include .. . . "Does [defendant] deny that it was negligent in causing [plaintiff] to sustain water burns, second-degree burns on September 1, 2010?"

(Id. at *3) (emphasis added). Similarly, here, plaintiff's questions were almost entirely argumentative in nature or otherwise improper. Counsel asked approximately 600 leading questions demanding a "yes or no" response (see generally Keaveney Dec. at Exh. "1" (questions ending with "True?" or "Yes?")). Furthermore, Plaintiff's counsel often asked "Do you agree . . ." and then continued to persist when he did not like the response given.

For example, consider the following exchange on help points:

Q. So did the Transit Authority, within thirty-six months of implementing a plan of corrective action by means of messaging, announcements, signage, things of that nature, implementing that plan of corrective action, did they look to see whether or not it was effective?

A. I can't answer that question.

Q. Well we can agree that according to the numbers of people being hit and seriously injured, catastrophically injured or killed by contact with trains, since the numbers did not change, that it was not effective?

MR. KEAVENEY: Objection.

A. I can't answer that question.

Q. Okay. Well, they instituted the help points you told us 2010, 2011 or in the teen's for a reason. True?

MR. KEAVENEY: Objection.

A. They -- they installed them for a reason, yes.

Q. Okay. And that reason would have been the prior steps taken by the Transit were not effective so they tried something else. Correct?

MR. KEAVENEY: Objection.

A. Not correct.

6

> Q. Okay. So why were the help points done if everything else was effective?
>
> A  The help points have two reasons. They have an emergency call button and they have an information button. So the point -- the purpose of the help point is -- as far as I know, was not specifically for mitigating track intrusions. It served multiple purposes. So any -- any customer who had an emergency situation or observed what would be considered somewhat of an emergency on the platform could communicate with the real control center and the booth within the station, or if they were looking for travel information, they could press the green button and get information.
>
> Q. Okay. And we went through last time, if you recall, how the help points were not effective in reducing the number of people getting killed or catastrophically injured by being hit or run over by trains. Do you recall that, sir?
>
> MR. KEAVENEY: Objection.
>
> A. No, I don't recall saying that they were not effective.
>
> Q. Okay. Okay. So according to the data of people getting catastrophically injured or killed as a result of contact with trains, the help points were put in over a decade ago. Have they been effective or not?
>
> MR. KEAVENEY: Objection.
>
> A. I can't answer that question.
>
> Q. Do you agree now that the help points have been ineffective at reducing the number of people being killed or catastrophically injured by contact with trains?
>
> MR. KEAVENEY: Objection.
>
> A. I can't answer that question.

(Exh. "1" at 225:10-228:3). ***This exchange is even more frustrating given Plaintiff's counsel's instruction to Jones early in the deposition to "merely say" he could not answer a question and that counsel would "accept that" answer***. (Id. at 71:7-12).

Plaintiff's counsel also asked questions that clearly call for legal conclusions, *e.g.*, the interpretation of federal regulations. For example, consider the following exchange about the Americans with Disabilities Act:

7

> Q. Okay. So do we agree that what the ADA requires is that only one car door per train is all that's required to have wheelchair accessibility to comply with the Americans with Disabilities Act. True?
>
> A. Yes.
>
> Q. Okay. And that's consistent with what you told us earlier about at boarding areas. Correct?
>
> A. Correct.
>
> Q. So that the Transit Authority, it would be improper for it to require anyone, including itself, to exceed those ADA requirements. True?
>
> MR. KEAVENEY: Objection.
>
> A. I would agree with that.
>
> Q. Okay. And there can be waivers of the code for safety. Correct?
>
> MR. KEAVENEY: Objection.
>
> A. I would believe so.

(Id. at 275:6-25). It is clear from reading the entire transcript (instead of selected excerpts), that Plaintiff's counsel was not interested in gathering information or high-level policy positions. Rather, Plaintiff expected encyclopedic knowledge of topics which had already been testified to by multiple Transit witnesses. Such tactics have not - - and should not - - form the basis of sanctions.

## POINT II

## PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER

Even assuming the Court *does* find that Jones was unprepared for the deposition (which he was not), sanctions would be inappropriate in this context due to Plaintiff's gamesmanship.

Plaintiff deprived Defendants of the opportunity to read and sign the transcript. As this Court is aware, Fed. R. Civ. P. 30(e) states:

8

> On request by the deponent or a party before the deposition is completed, the deponent ***must be allowed 30 days*** after being notified by the officer that the transcript or recording is available in which:
> (a) review the transcript or recording; and
>
> (b) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Here, Plaintiff did not and, in fact, refused to provide a copy of the transcript *despite* the Parties' prior practice (see Keaveney Dec. at ¶ 3) ***and*** the Parties' stipulation. (Jones Tr. 190). Specifically, before Jones' deposition was completed, the Parties stipulated: "that an unsigned copy of the deposition may be used with the same and force and effect as if signed by the witness, ***30 days after service of the original & 1 copy of same upon counsel for the witness.***" (Id. (emphasis added)). To date, plaintiff's counsel have not served a copy of the transcript. More troubling, plaintiff filed her motion as soon as she obtained an unsigned copy of the transcript, depriving Defendants of their right to have Jones review and sign.

