UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Luisa Janssen Harger Da Silva,<br><br>                                           Plaintiff,<br><br>-against-<br><br>New York City Transit Authority, Metropolitan Transportation Authority, and Raqia Shabazz,<br><br>                                           Defendants. | 17-cv-04550 (FB)(VMS) |

**DECLARATION OF ORLANDO A. JIMENEZ, Jr.**

Orlando A. Jimenez, Jr., hereby declares under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I make this declaration in opposition to Defendants' motion for summary judgment.

2. I affirm everything in my report Defendants Ex. UU as if fully set forth herein.

3. The opinions and conclusions I reached with a reasonable degree of certainty and expressed in my report are supported by facts, data and my 30 years of experience working as a train operator and trainer for the NYCTA, and it is my professional opinion based on a review of the facts, evidence and my personal knowledge, that the operator of the train, Ms. Shabazz, violated professional standards of care and good and accepted practices and procedures of a train operator, and that said negligence was a proximate cause of Ms. Harger's catastrophic injuries.

4. The conclusions reached in my report that Plaintiff was on the tracks before the train entered the station was based on the credible evidence from eyewitnesses; every known eyewitness and the objective facts establish this fact. Even the Operator herself, when the events were fresh in her mind at the scene and before being "prepared" afterwards, initially admitted this fact. The undisputed facts include: (1) the "911" call recording of an eyewitness, (2)

Shabazz's admissions to NYPD Detective Donald Moeller at the scene of the accident, as recounted in his police report and deposition testimony (3) the deposition testimony of George Brown and (4) the deposition testimony of Gabriel Smith.

5. The "911" caller stated that, "Somebody is on the train tracks. By the B and the Q, someone is in the tracks. The train hasn't come yet they're trying to talk him into getting up but he's still down there. Everyone was screaming and talking to him… I had to get service to call 911." (Exhibit 3)

6. George Brown, who according to the deposition transcripts I reviewed, was accompanying Ms. Harger at the time and was right on the platform and in a position to clearly see everything: where Ms. Harger was, and when the train first entered the station, testified that Plaintiff fell on the tracks approximately 20-40 seconds before the train hit her.

7. At the scene, Shabazz gave a statement to NYPD Detective Donald Moeller and his partner that Plaintiff was already on the tracks before she entered the station. Detective Moeller recorded this statement in a police report, and also testified at his deposition that Shabazz told him Plaintiff was on the tracks before she entered the station. Witness Gabrielle Smith also testified at her deposition that Plaintiff fell on the tracks before the train had entered the station.

8. My conclusion that Shabazz should have seen Plaintiff while the train was still in the tunnel, approximately 350-400 feet before the train struck Plaintiff, was based on my 30 years of experience and my experience working for the NYCTA, including more than 100 trips as the train operator on the exact same route where Plaintiff's accident happened: the B/Q train on the Manhattan bound line. I am personally familiar with the line of sight and visibility from

the train into the station, its tracks and platform; my conclusions are based on facts and actual personal experience.

9. My conclusion that Shabazz was negligent for not having stopped the train before it ran over Ms. Harger and severed her arm and leg is based on the facts, the credible evidence that Ms. Harger was on the tracks before the train entered the station and the fact that train operators can see the tracks for the entire length of the platform while still in the tunnel, approximately 150 feet before the train enters the station. If Shabazz had been paying proper attention, she would have seen Ms. Harger on the tracks from approximately 350-400 feet away and would have had more than enough time to stop the train before it struck and ran over Ms. Harger.

10. In addition to the foregoing materials reviewed to reach my conclusions, I also reviewed the YouTube video that was exchanged in discovery, https://youtu.be/3kmAL7YCPmI ("the video"), which shows the train operator's view from the cab of a R1 train traveling northbound on the B/Q line on July 31, 2016 during a "Nostalgia Ride" that visited Coney Island, and shows the train pulling into and driving through the Atlantic Avenue-Barclay's Center station from approximately 20:00 – 20:47. Upon information and belief, a copy of this video has been furnished to this Court.

