UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUISA JANSSEN HARGER DA SILVA,<br><br>      Plaintiff,<br><br> -against-<br><br>NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, AND RAQIA SHABAZZ,<br><br>      Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 17-CV-4550 |

*For the Plaintiff:*
ELLIOT DOLBY SHIELDS
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016

*For the Defendant:*
ANDREW P. KEAVENEY
Landman Corsi Ballaine & Ford P.C.
120 Broadway 13th Floor
New York, New York 10271

**BLOCK, Senior District Judge:**

  Plaintiff Luisa Janssen Harger Da Silva ("Plaintiff" or "Da Silva") brought negligence claims against Defendants New York City Transportation Authority ("NYCTA" or "TA"), Metropolitan Transportation Authority ("MTA"), and Raquia Shabazz ("Shabazz") (collectively "Defendants") for injuries sustained by being struck by a subway train. Defendants have moved for summary judgment to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 56. Plaintiff has moved for leave to file a sur-reply. For the following reasons, Defendants'

1

motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion to leave to file a sur-reply is DENIED.

## I. BACKGROUND

The following facts—drawn from the parties' pleadings, Rule 56.1 statements, and supporting documentation—are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See Capital Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025).

On August 2, 2016, Plaintiff fainted and fell onto the tracks at the Atlantic Avenue-Barclays Center subway station ("Atlantic Terminal station"). Compl., ¶ 24, ECF No. 1. A northbound "B" train operated by Defendant Shabazz severed Plaintiff's left arm and left leg. *Id.*

A year after the accident, Plaintiff filed suit. She alleges four causes of action, contending that her injuries resulted from negligence: (1) in the train's operation; (2) in the ownership, maintenance, and design of the platform edge by failing to have platform barriers like platform screen doors ("PSDs"); (3) in failing to communicate with the train operator with track intrusion devices ("TIDs"); and (4) in the maintenance of the train and platform. *See id.* at ¶¶ 62–142.

Shabazz is an employee of NYCTA. NYCTA is a public benefit corporation and a subsidiary of the MTA, which is also a public benefit corporation. NYCTA and

the MTA manage New York City's subway system. Pl.'s Counterstatement of Facts ("SOF") ¶¶ 7–8, ECF No. 249.

The Atlantic Terminal station had neither platform barriers like PSDs nor track TIDs. *See id.* at ¶ 24. TIDs use sensors and cameras to detect unauthorized access to the track. The train did not have defects. *Id.* at ¶ 34.

The parties dispute, *inter alia*, whether: Shabazz could have stopped before the train hit Plaintiff, *id.* at ¶ 1, the MTA and NYCTA conducted a legitimate safety study on platform barriers and TIDs, *id.* at ¶ 21, and whether it was financially feasible for the MTA and NYCTA to install PSDs, *id.* at ¶ 23.

## II. DISCUSSION

### A. Plaintiff's Motion for Leave to File a Sur-Reply

As a preliminary matter, the Court denies Plaintiff's motion for leave to file a sur-reply. A sur-reply is appropriate only in "the exceptional though rare case" where a "party demonstrates to the court that papers to which it seeks to file a reply raise new issues which are material to the disposition of the question before the court," or when "[the court] determines . . . that it wishes further briefing . . . and orders the submission of additional papers." *Sec. & Exch. Comm'n v. Xia*, No. 21-CV-5350, 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022) (alterations in original).[1] When

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

"the reply papers merely respond to points raised in opposition to the underlying motion, fairness does not ordinarily demand further briefing." *Polidoro v. L. Firm of Jonathan D'Agostino, P.C.*, No. 19-CV-1290, 2022 WL 2286951, at *7 (S.D.N.Y. June 23, 2022).

Plaintiff requests to file a sur-reply because Defendants installed fixed guardrails at subway stations days after Plaintiff filed the opposition brief, which allegedly undermines Defendants' arguments about the infeasibility and safety concerns of the guardrails. ECF No. 255 at 1. But Plaintiff's accident did not occur at any of those stations. ECF No. 258 at 2.

The Court agrees with Defendants that "fixed guardrails at stations *other than* the one at-issue in this case is not a 'new issue[.]'" *Id.* at 3 (emphasis in original). Plaintiff previously made this argument in her statement of facts by submitting a photograph of fixed guardrails at the Times Square Shuttle station. SOF at ¶ 53.

Regardless of the substance of the sur-reply, the Court may exclude the parties' unauthorized sur-replies based on procedural impropriety. *See Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020) ("The decision to permit a litigant to submit a sur-reply is a matter left to the Court's discretion."). "Procedurally, the party seeking to submit reply papers should submit an informal request in writing . . . [in advance of filing its sur-reply]," to avoid "placing the [sur-reply] before the court, [and] thereby reducing the question of whether the [sur-reply] should be

4

accepted for filing to relative unimportance." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 383, 384–85 (S.D.N.Y. 1975). In this instance, Plaintiff's sur-reply is procedurally improper because it was collectively filed with the submission request. *See generally* ECF No. 255.

