UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LUISA JANSSEN HARGER DA SILVA,

                Plaintiff,

-against-              17-cv-4550 (FB)(VMS)

NEW YORK CITY TRANSIT AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY, AND
RAQIA SHABAZZ,

                Defendants.

---

**MEMORANDUM OF LAW IN IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY DEFENDANTS INTERLOCUTORY APPEAL AS FRIVOLOUS**

ROTH & ROTH, LLP
Elliot Dolby Shields
David A. Roth
192 Lexington Avenue, Suite 802
New York, New York 10016

SONIN & GENIS, ESQS.
Robert J. Genis
One Fordham Plaza - Suite 907
Bronx, New York 10458

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

    I.    DEFENDANTS' APPEAL OF GOVERNMENTAL FUNCTION AND QUALIFIED IMMUNITY IS NOT SUBJECT TO THE COLLATERAL ORDER DOCTRINE .................. 2

        A.    The Final Judgment Rule and Narrow Scope of the Collateral Order Doctrine ............. 2

        B.    Governmental Function and "Qualified" Immunity Under New York Law Are Affirmative Defenses, Not True Immunities From Suit ...................................................... 3

        C.    Second Circuit Precedent Forecloses Appellate Jurisdiction ......................................... 4

            1.    In re World Trade Center Disaster Site Litigation ....................................................... 4

            2.    Defendants' "Qualified Immunity" Defense Is Also Non-Reviewable ....................... 4

    II.    EVEN IF THE DEFENSES WERE IMMUNITIES, THE INTERLOCUTORY APPEAL WOULD STILL BE FRIVOLOUS ................................................................................... 5

        A.    Defendants' Governmental Immunity Appeal Is Frivolous ............................................ 5

        B.    Defendants' Qualified Immunity Appeal Is Frivolous .................................................. 7

    III.    THIS COURT RETAINS JURISDICTION TO PROCEED NOTWITHSTANDING THE FRIVOLOUS APPEAL ........................................................................................ 8

CONCLUSION ............................................................................................................................ 9

WORD COUNT CERTIFICATION ......................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Avila v. State*, 39 Misc. 3d 1064, 1069 (Ct. Cl. 2013) ................................................................ 3
*Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996) .................................................................... 8
*Carroll v. Trump*, 687 F. Supp. 3d 394, 404 (S.D.N.Y. 2023) .................................................... 8
*City of New York v. Beretta U.S.A. Corp.*, 234 F.R.D. 46, 51-53 (E.D.N.Y. 2006) (Weinstein, J.) 9
*Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018)................................................................................................................................... 8
*DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) ............................................................... 6
*Dorman v. Satti,* 862 F.2d 432, 435 (2d Cir. 1988) .................................................................... 7
*Ferreira v. City of Binghamton*, 975 F.3d 255 (2d Cir. 2020) ................................................... 6
*Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) ......................................................................................................................................... 8
*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ............................................. 9
*In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 177 (2d Cir. 2008) .................. 1, 3, 4, 5
*Johnson v. Jones*, 515 U.S. 304, 319–20 (1995) ................................................................. 2, 4, 7
*Martinez v. N.Y.C. Transit Auth.*, 203 A.D.3d 87, 93 (1 Dept 2022) ......................................... 6
*Matter of Bd. of R.T. R.R. Comm'rs. of N.Y.C.*, 197 N.Y. 81, 96 (1909) ...................................... 5
*McCarthy v. Olin Corp.*, 119 F.3d 148, 153–54 (2d Cir. 1997) ................................................. 6
*Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985) ................................................................. 2, 5
*Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022) ........................................... 7
*New York v. Locke,* No. 08-CV-2503 (CPS) (RLM), 2009 WL 2413463, at *3 (E.D.N.Y. Aug. 3, 2009) ....................................................................................................................................... 8
*Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134–35 (2d Cir. 1999) ................................... 7
*Pitts v. State*, 166 A.D.3d 1505 (4 Dept 2018) ........................................................................... 3
*Santaiti v. Town of Ramapo*, 162 A.D.3d 921 (2 Dept 2018) .................................................... 3
*Will v. Hallock*, 546 U.S. 345, 350 (2006) ............................................................................. 2, 3

