UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LUISA JANSSEN HARGER DA SILVA,

         Plaintiff,

-against-         **17-cv-4550 (FB)(VMS)**

NEW YORK CITY TRANSIT AUTHORITY,
METROPOLITAN TRANSPORTATION
AUTHORITY, AND
RAQIA SHABAZZ,

         Defendants.

**REPLY MEMORANDUM OF LAW IN IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY DEFENDANTS INTERLOCUTORY APPEAL AS FRIVOLOUS**

         ROTH & ROTH, LLP
         Elliot Dolby Shields
         David A. Roth
         192 Lexington Avenue, Suite 802
         New York, New York 10016

         SONIN & GENIS, ESQS.
         Robert J. Genis
         One Fordham Plaza - Suite 907
         Bronx, New York 10458

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES .................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 2
   I.   DEFENDANTS MISSTATE THE APPLICABLE STANDARD FOR CERTIFYING AN APPEAL AS FRIVOLOUS ................................................................................................... 2
   II.   DEFENDANTS' APPEAL DOES NOT SATISFY THE COLLATERAL ORDER DOCTRINE ............................................................................................................................ 3
      A.   New York State Law Governmental Function Immunity and Qualified Immunity Are Liability Defenses, Not Immunities From Suit ...................................................................... 3
      B.   The Second Circuit Has Already Determined It Lacks Jurisdiction Over These Types of Appeals ..................................................................................................................................... 7
   III.   EVEN IF THE COURT REACHES THE MERITS, DEFENDANTS' APPEAL REMAINS FRIVOLOUS ........................................................................................................ 8
      A.   Defendants Cannot Reasonably Contest a Century of Precedent Holding That Subway Operation Is a Proprietary Function ...................................................................................... 8
      B.   Defendants' Qualified Immunity Argument Impermissibly Seeks Review of Factual Disputes ................................................................................................................................. 10
   IV.   THE COURT SHOULD RETAIN JURISDICTION WHILE THE FRIVOLOUS APPEAL IS PENDING ............................................................................................................ 12
CONCLUSION ........................................................................................................................ 13
WORD COUNT CERTIFICATION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Avila v. State*, 39 Misc. 3d 1064, 1069 (Ct. Cl. 2013) ................................................................... 4
*Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996) ......................................................................... 2
*Carroll v. Trump*, 687 F. Supp. 3d 394, 404 (S.D.N.Y. 2023) ....................................................... 3
*Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018) ...................................................................................................................................... 3
*Ferreira v. City of Binghamton*, 975 F.3d 255 (2d Cir. 2020) ....................................................... 9
*Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) ........................................................................................................................................... 3
*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) .............................................. 12
*In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005) ............................................................................ 2
*In re World Trade Center Bombing Litigation*, 17 N.Y.3d 428 (2011) ......................................... 5
*In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008) .............. 1, 3, 4, 7
*Jackson v. N.Y.C. Transit Auth.*, 30 A.D.3d 289 (1st Dep't 2006) ................................................. 6
*Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) .......................................................................... 10
*Kistner v. City of Buffalo*, 2023 WL 21219 (W.D.N.Y.) ............................................................... 3
*Martinez v. N.Y.C. Transit Auth.*, 203 A.D.3d 87, 93 (1st Dep't 2022) ......................................... 8
*Martinez v. New York City Transit Authority* (Index No. 153421/2017) ....................................... 6
*Martinez v. New York City Transit Authority*, No. 153421/2017, 2025 WL 656394, at *5 (N.Y. Co. Sup. Ct. Feb. 28, 2025) ....................................................................................................... 9
*Matter of Board of Rapid Transit Railroad Commissioners of New York City*, 197 N.Y. 81, 96 (1909) .......................................................................................................................................... 8
*McCarthy v. Olin Corp.*, 119 F.3d 148, 153-54 (2d Cir. 1997) ..................................................... 9
*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) .............................................................................. 4
*Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022) ............................................. 10
*Neitzke v. Williams*, 490 U.S. 319, 325 (1989) .............................................................................. 2
*Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134-35 (2d Cir. 1999) ....................................... 9
*Pedraza v. New York City Transit Authority* (Index No. 159366/2013) ........................................ 6
*Pitts v. State*, 166 A.D.3d 1505, 1506 (4th Dep't 2018) ................................................................ 4
*Rohman v. New York City Transit Authority*, 215 F.3d 208, 214 (2d Cir. 2000) ........................ 11
*Santaiti v. Town of Ramapo*, 162 A.D.3d 921, 926 (2d Dep't 2018) ............................................ 4
*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 463 n.12 (5th Cir. 2017) ....... 2
*Turturro v. City of New York*, 28 N.Y.3d 469 (2016) .................................................................... 6
*Urquhart v. City of Ogdensburg*, 91 N.Y. 67, 71 (1883) ............................................................... 5
*Weiss v. Fote*, 7 N.Y.2d 579 (1960) ........................................................................................... 4, 6

