# ROTH & ROTH, LLP
192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

October 6, 2025

**VIA ECF**
Hon. Frederick Block
Senior United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

    Re:   *Da Silva* v. *NYCTA, et al*
              17-cv-4550 (FB)(VMS)

Dear Judge Block:

    Plaintiff Luisa Janssen Harger Da Silva, a young woman who lost her arm and leg as a result of the defendants' negligence, respectfully opposes defendants' October 3, 2025 motion to stay trial of the negligent design claims (Counts 2-3) pending resolution of their interlocutory appeal. This motion is a procedurally improper, untimely motion for reconsideration of this Court's May 29, 2025 Order, which correctly: (1) certified defendants' appeal as frivolous, (2) retained jurisdiction under the dual jurisdiction doctrine, and (3) confirmed that New York's state law immunities are defenses to liability, not immunity from suit. The motion should be denied.

## I. DEFENDANTS' MOTION IS AN UNTIMELY MOTION FOR RECONSIDERATION

### A. Courts Routinely Construe Successive Motions as Motions for Reconsideration

    Courts consistently treat successive motions seeking the same relief as motions for reconsideration, regardless of how they are styled. As Judge Cogan explained in *Funk v. Belneftekhim*, when defendants filed a "substantively identical" motion to one previously denied, the court properly deemed it "an untimely motion for reconsideration." No. 14-CV-376, 2021 WL 3774196, at *1 (E.D.N.Y. Aug. 25, 2021). The Funk court emphasized that "successive motions deserve special skepticism"

1

because allowing parties to "examin[e] a decision and then plug[] the gaps of a lost motion with additional matters" would "waste judicial resources, undermine the finality of decisions, and spawn duplicative rulings on previously considered issues." *Id.* at *2 (internal quotation marks omitted).

Judge Cogan reiterated this principle in *Meehan v. Brookliv LLC*, where defendants filed a second motion to vacate a default judgment: "Numerous courts in this Circuit have rejected successive motions seeking the same relief unless they meet the standard for reconsideration." No. 21-CV-2573, 2022 WL 523545, at *1 (E.D.N.Y. Feb. 21, 2022); see also *Carnagie Inst. of Washington v. Fenix Diamonds, LLC*, 544 F. Supp. 3d 440, 451 (S.D.N.Y. 2021) ("reject[ing] plaintiffs' disguised motion for reconsideration"); *Faiveley Transport USA, Inc. v. Wabtec Corp.*, No. 10-CV-4062, 2011 WL 1899730, at *4 (S.D.N.Y. May 13, 2011) (rejecting summary judgment motion as "thinly disguised attempt to relitigate issues" already lost on motion to dismiss); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 444 (S.D.N.Y. 2006) (rejecting purported motion in limine as actually motion to reconsider); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2025 WL 2490442, at *8 (E.D.N.Y. Aug. 29, 2025) (motions seeking "the same relief based on the same legal theory" are properly construed as motions for reconsideration).

This principle applies with full force here. Like the defendants in *Funk* and *Meehan* who sought to relitigate issues years or months after their initial motions were denied, defendants here seek to relitigate this Court's May 29 Order through a differently-styled "stay" motion. They present identical arguments about governmental and qualified immunity, rely on the same authorities, and seek the same relief the Court already denied—avoiding trial on Counts 2-3. This is "nothing more than a motion for reconsideration." *Funk*, 2021 WL 3774196, at *1.

### B. The Motion Is Untimely Under Local Rule 6.3

Local Civil Rule 6.3 requires motions for reconsideration within 14 days. Defendants' motion, filed over five months after the May 29 Order, is untimely. As the *Funk* court noted when denying a successive motion filed years after the original order, parties cannot circumvent filing deadlines by repackaging their arguments under a different label. 2021 WL 3774196, at *1 (deeming motion untimely under both Fed. R. Civ. P. 60(c)(1) and Local Civil Rule 6.3); see also *Payment Card*, 2025 WL 2490442, at *9 (denying as untimely a motion filed months after the underlying order).