More troubling, Plaintiff failed to comply with her obligation to resolve her discovery dispute amicably. See, e.g., Local Rule 37.3. A similar series of events to the current matter was considered by the Southern District in Agniel. There, the court said:

> Nonetheless, the circumstances do not justify monetary sanctions against [defendant] or its counsel. [Designee's] deposition lasted for two nonconsecutive days and produced a transcript well in excess of 400 pages. Any inadequacies of [designee's] first day of testimony do not warrant monetary sanctions for a constructive failure to appear, because [desginee] was able to testify sufficiently as to six out of the nine Matters specified in the Rule 30(b)(6) deposition notice. Thus, the time and effort taken by plaintiff's counsel to commence the [desginee's] deposition was surely not wasted. . . .
>
> Moreover, it is telling that [plaintiff] does not argue that plaintiff's counsel insisted that [defendant] remedy the deficiencies in [desginee's] testimony—either by preparing [designee] sufficiently or by producing a supplemental Rule 30(b)(6) witness—before proceeding with the second day of [desginee's] deposition, which could easily have been further adjourned. Cf. Anthopologie, Inc. v. Forever 21, Inc., No. 07 Civ. 7873, 2009 WL 9087188, at *2 (S.D.N.Y. Mar. 18, 2009) ("A party has an obligation, before seeking judicial intervention on a discovery dispute, to

9

> communicate with its adversary with a view to resolving the matter ...."). Nor did the Court hear from [plaintiff] during the period between February 18 and March 3, 2014, during which time an efficient, informal resolution of this discovery dispute might have been reached.
>
> We will not award sanctions for limited inadequacies in a deposition that took place over two nonconsecutive days when the inadequacies could have been resolved during the intervening period without resorting to motion practice.

2015 WL 463971 at *3. This outcome is not unusual. For example, in <u>Oakley v. Fed. Empl. and Guidance Srvs., Inc.</u>, 2011 WL 2946133 (S.D.N.Y. 2011), the Court - - after largely rejecting plaintiff's claim that the designee was unprepared - - said:

> Moreover, at oral argument, it became clear to the Court that plaintiff's counsel was more interested in sanctioning defendants in order to gain a tactical advantage than in actually obtaining answers to the questions that were allegedly improperly answered by the [defendant's] 30(b)(6) witness. Thus, at [the designee's] deposition, when [the designee] answered "I don't know" to certain questions, plaintiff's counsel did not request that [the designee] find out the answers to the questions and provide them at a later date. ***Rather than taking this course of action, plaintiff's counsel, in an effort to exploit the fact that [the designee] did not answer all of the questions, remained quiet at the time of the deposition and subsequently filed the instant motion seeking sanctions***. Thus, in addition to finding that plaintiff's motion for sanctions pursuant to Rule 37 lacks merit for the reasons previously discussed, ***the Court also denies the motion because it is sheer gamesmanship***.

2011 WL 2946133 at *3 (emphasis added)

Here, plaintiff's motion is also pure gamesmanship. Plaintiff's counsel questioned Jones over the course of two nonconsecutive days separated by one week. At no point during the recess did Plaintiff's counsel raise any issues about the alleged unpreparedness of Jones. Instead, Plaintiff's counsel waited until the very end of the deposition, when he put a generic statement on the record. (Jones Tr. 371:30-372:6). Had counsel truly believed Jones was unprepared - - or had counsel been interested in anything other than gaining a tactical advantage - - he had an obligation

10

to raise these concerns with defendants earlier, which would have provided at least some opportunity to resolve this dispute amicably.[2]

## POINT III

### PLAINTIFF SEEKS AN IMPROPER REMEDY

Plaintiff's motion is made pursuant to Fed. R. Civ. P. 37(d)(1)(A)(i), which states: "The Court . . . may . . . order sanctions if: (i) a party or a party's officer, director, or managing agent-- or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition." While Defendants deny that their witness was unprepared, the sanctions sought by Plaintiff - - specifically, an adverse inference - - go beyond the scope of sanctions available under the rule.

Where a court finds that Fed. R. Civ. P. 37(d)(1)(A)(i) applies, "[s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(iv)." Rule 37(d)(3). An adverse inference, however, is not identified in that list of remedies for disobeying a discovery order. Nevertheless, Plaintiff pursues same.