11. Based on my 30 years of experience working at the Transit Authority as a train operator and trainer, including more than 100 trips as the train operator of the B/Q train on the Manhattan bound line, I confirm that the video is a fair and accurate depiction of the train operator's / motorman's view of the Manhattan bound B/Q subway line. The video fairly and accurately depicts the line of sight and view that Shabazz had at the time of this incident.

12. Specifically, the portion of this video from approximately 20:00 – 20:47 is a fair and accurate depiction of the train operator's / motorman's view entering and driving through the Atlantic Avenue-Barclay's Center station.

13. While this video was apparently recorded from the publicly accessible area of an R1 train during a "Nostalgia Ride", there is no material difference between the view that is depicted in this video and the view that a train operator has from the cab of an R68 train.

14. At approximately 20:04 into the video, while the train is still in the tunnel, the train operator can begin to see the station platform in the Atlantic Avenue / Barclay's Center station. At this point, while the train is approaching the station, the track has a slight curve.

15. At approximately 20:10 into the video, while the train is still in the tunnel, the train operator can see the entire length of the platform. my opinion, with a reasonable degree of certainty, is that at this point, the train is approximately 150 feet from or before the entry into the station and platform area; 150 feet into the tunnel.

16. At approximately 20:14, the train exits the tunnel and enters the station.

17. Based on my training and experience and review of the facts in this case, my opinion, with a reasonable degree of certainty, is that this train was traveling at approximately 18-20 miles per hour when it entered the station.

18. While at her deposition, the train operator, Raqia Shabazz, stated that she cannot see into the station when the train is in the tunnel, the video clearly demonstrates this testimony was untrue and corroborates and confirms my conclusions that Shabazz could see the track for the entire length of the platform while the train was still in the tunnel, approximately 150 feet before the train entered the station.

19. The video also corroborates my conclusion, made with a reasonable degree of certainty, that Shabazz should have seen Ms. Harger on the tracks approximately 350-400 feet before the train struck and ran over her.

20. The video also corroborates my conclusion, reached with a reasonable degree of certainty, that Shabazz was negligent for failing to stop the train before she hit Plaintiff.

21. As Ms. Harger was on the tracks before the train entered the station, and within the line of sight and view of the train operator, if Shabazz was being reasonably attentive and using reasonable care in seeing what was there to be seen, Shabazz should have and would have been able to see Ms. Harger on the tracks while the train was still in the tunnel, before the train entered the station.

22. Shabazz should have seen Plaintiff on the tracks when the train was still in the tunnel and approximately 350 – 400 feet away from Ms. Harger.

23. Shabazz had more than enough time to stop the train before hitting the plaintiff. Shabazz had approximately 2-3 times the necessary stopping distance to stop the train, from the time she should have observed plaintiff before the train hit the plaintiff.

24. The foregoing facts establishes that the conclusions and opinions I reached with a reasonable degree of certainty, and stated in my report, shows that a substantial factor and proximate cause of Ms. Harger's injuries occurred because of the train operator's negligence; Shabazz failed to pay proper and reasonable attention, failed to see what was there to be seen (Ms. Harger 's body on the train tracks) and failed to exercise proper and reasonable control over the train she was operating and failed to take appropriate actions in a reasonable amount of time and failed to stop the train in time to avoid harming Ms. Harger. Shabazz had the opportunity and ability to stop the train before running over Ms. Harger, and Shabazz violated good and

accepted practices, procedures, protocols, training and standards of care in failing to do so. The conclusions and opinions expressed herein and in my report, all within a reasonable degree of certainty, are supported by the credible evidence noted above, my 30 years of training and experience working for the NYCTA, my personal knowledge and experience operating trains repeatedly on the exact train line and part of the train line and station, and in the direction Shabazz was traveling, and in the type, make and model of train Shabazz was operating .

Dated: January 17, 2024

_____
Orlando A. Jimenez, Jr.