Thus, the Court denies Plaintiff's motion to file a sur-reply and does not consider it in resolving Defendants' motion for summary judgment.

### B. Defendants' Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

5

"[A]s a general matter, a federal district court sitting in diversity jurisdiction must apply the *substantive* law of the state in which it sits." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, the Court applies New York substantive law.

The following material facts are in dispute on most of Defendants' affirmative defenses and Plaintiff's claims, precluding summary judgment on all claims but one.

1. Government Function Immunity

Defendants TA and the MTA claim that summary judgment should be granted because they are entitled to government function immunity.[2] Under New York law, "[w]hen a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." *Turturro v. City of New York*, 28 N.Y.3d 469, 477 (2016) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 425 (2013)). "If the municipality's actions fall in the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties." *Applewhite*, 21 N.Y.3d at 425.

"A government entity performs a purely proprietary role when its activities essentially substitute for or supplement traditionally private enterprises." *Id.* By

---

[2] Defendant Shabazz does not argue that she is entitled to government function immunity because she is an individual, not a public benefit corporation.

6

contrast, "a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.*

For the past century, New York state courts have consistently held that operating the subway system is a proprietary function. *See, e.g.*, *Martinez v. N.Y.C. Transit Auth.*, 203 A.D.3d 87, 93 (1st Dep't 2022) ("[S]ince transportation is traditionally operated by private enterprise, it constitutes a proprietary function when performed by a governmental entity (such as the TA)"); *Pedraza v. New York City Transit Auth.*, 203 A.D.3d 95, 105 (1st Dep't 2022) ("[C]laims arising from ownership and care relating to transportation of passengers, which traditionally has been operated by private enterprise, implicate a proprietary function when performed by a governmental entity (such as the TA)"); *New York & Queens Elec. Light & Power Co. v. City of New York*, 221 A.D. 544, 544 (1st Dep't 1927) ("The city of New York acted in a proprietary capacity and not in the exercise of a governmental function when it constructed an elevated railroad in Roosevelt avenue in the borough of Queens."); *Matter of Bd. of R.T. R.R. Comm'rs. of New York City*, 197 N.Y. 81, 96 (1909) ("[T]he subway is a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation. It was built by and belongs to the city as a proprietor, not as a sovereign.")

So too here. The Court adheres to the holdings of New York courts that the operation of the subway system is a proprietary function. Thus, the TA and the MTA are not entitled to government function immunity.

### 2. Qualified Immunity

Even though they were acting in a proprietary capacity, MTA and the TA argue that they are still entitled to qualified immunity if "their decisions regarding platform safety evolved following adequate studies and had a reasonable basis." Def's. Mem. in Supp. Summ. J. at 9, ECF No. 247. Under the New York state law doctrine of qualified immunity, "where government officials are clothed with the authority to make planning decisions with regard to infrastructure, courts will not permit those decisions to be questioned if they have a 'reasonable basis' in safety and efficiency considerations." *Pedraza*, 203 A.D.3d at 96. "In order to establish entitlement to qualified immunity, the defendant must demonstrate that a public planning body considered and passed upon the same question of risk as would go to a jury." *Jackson v. New York City Transit Auth.*, 30 A.D.3d 289, 290 (1st Dep't 2006).

Qualified immunity cannot here be determined as a matter of law because the underlying facts are in dispute. *Cf. Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999) ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."). The MTA and NYCTA argue that they are entitled to qualified immunity as to counts 2

8

and 3—failure to implement platform barriers and TIDs—because they conducted reasonable safety studies. Defendants rely on the declaration of Tony Abdallah, the Chief Officer of the Field Operations Services unit at MTA and NYCTA. Decl. of Tony Abdallah ("Abdallah Decl.") ¶ 4, ECF No. 244. NYCTA allegedly took international trips to assess PSDs and TIDs, employed engineering firms to assess PSDs, and tested TIDs, among other efforts. *Id.* at ¶¶ 10, 21, 91. Installing PSDs would allegedly cost around $7 billion. *Id.* at ¶ 82.