**Statutes**

28 U.S.C. § 1291 .......................................................................................................................... 2
CPLR 3018(b) .............................................................................................................................. 2

# PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law to request that the Court certify Defendants' interlocutory appeal from this Court's March 6, 2025 Memorandum and Order denying summary judgment on grounds of purported "governmental function" and "qualified" immunity as frivolous. Defendants' position rests on the erroneous premise that these state law affirmative defenses grant them a right not to stand trial—when, in fact, New York's governmental function and "qualified" immunity doctrines are classic defenses to liability, not jurisdictional immunities from suit. Because Defendants' appeal is frivolous, it does not divest this Court of jurisdiction, and the trial—scheduled to commence on October 27, 2025—should proceed without delay.

The Second Circuit lacks jurisdiction over Defendants' attempted interlocutory appeal. Under binding Supreme Court and Second Circuit precedent, state-law immunities that do not confer a right to avoid litigation but merely limit potential liability are not subject to immediate review under the collateral order doctrine. *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 177 (2d Cir. 2008). Defendants' assertion of "government function" and "qualified" immunity under New York law are nothing more than run-of-the-mill affirmative liability defenses—not immunities from suit.

Moreover, even if these were "true" immunities, Defendants' appeal is still frivolous. First, Defendants' governmental function argument is frivolous, because, as this Court found—and as over a century of New York precedent makes clear—the operation of subway systems is a proprietary, not governmental, function. In short, Defendants' position runs counter to binding authority and is thus frivolous because the only option for the Second Circuit would be to affirm.

1

Second, with respect to the claim of "qualified immunity", the Court's ruling turned on quintessentially factual issues—such as the feasibility of safety measures on subway platforms, the reasonableness of its plan to reject free offers to install platform edge barriers, the scope of Defendants' duty, and the sufficiency of the record evidence—thereby placing the denial of immunity outside the narrow bounds of the collateral order doctrine. *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).

Because the appeal is plainly foreclosed by controlling authority, it is frivolous and does not divest this Court of jurisdiction. Plaintiff therefore respectfully requests that the Court certify the appeal as frivolous, retain jurisdiction, and allow this nearly nine-year-old case to proceed toward trial without further delay.

## ARGUMENT

### I. DEFENDANTS' APPEAL OF GOVERNMENTAL FUNCTION AND QUALIFIED IMMUNITY IS NOT SUBJECT TO THE COLLATERAL ORDER DOCTRINE

#### A. The Final Judgment Rule and Narrow Scope of the Collateral Order Doctrine

Federal courts of appeals have jurisdiction primarily over "final decisions" of district courts. 28 U.S.C. § 1291. A party generally may not appeal an interlocutory decision—i.e., one that does not end the litigation on the merits. See, e.g., *Johnson v. Jones*, 515 U.S. 304, 309 (1995). The Supreme Court has emphasized that departures from this final judgment rule "are the exception, not the rule." *Id*.

The collateral order doctrine is one of those narrow exceptions. It permits immediate appeal of a limited class of district court orders that conclusively determine an important issue separate from the merits and that in volve a right "effectively unreviewable" after final judgment. *Will v. Hallock*, 546 U.S. 345, 350 (2006). Denials of true "immunity from suit" can, under certain circumstances, fall within that narrow category. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985).

2

### B. Governmental Function and "Qualified" Immunity Under New York Law Are Affirmative Defenses, Not True Immunities From Suit

Defendants cannot avail themselves of the collateral order doctrine because they invoke only New York's "government function immunity" and "qualified immunity," which New York courts treat as traditional affirmative defenses rather than absolute immunities from suit. As the Fourth Department held in *Pitts v. State*, 166 A.D.3d 1505 (4th Dept 2018), "governmental function immunity" is waived if not pleaded because it "is an affirmative defense." *Id*. at 1506 (citing CPLR 3018(b); see also *Santaiti v. Town of Ramapo*, 162 A.D.3d 921 (2nd Dept 2018). New York law similarly recognizes that "qualified immunity" is an affirmative defense that must be pleaded in the answer, and which can serve as a basis for a motion for summary judgment—further underscoring that it is a liability defense, not a jurisdictional immunity. See, e.g., *Avila v. State*, 39 Misc. 3d 1064, 1069 (Ct. Cl. 2013).