## **PRELIMINARY STATEMENT**

Defendants' opposition to Plaintiff's motion to certify their interlocutory appeal as frivolous attempts to recast established New York State law defenses as federal immunities from suit, instead of affirmative defenses to liability, mischaracterizes the applicable legal standard for frivolousness, and ignores binding Second Circuit precedent. Most tellingly, Defendants fail to meaningfully address the dispositive holding in *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 178 (2d Cir. 2008), which squarely forecloses their appeal.

First, Defendants misconstrue the standard for certifying an appeal as frivolous, suggesting that this Court would improperly usurp the Second Circuit's authority by making such a determination. To the contrary, the Supreme Court has explicitly approved the "dual jurisdiction" approach, precisely to prevent parties from abusing interlocutory appeals to delay proceedings. When an appeal is plainly foreclosed by binding precedent—as this one is—a district court not only may but should certify the appeal as frivolous.

Second, Defendants' substantive arguments fail to overcome the fundamental jurisdictional barrier: the Second Circuit has already held that New York's governmental and qualified immunity doctrines are mere defenses to liability, not immunities from suit. Despite Defendants' attempts to reframe these defenses, they remain subject to the jurisdictional holding in *In re World Trade Center*, which Defendants barely acknowledge.

Third, even if the Court were to reach the merits, Defendants' appeal remains frivolous. Their governmental immunity argument flies in the face of a century of unbroken New York precedent establishing that subway operation is a proprietary function. Their qualified immunity

1

argument impermissibly seeks appellate review of factual disputes that this Court has already determined require resolution at trial.

In sum, as Defendants' appeal is plainly foreclosed by binding precedent, it is frivolous and should be certified as such, thereby allowing this nearly nine-year-old case to finally proceed to trial without further unwarranted delay.

## ARGUMENT

### I. DEFENDANTS MISSTATE THE APPLICABLE STANDARD FOR CERTIFYING AN APPEAL AS FRIVOLOUS

Defendants' lead argument—that this Court would somehow overstep its authority by certifying their appeal as frivolous—fundamentally misunderstands the purpose and function of a frivolousness certification. Contrary to Defendants' assertion that such a certification would make this Court "a first-tier appellate court" (Defs.' Opp. at 1), the Supreme Court has explicitly approved the "dual jurisdiction" approach that allows district courts to certify an appeal as frivolous and proceed with trial. See *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996).

The standard for frivolousness is well-established: an appeal is frivolous when it is "foreclosed by binding precedent or... obviously without merit." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 463 n.12 (5th Cir. 2017). As Defendants themselves acknowledge, an appeal is frivolous when it lacks "an arguable basis either in law or in fact" or when "none of the legal points are arguable on their merits." *In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). (Defs.' Opp. at 4,9). Whether an appeal is foreclosed by binding precedent is precisely the kind of determination district courts routinely make.

Defendants object that a "district court cannot base its decision on what the Second Circuit may ultimately decide." (Defs.' Opp. at 9). But this misses the point entirely. The Court is not predicting what the Second Circuit might decide in some novel context; rather, the Court is applying already-established Second Circuit precedent that clearly forecloses Defendants' appeal. The issue is not what the Second Circuit "may" decide, but what it has already decided in *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008)—a decision that Defendants conspicuously fail to address in any meaningful way.