### C. Defendants Present Identical Legal Arguments in Both Motions

A comparison of defendants' opposition to certification of their appeal as frivolous (filed April 29, 2025) with their motion for a stay (filed October 3, 2025) confirms they advance the same legal theories and seek the same relief.

2

### *1. Same Jurisdictional Arguments*

In opposing certification, defendants argued that if the district court "is the gatekeeper to an interlocutory appeal and can take away a substantial right of a party by replacing its decision for that which belongs to the Second Circuit, then it has turned itself into a first-tier appellate court." Defs.' Opp'n to Pl.'s Mot. to Certify Appeal as Frivolous, ECF No. 264-2, at 1 (E.D.N.Y. Apr. 29, 2025).

In their stay motion, they repeat this argument nearly verbatim in *Griggs* terms: "the filing of a notice of appeal is an event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Defs.' Ltr. Mot. to Stay Trial, ECF No. 267, at 3 (E.D.N.Y. Oct. 3, 2025).

### *2. Identical Immunity Theories*

Both filings rest on the same New York governmental-function immunity and qualified immunity theories to bar trial on negligent design claims for failure to install platform barriers. Defs.' Opp'n, ECF No. 264-2, at 2 (arguing defendants are "immune from negligence claims arising out of the performance of their governmental functions"); Defs.' Stay Mot., ECF No. 267, at 1 (seeking stay based on "governmental function immunity and qualified immunity").

### *3. Same Authorities and Legal Standards*

Each motion relies on identical case law:

*Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985) - cited in both for the proposition that qualified immunity "is an immunity from suit rather than a mere defense to liability"

- **Opposition Brief**: Pages 6, 8 (ECF No. 264-2, at 6, 8)
- **Stay Motion**: Pages 3 (footnote 3), 6 (ECF No. 267, at 3 n.3, 6)

*Weiss v. Fote*, 7 N.Y.2d 579, 588 (1960) - quoted in both for the principle that "courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits"

- **Opposition Brief**: Pages 5, 7 (ECF No. 264-2, at 5, 7)
- **Stay Motion**: While not explicitly cited by name, the stay motion references the same governmental immunity principles at page 3

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) - regarding jurisdictional divestiture

3

- **Opposition Brief**: While defendants did not cite *Griggs* directly, they opposed plaintiff's *Griggs*-based arguments. Plaintiff had cited and discussed *Griggs* extensively in their motion to certify the appeal as frivolous (ECF No. 264-1, at 9), arguing the divestiture rule should not apply to frivolous appeals
- **Stay Motion**: Pages 3, 4, 6, 7 (ECF No. 267, at 3, 4, 6, 7) - now extensively citing the same case they previously opposed

The fact that defendants now heavily rely on *Griggs* in their stay motion—the very case plaintiff invoked against them in the certification motion—demonstrates they are simply repackaging their arguments. Having opposed plaintiff's *Griggs* analysis in April, defendants now embrace the same precedent in October to seek the identical relief through a different procedural vehicle.

### 4. Identical Factual Predicates

Both motions identify the same two purported factual disputes: (a) the South Korean entity's "Build-Operate-Transfer" proposal for platform barriers, and (b) plaintiff's expert opinion on platform barrier feasibility. Critically, defendants argue in both motions that "even if taken as true" these facts do not defeat immunity as a matter of law. Defs.' Opp'n, ECF No. 264-2, at 5; Defs.' Stay Mot., ECF No. 267, at 5.

### 5. Same Relief Sought

Most tellingly, both motions seek identical relief—preventing trial on Counts 2 and 3 based on immunity grounds. The opposition brief seeks to preserve the appeal to avoid trial on these counts. The stay motion explicitly requests "staying the trial on Plaintiff's negligent design claims." Defs.' Stay Mot., ECF No. 267, at 1.