To support her argument that adverse inferences are an appropriate remedy, Plaintiff cites Kyoei Fire & Mar. Ins. Co., Ltd. v. M/V Mar. Antalya, 248 F.R.D. 126 (S.D.N.Y. 2007). But, despite Plaintiff's characterization of the case, an adverse inference *was not* issued as a sanction relating to a Rule 30(b)(6) designee. Rather, the adverse inference was issued a spoliation sanction in response to the failure to preserve relevant documents. See 248 F.R.D. 145-51; see also Fischer

---

[2] The Court has previously reminded counsel of the obligation to try to resolve deposition disputes before seeking judicial intervention. (See ECF No. 174, p. 5) ("The Court does note that, as a practical matter, Plaintiff's counsel was equally capable of reaching out to the Court to request that a ruling on these areas of questioning be made, but that also did not happen. The Court strongly encourages counsel to move forward in a spirit of cooperation so that the discovery in this case can be concluded and dispositive-motion practice be commenced.").

11

v Verizon New York, Inc., 2020 WL 5117913, *2 (S.D.N.Y.) ("[a]dverse inference sanctions are generally only warranted where a party has shown spoilation of evidence").

An adverse inference is generally applied when a party fails to produce material, either intentionally or unintentionally, under its control. It is "meant to restore a prejudiced party to the 'position he would have been in absent the wrongful destruction of evidence by the opposing party'" (Raymond v The City of New York, 2020 WL 7055572, *7, citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). It "provides the necessary mechanism for restoring the evidentiary balance" (Residential Funding Corp. v DeGeorge DFinancial Corp., 306 F3d. 99, 108 (2d Cir 2002), citing Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 75 (S.D.N.Y.1991).

As such, by its definition, a party must somehow be prejudiced by the alleged conduct, otherwise there is no need for the remedy. The *massive* discovery in this action (e.g., 14 other depositions and over 60,000 pages of documents) demonstrates that plaintiff has not been deprived of any evidence or that Defendants profited from the alleged conduct. Indeed, most of plaintiff's request for adverse inference involve questions that have been answered via other discovery devices. Other requests are nonsensical, such as seeking an adverse inference to a question asking the costs of litigations payouts (Plaintiff's Dec. at p. 9) and whether the witness was *aware* of the Transit Authority applying for grant money (Id. at p. 10).

Plaintiff's request for fees in preparing for the deposition is not supported by the record, which reveals that plaintiff recycled many of the questions posed to Jones and did not even show the witness documents referenced in the notice. As such, it is unclear what expenses were actually incurred in preparing for the 30(b)(6) deposition.

Nevertheless, monetary sanctions are inappropriate in this context. At no point during the 372 page Rule 30(b)(6) deposition, which - - as Plaintiff makes clear - - was held over two

12

nonconsecutive days approximately one week apart, did Plaintiff *ever* try to meet with Defendants about the alleged "deficiency" in the witness' testimony. In fact, plaintiff's counsel's only complaint was that Defendants' attorney was not simultaneously on video when the witness was testifying during his first day (something that was complied with for the second day of testimony). As the court explained in Crawford v. Franklin Credit Management Corp., 261 F.R.D. 34 (S.D.N.Y. 2009):

> [T]here is no suggestion . . . . that [plaintiff's] counsel ever attempted in good faith to seek additional Rule 30(b)(6) testimony. In the absence of such a request, [plaintiff] is not entitled to an award of attorneys' fees under Rule 37(a). Moreover, because the failure to provide an adequate witness with respect to such subjects was not a violation of my prior order, [plaintiff] is not entitled to any relief under Rule 37(b), despite the numerous alleged gaps in [the designee's] testimony cited in her motion papers.
>
> Accordingly, there is no basis for awarding monetary sanctions.

Finally, any request for preclusion (expert or fact witness), should also be denied for the same reasons mentioned herein. Indeed, plaintiff's counsel claims that he is not looking at the requested remedy in a vacuum (FN 9), yet plaintiff's arguments, that she supports with selected deposition excerpts, completely ignores the extensive testimony and documents produced in this action. This further demonstrates counsel's improper use of a 30(b)(6) witness.

## **CONCLUSION**

Accordingly, and for the reasons set forth above, Defendants respectfully requests that the Court issue an Order denying Plaintiff's motion in its entirety and grant such other and further relief as is just and proper.

Dated: March 16, 2023
       New York, NY

Respectfully submitted,

LANDMAN CORSI BALLAINE & FORD P.C.

By: *Andrew P. Keaveney*
Andrew P. Keaveney
Attorneys for Defendants
120 Broadway - 13th Floor
New York, New York 10271
(212) 238-4800

To:    All Counsel (via ECF)