Plaintiff's expert, Dr. Carl Berkowitz, is a transportation engineer who worked at the New York City Transportation Department. ECF No. 243-48 at 4. He claims that the documents Defendants cite do not qualify as reasonable safety studies under industry standards. *Id.* at 5. And Plaintiff cites to an offer by the Seoul Metropolitan Rapid Transit Corporation Authority ("SMRT") to install PSDs under a 30-year Build-Operate-Transfer ("BOT") agreement in New York, where the SMRT would cover costs to construct and maintain the PSDs in exchange for advertising rights on the doors of the platform screens. SOF at ¶ 283. Defendants respond that the SMRT proposal is not feasible because the lost advertising revenue would exceed the PSD installation costs. Def's Rep. Mem. in Supp. Summ. J. at 7, ECF No. 254.

There exist genuine disputes of material fact regarding whether the decision not to install PSDs and TIDs at the subject station had a reasonable basis. Credibility assessments of experts "are matters for the jury, not for the court on a motion for

9

summary judgment," *McClellan*, 439 F.3d at 144. Thus, the jury ought to resolve these factual disputes on the issue of qualified immunity. *See Turturro*, 28 N.Y.3d at 483 (finding that whether the City was entitled to qualified immunity was an issue to be resolved by the jury).

### 3. Negligence

#### i. Negligence in the Train Operation

Negligence under New York law has three elements: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013). But under the emergency doctrine, a train operator who strikes a person is not liable for negligence if the accident was unavoidable. *Searcy v. New York City Transit Auth.*, 169 A.D.3d 1076, 1077 (2nd Dep't 2019).

A factual dispute exists about when Shabazz saw Plaintiff on the tracks. If Shabazz saw Plaintiff in time to stop, the emergency doctrine would not apply. Defendant allegedly saw Plaintiff fall on the tracks after the train entered the station and immediately applied the emergency breaks. ECF 243-46 at 211, 219. But per Plaintiff, Shabazz told the police on the day of the accident that "she observed the [Plaintiff] on the track as the train was entering the station." Memo to Chief of Transit at 1, ECF No. 248-1.

There exist genuine disputes of material fact regarding whether Shabazz could have stopped the train that preclude summary judgment on this claim. Credibility assessments of competing accounts should be resolved by the jury. Thus, the motion for summary judgment on count 1 is denied.

      *ii.*    *Negligence for Failing to Install Platform Barriers and TIDs*

Count 2 alleges negligence for failing to install platform barriers and count 3 alleges the same for TIDs. The factual disputes discussed in the qualified immunity issue also preclude summary judgment on these two counts. The MTA and NYCTA argue that installing platform barriers—especially PSDs—was not feasible due to structural concerns and costs. Defendants allegedly chose not to install PSDs at the Atlantic Terminal station after studies, research, investigations, and reports. Def's Rule 56.1 Statement at ¶¶ 24, 26. But "Plaintiff's experts have determined that the Transit Authority's analysis was faulty, and that PSDs were feasible at the subject station and most other stations throughout the subway system." SOF at ¶ 22. And Plaintiff argues that the MTA rejected offers to install PSDs at no cost. Pl's Mem. in Opp'n. Summ. J. at 16, ECF No. 252.

The MTA and NYCTA allege to "have studied and tested track intrusion devices." Def's Rule 56.1 Statement at ¶ 28. They argue that TIDs have technical issues like false positives that could disrupt train operations. Regarding TIDs,

11

Plaintiff alleges that they are effective and "Defendants did not conduct any study prior to Plaintiff's accident." SOF at ¶ 28.

There exist genuine disputes of material fact regarding whether Defendants could feasibly have installed platform barriers and failed to explore viable TID safety technology that preclude summary judgment on this claim. Thus, summary judgment on counts 2 and 3 are denied.

### iii.   *Negligence in Train and Platform Maintenance*

Plaintiff fails to raise a genuine dispute of material fact as to whether there was negligence in train and platform maintenance. On count 4, Plaintiff argues that poor lighting at the platform and a defective braking system on the train contributed to the accident. Compl. at ¶ 140. But the record contains no evidence to support these allegations. Rather, maintenance records Defendants provide contradict these allegations. *See, e.g.*, Train Trouble Report Ex. QQ, ECF No. 243-43; Post Incident Inspection Report Ex. RR, ECF No. 243-44; and CTA Cleaning Report Ex. SS, ECF No. 243-45.

Unsubstantiated conclusory allegations about poor lighting and defective brakes contradicted by evidence do not present "a 'genuine' dispute . . . which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa*, 825 F.3d at 98. Thus, the Court grants summary judgment for the Defendants on count 4.

## III. CONCLUSION

Accordingly, Defendants' motion for summary judgment is DENIED as to counts 1–3 and GRANTED as to count 4. Plaintiff's motion to leave to file a sur-reply is DENIED

**SO ORDERED.**

                                                      _/S/ Frederic Block_____
                                                      FREDERIC BLOCK
                                                      Senior United States District Judge

Brooklyn, New York
March 6, 2025