The Second Circuit, too, has long held that New York's governmental function and "qualified" immunity doctrines simply do not shield defendants from the burdens of litigation altogether. "Where a state-law defense is only an immunity from liability—as opposed to an immunity from suit—federal appellate jurisdiction does not lie under the collateral order doctrine." *In re World Trade Ctr. Disaster Site Litig*., 521 F.3d 169, 181–82 (2d Cir. 2008).

By contrast, the Supreme Court's rationale for permitting immediate appeals of certain immunities rests on the notion that a defendant who has a true immunity from suit has a right not to undergo trial. *Will v. Hallock*, 546 U.S. at 350–51. But when, as here, the asserted "immunity" is merely a defense limiting liability, any argument about potential exposure to damages can be fully addressed on appeal from a final judgment. As a result, the threshold requirement of the collateral order doctrine—that the order implicate a right that is "effectively unreviewable" after final judgment—is not met.

3

### C. Second Circuit Precedent Forecloses Appellate Jurisdiction

#### 1. *In re World Trade Center Disaster Site Litigation*

The Second Circuit's decision in *In re World Trade Center Disaster Site Litigation* squarely controls. 521 F.3d 169. In that consolidated litigation, the district court denied defendants' motion for summary judgment premised on New York's governmental function immunity (and related state-law defenses). *Id*. at 177. On appeal, the Second Circuit held that it lacked jurisdiction because "governmental function immunity" under New York law is not a true immunity from suit but, rather, a policy-based defense that may defeat liability under certain circumstances. *Id*. at 181–82. Because the claimed immunity was "not effectively unreviewable on appeal from a final judgment," the Second Circuit concluded it fell outside the collateral order doctrine. *Id*.

That holding is dispositive here. As Your Honor recognized in the March 6, 2025, decision, courts applying New York law on "government function" immunity have repeatedly declared that the operation of the subway system is proprietary, not a governmental activity. Even assuming *arguendo* that Defendants could show some "governmental" function, that defense is no more than a limitation on liability. It does not confer the right to avoid standing trial in federal court.

#### 2. *Defendants' "Qualified Immunity" Defense Is Also Non-Reviewable*

Nor can Defendants salvage jurisdiction by labeling their state-law defense "qualified immunity." Under well-established Second Circuit precedent, an interlocutory appeal from denial of qualified immunity is permitted only when the immunity at issue is the federal, constitutional form of qualified immunity that insulates individual public officials from suit for alleged violations of § 1983 (and only if the appeal turns on a purely legal issue). See *Johnson v. Jones*, 515 U.S. at 319–20 (distinguishing genuine factual disputes from purely legal immunity questions). Here,

4

Defendants invoked a purely state-law form of "qualified immunity" applying to discretionary decisions under New York negligence law—again, an affirmative defense.

That recognized difference was critical in *In re World Trade Center*, where the defendants similarly invoked "government function" and "qualified" immunity defenses under New York law. 521 F.3d at 177, 181–82. The Second Circuit drew a sharp line between immunities that shield public officials or entities from suit for federal constitutional claims (thereby fitting *Mitchell v. Forsyth*) and immunities that merely bar liability for negligence claims under state law. Only the former permits an immediate appeal under the collateral order doctrine. *Id*.

Accordingly, controlling Second Circuit law compels the conclusion that this Court's March 6, 2025, order denying summary judgment on the asserted state-law immunities is not immediately appealable. The appeal should therefore be certified as frivolous.