Defendants' reliance on *Kistner v. City of Buffalo*, 2023 WL 21219 (W.D.N.Y.), is similarly misplaced. The court in *Kistner* declined to certify the appeal as frivolous because the Second Circuit had not yet "endorsed the dual jurisdiction rule." *Id*. at *4. But Defendants fail to acknowledge that the Supreme Court has approved this approach, see *Behrens*, 516 U.S. at 310-11, and numerous courts in this Circuit have applied it. See, e.g., *Carroll v. Trump*, 687 F. Supp. 3d 394, 404 (S.D.N.Y. 2023); *Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018); *Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012).

## II. DEFENDANTS' APPEAL DOES NOT SATISFY THE COLLATERAL ORDER DOCTRINE

### A. New York State Law Governmental Function Immunity and Qualified Immunity Are Liability Defenses, Not Immunities From Suit

The central issue before this Court is whether Defendants' claimed immunities confer a right not to stand trial (and thus fall within the collateral order doctrine) or merely provide defenses to liability (and thus fall outside it). The answer is clear: New York's governmental function and qualified immunity doctrines are classic liability defenses, not immunities from suit.

3

Defendants' opposition never directly confronts this fundamental distinction. Instead, Defendants selectively quote from cases addressing federal qualified immunity—a doctrine that, unlike its state-law counterparts, may in certain circumstances confer immunity from suit. See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). But federal qualified immunity is not at issue here; this case involves only state-law claims and state-law defenses.

Crucially, New York courts have consistently treated both governmental function immunity and qualified immunity as affirmative defenses that must be pleaded and proven. See *Pitts v. State*, 166 A.D.3d 1505, 1506 (4th Dep't 2018) (governmental function immunity "is an affirmative defense" that must be pleaded); *Santaiti v. Town of Ramapo*, 162 A.D.3d 921, 926 (2d Dep't 2018) (same); *Avila v. State*, 39 Misc. 3d 1064, 1069 (Ct. Cl. 2013) (qualified immunity is an affirmative defense).

Defendants' opposition relies heavily on a selective reading of *Weiss v. Fote*, 7 N.Y.2d 579 (1960), arguing that language about preventing judicial second-guessing of governmental planning somehow transforms these liability defenses into immunities from suit. But *Weiss* itself characterizes the immunity as "the city's defense," *id*. at 588 (emphasis added), undermining Defendants' position. And more importantly, whatever policy considerations underlie these defenses, they do not alter their fundamental character as defenses to liability rather than immunities from suit.

Defendants' attempts to distinguish *In re World Trade Center Disaster Site Litigation* are unavailing. They suggest that the Second Circuit's analysis in that case turned solely on statutory language, but this is incorrect. The Second Circuit expressly held that it "need only consider the statutory language, *if any*, of each defense, and the cases construing the defense." 521 F.3d at 182

4

(emphasis added). For defenses that lack statutory guidance—such as the common-law immunities at issue here—the court looked to "cases construing the defense" to determine its nature. *Id*.

Applying this framework, the Second Circuit concluded that New York's governmental immunity and related defenses "do not provide immunity from suit, but rather immunity from liability." *Id*. at 196. This holding directly controls the jurisdictional question here.

Defendants also mischaracterize New York law by suggesting that these defenses confer immunity from suit rather than just immunity from liability. They cite language from *Weiss* about courts not being "permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits." 7 N.Y.2d at 588. But this language does not establish immunity from suit; it merely articulates the policy considerations underlying the liability defense. The same passage characterizes this as "the city's defense which we here sustain," *id*.—further confirmation that this is a defense to liability, not an immunity from suit.

Similarly, Defendants cite *Urquhart v. City of Ogdensburg*, 91 N.Y. 67, 71 (1883), for the proposition that "no civil action can be maintained" against a municipality for certain discretionary functions. But again, this describes a defense to liability, not an immunity from suit. A defense that says "no civil action can be maintained" is simply another way of saying the defendant cannot be held liable—precisely the type of defense that falls outside the collateral order doctrine.