This comparison demonstrates that defendants' October 3 motion is not a legitimate request for emergency relief based on changed circumstances, but rather an attempt to relitigate immunity arguments this Court already rejected. As Judge Cogan warned in *Funk*, allowing parties to "examin[e] a decision and then plug[] the gaps of a lost motion with additional matters" would "waste judicial resources" and "undermine the finality of decisions." *Funk v. Belneftekhim*, No. 14-CV-376, 2021 WL 3774196, at *2 (E.D.N.Y. Aug. 25, 2021). That is precisely what defendants attempt here.

The fact that defendants filed this motion only after perfecting their appeal to the Second Circuit does not transform it into something new. They could have sought this stay immediately after the May 29 Order if circumstances warranted it. Instead, they waited over five months to present the same arguments under a different label—precisely the type of "successive motion" that courts routinely reject. See *Meehan v. Brookliv LLC*, No. 21-CV-2573, 2022 WL 523545, at *1 (E.D.N.Y. Feb. 21, 2022) ("Numerous courts in this Circuit have rejected successive motions seeking the same

4

relief unless they meet the standard for reconsideration"). Therefore, the October 3 filing should be construed as an untimely motion for reconsideration subject to Local Civil Rule 6.3's 14-day deadline.

## II. DEFENDANTS' MOTION RECYCLES ARGUMENTS ALREADY REJECTED BY THE SECOND CIRCUIT

The defendants' pattern of redundant argumentation extends beyond the district court to their opposition to the plaintiff's motion to dismiss the appeal before the Second Circuit. In that filing, they reiterate the same jurisdictional foundation—relying on the collateral order doctrine and immunity from suit, as articulated in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), and echoed in *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010)—to assert this Court's divestiture of jurisdiction over Counts 2 and 3. Second Circuit Opp'n, Docket No. 25-727, at 2 (2d Cir. May 5, 2025). Like their opposition to the motion to certify the appeal as frivolous (ECF No. 264-2 at 6-7) and the instant stay motion (ECF No. 267 at 3-4), they seek to delay the trial on their immunity defenses pending appellate resolution, citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), to argue that the notice of appeal divests district court authority. Although the Second Circuit opposition does not explicitly request a stay, its underlying objective mirrors the stay motion's plea to halt trial proceedings, reflecting a consistent strategy to delay the trial of Counts 2-3 while the immunity issues remain pending.

The Second Circuit implicitly rejected this argument by its July 22, 2025, ruling (CA2 ECF No. 20), which referred the motion to dismiss to the merits panel to be heard with the appeal, thereby allowing the trial to proceed while the appeal remains pending, consistent with this Court's May 29, 2025, Order (ECF No. 265).

## III. THE COURT PROPERLY RETAINED JURISDICTION

### A. New York State Law Immunities Are Defenses to Liability, Not Immunity from Suit

This Court correctly held that both governmental function immunity and state law qualified immunity under New York law are defenses to liability, not immunity from suit. (May 29 Order at 3-4.) The Second Circuit has definitively resolved this issue: "[D]iscretionary function governmental immunity is merely a defense to liability, rather than an immunity from suit." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 187 (2d Cir. 2008).

The New York Court of Appeals has similarly characterized these defenses as leaving defendants "amenable to suit." *Brown v. State*, 89 N.Y.2d 172, 192 (1996). The qualified immunity doctrine recognized in *Weiss v. Fote*, 7 N.Y.2d 579 (1960), protects only against "liability." *Turturro v. City of New York*, 28 N.Y.3d 469, 486 (2016).

Defendants' reliance on *Miller v. State*, 62 N.Y.2d 506 (1984), is misplaced. While *Miller* uses the phrase "immune from negligence claims," the Second Circuit has clarified that under New York law, this means immunity from liability, not suit. *In re World Trade Ctr.*, 521 F.3d at 181-82.