## II. EVEN IF THE DEFENSES WERE IMMUNITIES, THE INTERLOCUTORY APPEAL WOULD STILL BE FRIVOLOUS

### A. Defendants' Governmental Immunity Appeal Is Frivolous

Defendants' appeal from the denial of governmental immunity (also referred to as absolute or "government function" immunity) is patently frivolous. As Your Honor recognized in the March 6, 2025 decision (ECF No. 260), "for the past century, New York state courts have consistently held that operating the subway system is a proprietary function," not a governmental one. *Id*. at 7. In line with this well-settled law, the Court "adheres to the holdings of New York courts that the operation of the subway system is a proprietary function" and thus ruled that the NYCTA and MTA "are not entitled to government function immunity." *Id*. at 8. This principle stems from over a century of precedent, from the Court of Appeals' pronouncement in 1909 that "the subway is a business enterprise of the city…built by and belongs to the city as a proprietor, not as a sovereign," *Matter of Bd. of R.T. R.R. Comm'rs. of N.Y.C.*, 197 N.Y. 81, 96 (1909), through modern cases

5

reaffirming that "transportation ... constitutes a proprietary function when performed by a governmental entity (such as the TA)." *Martinez v. N.Y.C. Transit Auth.*, 203 A.D.3d 87, 93 (1 Dept 2022). The First Department's holding in *Martinez* was reaffirmed by the trial Court in February of this year, as the Transit Authority again attempted tried to dismiss that train strike case based on governmental function immunity:

> Defendants' argument that they are entitled to governmental function immunity has also been rejected by the Appellate Division (see Pedraza, 203 AD3d at 104 ["we conclude that [NYCTA] is not entitled under any circumstances to the shield of governmental function immunity"]; Martinez, 203 AD3d at 93 ["we reject the TA's claim that it is entitled to governmental function immunity"]). Although defendants argue that the Appellate Division's remand of the Martinez Action for additional discovery and Justice Nervo's consolidation of the **11 Martinez Action and Pedraza Action has created a new evidentiary record such that this court may independently address this issue, they do not identify any evidence in the record that permits this court to deviate from the Appellate Division's conclusion.

*Martinez v. New York City Transit Authority,* No. 153421/2017, 2025 WL 656394, at *5 (N.Y. Co. Sup. Ct. Feb. 28, 2025)

Unable to overturn a century of crystal-clear New York precedent, Defendants evidently hope the Second Circuit will "certify" the question to the Court of Appeals, mirroring *Ferreira v. City of Binghamton*, 975 F.3d 255 (2d Cir. 2020). But *Ferreira* addressed a genuinely unsettled state-law issue concerning the "special duty" doctrine, prompting the Second Circuit to seek authoritative guidance. Here, by contrast, there is no ambiguity. The Second Circuit does **not** routinely certify questions simply because the parties disagree; certification is reserved for "exceptional cases" with no clear controlling precedents. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 153–54 (2d Cir. 1997); *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). Indeed, federal courts must not "shift[] the burdens of this Court to [the state court]," *McCarthy*, 119 F.3d at 153

6

(quoting *Dorman v. Satti*, 862 F.2d 432, 435 (2d Cir. 1988)), when "sufficient precedents exist" to predict how the Court of Appeals would rule. *See also Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134–35 (2d Cir. 1999) (declining certification where intermediate state court rulings provided adequate guidance). There is no unsettled question here: New York has spoken decisively for over a century that subway operations are proprietary, so there is nothing for the Court of Appeals to clarify. Hence, Defendants' plan to pursue certification is plainly without merit and would only delay these proceedings further.

### B. Defendants' Qualified Immunity Appeal Is Frivolous

Even if Defendants could somehow show that its asserted state-law "qualified" immunity is a true immunity from suit—rather than a mere affirmative defense—the appeal would still be frivolous because this Court's denial of summary judgment turned on factual issues regarding the feasibility and reasonableness of proposed subway safety measures. In the decision denying Defendants' motion for summary judgment on qualified immunity, the Court found "genuine disputes of material fact" concerning the adequacies of the studies and the reasonableness of the plans relating to cost, practicality, and necessity of measures like platform screen doors and track-intrusion devices, which calls for factual resolution at trial.

In *Johnson v. Jones*, the Supreme Court held that an interlocutory appeal of a denial of qualified immunity is improper when the district court's ruling rests on the existence of fact issues. 515 U.S. at 319–20. The Second Circuit has reiterated that "if a district court's qualified immunity decision turns on questions of evidence sufficiency alone ... it is not immediately appealable." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022). Here, any question of immunity is inextricably bound up in the factual record concerning whether the subway system's protective technology was feasible, and whether Defendants' failure to install such technology was truly

7

discretionary and reasonable. Because those are factual issues, the Second Circuit cannot (and will not) address them at this stage. *Johnson*, 515 U.S. at 319–20.