Indeed, if these defenses truly conferred immunity from suit, they would bar the action from proceeding altogether. But New York courts regularly allow cases to proceed to trial on the merits even where governmental and qualified immunity defenses are raised. *In re World Trade Center Bombing Litigation*, 17 N.Y.3d 428 (2011), *Turturro v. City of New York*, 28 N.Y.3d 469

5

(2016), and Ja*ckson v. N.Y.C. Transit Auth.*, 30 A.D.3d 289 (1st Dep't 2006), underscore the point: New York courts routinely let cases where governmental function immunity defenses are claimed proceed through discovery, trial, and verdict before deciding the defense—proof that it is a merits question, not a jurisdictional bar.

A recent state-court trial against the New York City Transit Authority underscores the distinction between a merits defense and an immunity from suit. On May 7, 2025, after this motion was filed, a single jury returned verdicts in two negligence actions—*Pedraza v. New York City Transit Authority* (Index No. 159366/2013) and *Martinez v. New York City Transit Authority* (Index No. 153421/2017)—that were tried jointly before Justice James D. Clynes in Supreme Court, New York County. During the charge conference, the NYCTA submitted a proposed verdict sheet asking the jurors to decide a separate set of questions, questions 3-5, that underpinned its qualified immunity defense. (**Exhibit 1** pg. 3). As explained in the declaration of Peter Thomas, the trial attorney in the Pedraza and Martinez cases, the verdict sheet ultimately submitted to the jury (attached hereto as **Exhibit 2**) contains separate "qualified-immunity" questions (Nos. 5 & 6) asking whether the Transit Authority "proved it was reasonable to rely on its system-wide analysis to determine its speed policy for the southbound Spring Street Station" (question 5) and whether it "satisfied its continuing duty to review its speed policy plan in light of its actual operation at the Spring Street Station" (question 6). *Id*. at p. 6-7. The jury answered "No" to both questions and returned a combined $103.6 million verdict against the Authority. *See* Exhibit 2, Verdict Sheet at pp. 6-7, 15-16, 21-22, 24.

Submission of qualified immunity questions to the jury confirms that New York treats design-or-planning immunity under *Weiss v. Fote*, 7 N.Y.2d 579 (1960), as fact-bound liability questions, not as a jurisdictional shield.

### B. The Second Circuit Has Already Determined It Lacks Jurisdiction Over These Types of Appeals

The Second Circuit's decision in *In re World Trade Center Disaster Site Litigation* directly controls the jurisdictional question here. There, the court held unequivocally that New York's governmental immunity and related defenses "do not provide immunity from suit, but rather immunity from liability." 521 F.3d at 196. As a result, the court concluded it lacked jurisdiction under the collateral order doctrine to hear an interlocutory appeal from the denial of these defenses.

Defendants' opposition barely acknowledges this controlling precedent. Indeed, Defendants' only reference to *In re World Trade Center* comes in a passing attempt to distinguish it, incorrectly suggesting that the Second Circuit's analysis turned solely on statutory language. But as noted above, the Second Circuit expressly held that for defenses lacking statutory guidance, it would look to "cases construing the defense" to determine its nature. Id. at 182.

Moreover, the Second Circuit's jurisdictional holding in *In re World Trade Center* was categorical: New York's governmental immunity and related defenses are defenses to liability, not immunities from suit, and thus fall outside the collateral order doctrine. This holding directly forecloses Defendants' attempted appeal, rendering it frivolous.

Defendants' opposition attempts to salvage appellate jurisdiction by recharacterizing their state-law defenses as equivalent to federal qualified immunity. But this approach was explicitly rejected in *In re World Trade Center*, where the Second Circuit distinguished between federal

7

qualified immunity (which does confer immunity from suit) and New York's immunity doctrines (which merely limit liability). *See id.* at 196-97 (noting that federal qualified immunity "protect[s] officials from the burden of trial and the distraction of discovery," while New York's immunity doctrines do not).

In short, Defendants' appeal is foreclosed by binding Second Circuit precedent, which has already determined that the defenses Defendants invoke do not satisfy the collateral order doctrine's "effectively unreviewable" requirement. This alone renders the appeal frivolous and justifies certification as such.