### B. Defendants Misstate the Qualified Immunity Issue for Trial

Defendants fundamentally mischaracterize what the jury must decide. The question is not whether individual safety devices were "feasible" or "cost-effective." The question is whether defendants may be held liable for their negligent failure to adequately study and have a reasonable basis for their plan (if any) to prevent or mitigate the long standing and frequent hazard of trains striking people (3-5x/wk for decades), resulting in thousands of deaths and catastrophic injuries, in light of their continuing duty to review their plan in the light of its actual operation, without an unjustifiable delay in implementing a proper remedial plan. *Turturro v. City of New York*, 28 N.Y.3d 469, 480 (2016). *See*, NYS PJI 2:225B.

The record definitively shows they did not. Cheryl Kennedy, defendants' former Vice President of System Safety, testified unequivocally that there was no study "how to best prevent or reduce the number of 12-9s in New York City" and specifically none for Atlantic Avenue-Barclays Center station (Kennedy Dep. 214:9-20). Kennedy further admitted defendants never performed the comparative analysis required for an adequate hazard study, including no study comparing "the number of either fatalities or serious injuries, between leaving the system as it was versus adding safety devices" (Kennedy Dep. 215:15-23), no assessment comparing injuries "whether there was a barrier of any kind...compared to not having such a device" (Kennedy Dep. 220:25-221:7), and no study to see which way there were fewer fatalities or catastrophic injuries with or without a lower entry speed of a train into the station (Kennedy Dep. 988:5-10). Glenn Lunden, who testified on September 19, 2025, confirmed he served on the Speed Policy Committee and that the Transit Authority's policies, since inception through 2024, were based on the premise that customers would not enter the train or track bed envelope (Lunden Dep. 330:7-19). He also stated that no analysis done by the committee studied the effect of lowering entry speed into stations to prevent fatalities or catastrophic injuries from train strikes (Lunden Dep. 330:14-19). Other defense witnesses have made similar admissions of a lack of adequate study and no plan to properly remediate the hazard of train strikes in light of the subway system's actual operation.

### C. Defendants Cannot Satisfy the Three-Part Qualified Immunity Test

Under New York law, to establish qualified immunity, defendants must prove: (1) an adequate study of the hazard; (2) a reasonable plan based on that study; and (3) review of the plan in light of its actual operation. *Weiss v. Fote*, 7 N.Y.2d 579 (1960); *Turturro*, 28 N.Y.3d at 484-86.

6

Kennedy and Lunden's admissions establish defendants cannot satisfy any element:

1. **No Adequate Study**: Kennedy confirmed no study existed for preventing platform-track injuries at Atlantic Avenue-Barclays (Kennedy Dep. 214:15-20), and no comparative analysis of safety measures versus the status quo (Kennedy Dep. 215:15-23; 220:25-221:7). Lunden similarly admitted that there was never a study done to see the effect of lowering entry speed of subway trains into stations, thereby allowing the trains to stop in less time and in a shorter distance, to mitigate the hazard of trains striking customers to prevent their resultant deaths or catastrophic injuries. (Lunden Dep. 330:14-19).
2. **No Reasonable Plan**: Without an adequate study addressing the hazard, there could be no reasonable plan. Kennedy characterized their work as merely "assessments" of individual devices, not a comprehensive safety plan. (Kennedy Dep. 220:13-16). Lunden supported this by testifying that his department did not take action to reduce train strikes (Lunden Dep. 243:20-21).
3. **No Review of Actual Operation**: Kennedy admitted defendants could not determine effectiveness: "You can't determine which one had what effect" and "The trend did not really...did not decrease." (Kennedy Dep. 237:10-11; 239:15-16.)

### D. The Dual Jurisdiction Doctrine Permits the Court to Proceed

The Supreme Court in *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996), expressly recognized that district courts may retain jurisdiction when immunity appeals are "patently frivolous": "[I]t is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims."

This Court properly applied Behrens when it certified defendants' appeal as frivolous. The appeal raises no purely legal issues—the immunity defenses turn entirely on disputed facts:

- The feasibility of platform barriers
- Whether foreign vendors offered to install them
- Whether any pre-accident safety study was conducted

These factual disputes render the appeal frivolous and permit this Court to retain jurisdiction.