### III. THIS COURT RETAINS JURISDICTION TO PROCEED NOTWITHSTANDING THE FRIVOLOUS APPEAL

Because Defendants' appeal is frivolous, it does not divest this Court of jurisdiction to proceed with the case. The Supreme Court has long recognized that a frivolous interlocutory appeal on immunity grounds does not strip the district court of its authority. See *Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996). Courts in this Circuit have likewise applied what is commonly termed the "dual jurisdiction" rule, under which "the filing of an appeal under the collateral order doctrine respecting a right not to be tried divests the district court of jurisdiction to proceed with the trial [against the appealing defendant] unless the district court certifies that the appeal is frivolous." *Carroll v. Trump*, 687 F. Supp. 3d 394, 404 (S.D.N.Y. 2023), quoting *New York v. Locke,* No. 08-CV-2503 (CPS) (RLM), 2009 WL 2413463, at *3 (E.D.N.Y. Aug. 3, 2009) (second and third alterations in original) (emphasis added) (citation omitted); see also, e.g., *Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018) ("The Supreme Court has approved the 'dual jurisdiction' approach as an appropriate method to deal with frivolous interlocutory appeals. *Behrens v. Pelletier*, 516 U.S. 299, 310, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Accordingly, this Court must determine whether [defendant's] appeal [(including of the denial of qualified immunity)] is frivolous."); *Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) ("An interlocutory appeal, *unless frivolous*, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal ....") (emphasis added); *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 137 (S.D.N.Y. 2007) ("I hold, following full consideration of Defendants' arguments, that their notice of appeal is legally ineffective to divest the district court of its

8

jurisdiction."); *City of New York v. Beretta U.S.A. Corp.*, 234 F.R.D. 46, 51-53 (E.D.N.Y. 2006) (Weinstein, J.).

Moreover, even setting aside frivolousness, the filing of a notice of appeal ordinarily "divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), but not over unrelated issues. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Here, Defendants are not appealing the portion of the Court's decision denying summary judgment on the negligence claim against Train Operator Shabazz; thus, that claim will proceed to trial in any event.

Given the clear lack of merit in Defendants' broader immunity arguments, any notice of appeal should not freeze the entire litigation. See *Carroll*, 88 F.4th at 432 (noting that the divestiture rule "is not a per se rule" and is grounded in "the interest of judicial economy"). This case is nearly nine years old, and Plaintiff would be severely prejudiced by yet another unwarranted delay. The Court should certify any such appeal as frivolous and retain jurisdiction to move this matter toward trial.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court (1) certify Defendants' interlocutory appeal as frivolous, and (2) retain jurisdiction to proceed toward trial. Defendants' attempt to appeal under the collateral order doctrine is squarely foreclosed by controlling Supreme Court and Second Circuit authority; the so-called "immunities" asserted here are classic state-law liability defenses, not immunities from suit. Moreover, because the denial of summary judgment turned on disputed factual issues, there is no purely legal question that could possibly confer appellate jurisdiction.

Accordingly, the Court should allow this long-delayed litigation to move forward to resolution without further wasteful delay.

Dated: April 5, 2025
      New York, New York

                                    ~//s//~
                               Elliot Dolby Shields
                               Roth & Roth, LLP
                               192 Lexington Avenue, Suite 802
                               New York, New York 10016
                               Phone: (212) 425 1020
                               E-mail: eshields@RothandRothLaw.com

# **WORD COUNT CERTIFICATION**

Pursuant to Local Rule of Civil Procedure 7.1(c), the foregoing brief was prepared on a computer using Microsoft "Word" word-processing software.

TYPE:  A proportionally spaced typeface was used, as follows:

    Name of typeface: Times New Roman

    Size: 12 point (footnotes 12 point)

    Line Spacing: Double


WORD COUNT  The total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities and certificate(s)  of compliance is 2,795.