### III. EVEN IF THE COURT REACHES THE MERITS, DEFENDANTS' APPEAL REMAINS FRIVOLOUS

#### A. Defendants Cannot Reasonably Contest a Century of Precedent Holding That Subway Operation Is a Proprietary Function

Even if this Court were to evaluate the merits of Defendants' governmental function immunity argument, the appeal would still be frivolous because it is foreclosed by a century of unbroken New York precedent. As this Court recognized in its March 6, 2025 decision, "for the past century, New York state courts have consistently held that operating the subway system is a proprietary function," not a governmental one. (ECF No. 260 at 7).

This principle traces back to the Court of Appeals' 1909 decision in *Matter of Board of Rapid Transit Railroad Commissioners of New York City*, 197 N.Y. 81, 96 (1909), where the court held that "the subway is a business enterprise of the city... built by and belongs to the city as a proprietor, not as a sovereign." *Id.* at 96. Modern cases have consistently reaffirmed this principle. *See, e.g., Martinez v. N.Y.C. Transit Auth.*, 203 A.D.3d 87, 93 (1st Dep't 2022) ("transportation... constitutes a proprietary function when performed by a governmental entity (such as the TA)").

8

Notably, the First Department's holding in *Martinez* was recently reaffirmed in February 2025, where the court rejected the Transit Authority's latest attempt to assert governmental function immunity in a train strike case. The court observed that the argument "has also been rejected by the Appellate Division" and that despite the Transit Authority's claims about a "new evidentiary record," they did "not identify any evidence in the record that permits this court to deviate from the Appellate Division's conclusion." *Martinez v. New York City Transit Authority*, No. 153421/2017, 2025 WL 656394, at *5 (N.Y. Co. Sup. Ct. Feb. 28, 2025).

Defendants suggest that the Court "never announced an issue of fact regarding the governmental immunity claim" (Defs.' Opp. at 6), implying that this makes the issue appropriate for immediate appeal, but this misses the point entirely. The Court didn't find a factual dispute on this issue because the law is so clear that no factual dispute could alter the outcome: subway operation is a proprietary function under New York law, period.

Defendants also suggest that the Second Circuit might "certify" the question to the New York Court of Appeals, similar to *Ferreira v. City of Binghamton*, 975 F.3d 255 (2d Cir. 2020). But as Plaintiff pointed out in her moving papers, *Ferreira* addressed a genuinely unsettled question of state law. Here, by contrast, there is no ambiguity whatsoever. The Second Circuit certifies questions only in "exceptional cases" with no clear controlling precedents. *McCarthy v. Olin Corp.*, 119 F.3d 148, 153-54 (2d Cir. 1997). Where "sufficient precedents exist" to predict how the Court of Appeals would rule, certification is inappropriate. *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134-35 (2d Cir. 1999). Given the century of clear precedent establishing that subway operation is a proprietary function, there is no colorable argument for certification, and thus no non-frivolous basis for appeal on this ground.

### B. Defendants' Qualified Immunity Argument Impermissibly Seeks Review of Factual Disputes

Defendants' qualified immunity argument fares no better. Even assuming that New York's qualified immunity doctrine could support an interlocutory appeal under the collateral order doctrine (which it cannot), the appeal would still be frivolous because it impermissibly seeks review of factual disputes.

The Supreme Court has squarely held that an interlocutory appeal of a denial of qualified immunity is improper when the district court's ruling rests on the existence of factual issues. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). The Second Circuit has reiterated that "if a district court's qualified immunity decision turns on questions of evidence sufficiency alone… it is not immediately appealable." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022).

Here, this Court's denial of summary judgment on qualified immunity turned precisely on such factual issues. The Court found "genuine disputes of material fact" concerning the adequacies of the studies and the reasonableness of the plans relating to cost, practicality, and necessity of measures like platform screen doors and track-intrusion devices.

In their opposition, Defendants principally argue that this Court has misapplied the law by failing to "examine the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred." (Defs.' Opp. at 6). But this argument misses the mark for two reasons.