### E. *Coinbase v. Bielski* Does Not Apply

7

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), addressed mandatory stays for arbitration appeals under the Federal Arbitration Act. That narrow holding does not extend to state law immunity appeals. Unlike arbitration's binary forum-selection issue, qualified immunity appeals involve mixed questions of law and fact. The Second Circuit applies traditional stay factors, not automatic stays. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

### IV. DEFENDANTS MISCHARACTERIZE THE MAY 29 ORDER

#### A. The Court Correctly Applied Controlling Precedent

Defendants argue this Court mischaracterized New York immunity law, but the Order tracks binding Second Circuit precedent. The court properly distinguished between:

- Federal qualified immunity (immunity from suit under *Mitchell v. Forsyth*)
- New York state immunities (defenses to liability under *In re World Trade Ctr.*)

This distinction is not academic—it determines appellate jurisdiction under 28 U.S.C. § 1291.

#### B. *Behrens* Supports, Not Undermines, the Court's Approach

*Behrens* explicitly permits district courts to certify immunity appeals as frivolous to "minimize disruption of the ongoing proceedings." 516 U.S. at 311. The Supreme Court recognized that abuse of successive immunity appeals could be controlled through "summary procedures" to "weed out frivolous claims." *Id.* at 310.

#### C. No "Dual Jurisdiction" Adoption Is Required

Defendants claim the Second Circuit hasn't "endorsed" dual jurisdiction. But *Behrens* itself—Supreme Court precedent—authorizes this approach. Moreover, Second Circuit cases recognize district courts' power to proceed when appeals are frivolous. See *Carroll v. Trump*, 88 F.4th 418, 433 (2d Cir. 2023) (recognizing retention of jurisdiction despite appeal to avoid parties "arbitrarily" halting proceedings).

### V. THE TRADITIONAL STAY FACTORS OVERWHELMINGLY FAVOR PLAINTIFF

Even if analyzed under traditional stay factors, defendants fail each element:

#### A. No Likelihood of Success

8

Defendants' appeal cannot succeed because:

- Their immunity defenses depend on factual disputes
- No pre-accident safety study exists (*Turturro*, 28 N.Y.3d at 484-86)
- CoMET reports show platform doors were established safety standards well before the subject incident
- The Second Circuit has already held these immunities are not from suit

Kennedy's testimony confirms the absence of any qualifying study that could support their defense.

### B. No Irreparable Harm

Defendants assert that proceeding to trial will irreparably harm them by jeopardizing their immunity defenses, but this argument hinges on a flawed premise that trial will extinguish their appellate rights. This is not the case. The Court's finding that defendants' appeal is frivolous does not preclude their ability to pursue a post-trial appeal, preserving their immunity arguments for review by the Second Circuit. If defendants prevail at trial with a defense verdict, the immunity issues become moot, eliminating any harm. Should plaintiff succeed, defendants retain the right to file post-trial motions and appeal any adverse judgment, ensuring their legal protections remain intact without prejudice from proceeding now.

Moreover, allowing the trial to move forward will not erode defendants' immunity defenses but will instead enhance the appellate process. The development of a full factual record at trial—through witness testimony, expert analysis, and evidence—will provide the Second Circuit with a comprehensive foundation to evaluate the immunity claims. This enriched record, absent from the current interlocutory appeal, will enable a more informed and efficient review, potentially resolving factual disputes that underpin the immunity defenses. Far from causing irreparable harm, proceeding to trial strengthens the appellate process, aligning with judicial efficiency and ensuring defendants' rights are fully adjudicated without unnecessary delay. One appeal, based on a complete record, instead of two piecemeal appeals, promotes more efficient and economical use of scarce judicial resources.

### C. Severe Injury to Plaintiff

Plaintiff, a young woman who lost her arm and leg, has waited over nine years since the August 2, 2016 accident. Justice delayed is justice denied, and the plaintiff is entitled to closure and compensation for her catastrophic life-altering injuries. Further delay compounds her suffering. Defendants' complaint about supplemental disclosures is baseless—these timely Rule 26(e) updates concern pre-accident safety standards.