First, this Court did precisely what Defendants claim it should have done: it examined the specific acts at issue—namely, Defendants' decisions regarding platform screen doors and track-

10

intrusion technology—and determined that factual disputes existed about whether those decisions were reasonable.

Second, and more fundamentally, Defendants' argument goes to the merits of how this Court applied the qualified immunity standard, not to whether the appeal satisfies the collateral order doctrine's jurisdictional requirements. Even if Defendants were correct that this Court misapplied the law (which they are not), that would not and does not transform factual disputes into purely legal questions subject to immediate appeal.

Defendants also argue that the "district court's mere assertion that disputed factual issues exist is not enough to preclude an immediate appeal," citing *Rohman v. New York City Transit Authority*, 215 F.3d 208, 214 (2d Cir. 2000). But this principle applies only where the district court's assertion of factual disputes is unsupported by the record. Here, the Court's finding of factual disputes was well-grounded in the extensive record of conflicting evidence regarding the feasibility and reasonableness of platform safety measures.

*Rohman* itself recognizes that appellate jurisdiction exists only where "the defendant can support an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution." *Id*. But Defendants here do not accept Plaintiff's version of the facts or stipulate to any version of the facts that would permit resolution of the immunity question as a pure matter of law.

In short, Defendants' qualified immunity argument seeks review of factual disputes, which is expressly foreclosed by Supreme Court and Second Circuit precedent. This renders the appeal frivolous on this ground as well.

## IV. THE COURT SHOULD RETAIN JURISDICTION WHILE THE FRIVOLOUS APPEAL IS PENDING

Having established that Defendants' appeal is frivolous, this Court should retain jurisdiction and allow this nearly nine-year-old case to proceed to trial without further delay.

Defendants' opposition does not dispute that a district court may retain jurisdiction when an appeal is certified as frivolous. Instead, they note that Plaintiff has filed a motion to dismiss the appeal in the Second Circuit, suggesting that this makes the present motion "superfluous." (Defs.' Opp. at 5 n.1). But this argument ignores the practical reality: without a frivolousness certification from this Court, the Second Circuit may take months to resolve Plaintiff's motion to dismiss, during which time this case would remain in limbo, and the trial delayed.

Moreover, as Plaintiff pointed out in her moving papers, even setting aside frivolousness, the filing of a notice of appeal only "divests the district court of its control over those aspects of the case involved in the appeal," not over unrelated issues. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Here, Defendants are not appealing the portion of the Court's decision denying summary judgment on the negligence claim against Train Operator Shabazz; thus, that claim will proceed to trial in any event.

Given the clear lack of merit in Defendants' broader immunity arguments, there is no reason to freeze the entire litigation. This case is nearly nine years old, and Plaintiff would be severely prejudiced by yet another unwarranted delay. Justice and efficiency both strongly favor allowing this matter to proceed to trial without further delay.

12

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify Defendants' interlocutory appeal as frivolous, and (2) retain jurisdiction to proceed toward trial.

Defendants' attempt to appeal under the collateral order doctrine is squarely foreclosed by controlling Supreme Court and Second Circuit authority, which establishes that the state-law defenses asserted here are liability defenses, not immunities from suit. Even if the Court were to reach the merits, Defendants' appeal would still be frivolous because it contests a century of settled New York precedent and impermissibly seeks review of factual disputes.

Accordingly, the Court should allow this long-delayed litigation to move forward to resolution without further wasteful delay.

Dated: May 13, 2025
       New York, New York

                                                ~//s//~
                                      Elliot Dolby Shields
                                      Roth & Roth, LLP
                                      192 Lexington Avenue, Suite 802
                                      New York, New York 10016
                                      Phone: (212) 425 1020
                                      E-mail: eshields@RothandRothLaw.com

## WORD COUNT CERTIFICATION

Pursuant to Local Rule of Civil Procedure 7.1(c), the foregoing brief was prepared on a computer using Microsoft "Word" word-processing software.

TYPE:  A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman

Size: 12 point (footnotes 12 point)

Line Spacing: Double

WORD COUNT: The total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities and  certificate(s)  of compliance is 3,438.