### D. Public Interest Favors Trial

9

The public interest strongly demands a timely resolution after nine years of litigation, ensuring that justice is not further delayed in this matter. Additionally, there is a critical need for accountability regarding public safety failures, particularly in the context of subway system design and operation, to prevent future incidents and protect commuters. Furthermore, deterring dilatory litigation tactics serves to uphold the integrity of the judicial process and prevent unnecessary prolongation of cases that impact all parties involved.

The jury must be properly instructed that defendants bear the burden of proving qualified immunity, which necessitates demonstrating they conducted an adequate pre-accident study of the specific hazard—people falling from platforms and being struck by trains. Kennedy's testimony clearly establishes that defendants cannot meet this burden, as it reveals a lack of such studies. The instructions should clarify that feasibility studies of individual devices do not satisfy this requirement, post-accident assessments are irrelevant to the defense, and defendants must show a comparative analysis—which Kennedy admitted never occurred.

## VI.  PRACTICAL CONSIDERATIONS DEMAND DENIAL

### A. Efficient Trial Management

The October 27, 2025 trial is poised to address all claims together, offering a streamlined approach to resolving this long-standing dispute. Separating the claims into multiple proceedings would introduce significant inefficiencies, including the need for duplicative witness testimony, which would require key individuals to repeat their accounts across different trials. This would also necessitate repetitive introduction of exhibits, doubling the effort to present and authenticate evidence already prepared for a single trial. Perhaps most critically, if the appeal fails, the result would be multiple trials, further prolonging the litigation and compounding the burden on all parties. In this diversity action, many witnesses are not local to New York, with some potentially traveling from as far away as Plaintiff's home country of Brazil. Requiring these witnesses to undertake such extensive travel twice—once for each trial—would be particularly inefficient, imposing significant logistical challenges and financial costs, and risking the loss of critical testimony due to travel-related delays or unwillingness to return.

### B. The Appeal May Actually Help

Proceeding with the trial now offers an opportunity to clarify the factual record for the Second Circuit, enhancing the appellate review process with a complete and robust evidentiary foundation. If defendants prevail on their appeal, any verdicts related to Counts 2 and 3 can be vacated without the need for a retrial, preserving judicial resources and avoiding the redundancy of revisiting adjudicated issues. This approach not only supports judicial efficiency but also ensures that the Second Circuit benefits from a fully developed factual context, potentially resolving ambiguities that

10

might otherwise persist in an interlocutory appeal. The added perspective from a trial could prove instrumental in guiding the appellate court's decision, making the current schedule a constructive step rather than a hindrance.

## VII. THE SECOND CIRCUIT'S LIMITED ROLE

Even if the Second Circuit has jurisdiction, its review is constrained. Under *Johnson v. Jones*, 515 U.S. 304 (1995), appellate courts cannot review factual disputes on qualified immunity appeals. Here, factual disputes permeate every immunity issue:

- Platform barrier feasibility
- Safety study adequacy
- Industry standards
- Operational decisions
- A reasonable plan based on the actual operation of the system

These fact-bound issues make appellate review inappropriate and the stay request meritless.

## CONCLUSION

Defendants' motion is an untimely attempt to relitigate this Court's May 29 Order, which correctly:

- Applied binding Second Circuit precedent on New York immunity law
- Certified their frivolous appeal while retaining jurisdiction
- Refused to transform state liability defenses into federal suit immunities

The record, through Kennedy's own admissions, demonstrates defendants never studied the fundamental question: how to prevent people from falling onto tracks and being struck by trains at their stations. They never compared outcomes with safety devices versus without them. They cannot now manufacture a qualified immunity defense from studies they never conducted and plans they never made.

After nine years, plaintiff deserves her day in court. The motion should be denied, and trial should proceed as scheduled.

Respectfully submitted,

~//s//~
Elliot Shields

cc:   All parties via ECF