**Timothy J. Collazzi**
Member

tcollazzi@lcbf.com

Landman Corsi Ballaine & Ford P.C.

**New Jersey Office**
One Gateway Center
22nd Floor
Newark, NJ 07102

P: 973.623.2700
F: 973.623.4496

**Delaware Office**
300 Delaware Avenue,
Suite 210
Wilmington, DE 19801

P: 302.268.6433
F: 302.514.6505

**New York Office**
120 Broadway
13th Floor
New York, NY 10271

P: 212.238.4800
F: 212.238.4848

**Pennsylvania Office**
One Penn Center
1617 JFK Boulevard, Suite 955
Philadelphia, PA 19103

P: 215.561.8540
F: 215.988.1215

lcbf.com

January 20, 2026

***Via ECF***
Hon. Frederic Block, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***Harger Da Silva v. NYCTA, et al.***
**Docket No. 17-cv-04550 (FB) (VMS)**

Dear Judge Block:

As you know, this office represents Defendants New York City Transit Authority, Metropolitan Transportation Authority, and Raqia Shabazz ("Defendants") in the above-mentioned matter. We write to request that the Court schedule a collateral-source hearing in the above-referenced matter pursuant to New York's CPLR § 4545.

Preliminarily, Plaintiff cannot contest that the collateral source hearing (and deductions) in this matter will be governed by New York law. Indeed, the collateral source rule "affects substantive rights" and, therefore, a federal court sitting in diversity must apply the controlling state law. *See DiGiovanni v. New York Univ.*, 1995 WL 242128 at * 1 (S.D.N.Y. 1995). Here, New York's collateral source is codified at CPLR § 4545, which is "designed to assure that plaintiffs do not receive 'duplicative recoveries' for the same type of loss." *In re September 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015) (citing *Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534 (2002)). Jury awards, therefore, "may not include medical expenses for which an insurer has paid." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 236 fn. 3 (2d Cir. 2014). Because CPLR § 4545 does not outline the procedure for making appropriate collateral-source deductions, trial courts typically conduct post-trial evidentiary hearings to gather facts necessary to determine whether, and the extent to which, a defendant is entitled to an offset. *Liciaga v. New York City Transit Auth.*, 231 A.D.3d 250, 257 (2d Dep't 2024).

During Your Honor's questioning of Kristen Kucsma, she conceded that Plaintiff's insurance would impact her future economic loss. Specifically, Ms. Kucsma explained that "[W]e had these projected expenses, but, ***obviously, some of them are going to be met by health insurance plans***." (Tr. 828:11-17) (emphasis added). Because Your Honor directed the jury not to consider Plaintiff's insurance, they included those expenses in the verdict. *See U.S. v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting

Landman Corsi Ballaine & Ford P.C.

instructions."). Accordingly, the jury awarded Plaintiff compensation for her projected medical expenses, but she will not actually incur those expenses because they will be covered, in whole or in part, by health insurance plans. This is plainly the type of double recovery CPLR § 4545 militates against.

"[A]n application for a collateral source hearing is generally considered timely if made prior to the entry of judgment."[1] *Spzakowski v. Shelby Realty, LLC*, 48 A.D.3d 268 (1st Dep't 2008). A defendant requesting a collateral-source hearing need only "tender some competent evidence from available sources that the plaintiff's economic losses may in the past have been, or may in the future be, replaced, or the plaintiff indemnified, from collateral sources." *Liciaga*, 231 A.D. at 258. ***This burden is lower than a defendants' burden at the hearing itself*** (which is "reasonable certainty"). *See Firmes v. Chase Manhattan Automotive Fin. Corp.*, 50 A.D. 18, 34-35 (2d Dep't 2008) ("McKinney's . . . contains no language applying the reasonable certainty standard to motions that merely seek the conduct of a collateral source hearing. Clearly, defendants' applications for collateral source hearings should be governed by a showing that is less than the ultimate hearing burden.").

Here, there is ample competent evidence that Plaintiff's economic losses were in the past replaced by collateral sources. Similarly, there is ample competent evidence that she will be indemnified in the future from collateral sources. For example:

- Stuart Kahn admitting the numbers in his life care plan were "researched online" not using "insurance databases" but rather "private-paid databases". (Tr. 716).
- Stuart Kahn testified that Plaintiff has insurance.[2] (Tr. 742).
- Stuart Kahn testified that Plaintiff's insurer or a third party would cover a wheelchair every five years. (Tr. 744).
- Kristen Kucsma testified that, in calculating Plaintiff's economic loss, she did not take into consideration whether Plaintiff's insurance would cover because "if something else is going to cover some of these costs, . . . that's typically handled by Your Honor in a post-verdict hearing." (Tr. 827).
- Kristen Kucsma testified that "more likely than not, insurance would cover some of these costs." (Tr. 829).
- Kristen Kucsma testified that "to be fair, I would think some of these things would be

---

[1] Here, at the end of the trial, Defendants alerted the Court of their intent to make an application for a collateral source hearing. And, as of this filing, judgment has not yet been entered against Defendants. Furthermore, Plaintiff has been on notice that her collateral sources would be an issue in this case since Defendant filed their answer. (*See* ECF Doc. # 20 at ¶ 141 (Defendants' Second Affirmative Defense).

[2] While the Court sustained Plaintiff's objection to Defendants' questions regarding insurance, the basis of the objection was the inadmissibility of insurance information before the jury. This testimony is plainly admissible in support of (and at) a collateral-source hearing.

covered by some form of insurance." (Tr. 830).

- Plaintiff, who remains a Brazilian citizen (Tr. 1461),[3] is entitled to publicly-funded healthcare through its Unified Health System, Sistema Único de Saúde ("SUS"). SUS guarantees Brazilians full, universal, and free access to health services.[4]
- Records from Bellevue Hospital associated with her post-incident care demonstrate that she had traveler's insurance that paid for her care (Da Silva 004390 – Da Silva 004391) and that she had insurance available in Brazil when she returned there following her treatment at Bellevue. (Da Silva 004994).
- Records from Massachusetts General Hospital and Physical Medicine & Rehab reflect that she had active insurance through Cigna and through Blue Cross Blue Shield that covered her treatment from August 2018 through at least February 2021 and July 2021 through October 2023. (Da Silva 005400, Da Silva 006144, Da Silva 003648).
- Records from Mount Sinai reflect that she had active insurance from United Healthcare from October 2023 through at least April 2024. (Da Silva 003441).
- Records from Mount Sinai also reflect that she received a wheelchair with power assist through her insurance. (Da Silva 003605).
- Records from Mount Sinai reflect that she received occupational therapy that was 100% covered after her deductible, with no co-pay. (Da Silva 03630).
- Records from MedFirst Home Care and National Seating and Mobility both provided her with repairs and/or replacement parts that were funded by insurance or through other sources. (*See, e.g.* Da Silva 003662; Da Silva 003676; Da Silva 003708; Da Silva 003713).
- Records from Prosthetics in Motion reflect that Plaintiff's insurance company approved her extended warranty for her X3 lower extremity prosthetic (Da Silva 008281) and paid for a replacement socket. (Da Silva 008319 – Da Silva 008320).
- Records from Prosthetics in Motion reflect that Plaintiff's insurance company paid for upper extremity prosthetic. (Da Silva 008324 – Da Silva 008327).

These examples constitute only a small portion of available evidence that demonstrates that Plaintiff's economic losses were in the past replaced by collateral sources, including employer-provided insurance and universal healthcare available in Brazil, and there is ample competent evidence that she will be indemnified in the future from collateral sources, including through her employer-provided insurance, insurance to which she would be eligible through her husband's employer, insurance available through the New York State of Health (New York's Affordable Care Act exchange) if she and her husband both lose their jobs and are both unable to obtain new employment before their eligibility for insurance through COBRA expires, or insurance available to her in her home country through her Brazilian citizenship. *See Liciaga*, 231 A.D.3d at 259 (remanding for collateral source hearing because "by showing that the plaintiff could reduce his own future medical expenses by

---

3 Plaintiff is also a licensed architect and urban planner in Brazil.

4 Ombudsman General, *Sobre o SUS!* https://meususdigital.saude.gov.br/publico/perfil/sobre-sus (last visited December 2, 2025)

millions of dollars by procuring an insurance policy available to him pursuant to the ACA, the defendant necessarily satisfied its burden of demonstrating that such expenses may be paid by a collateral source" (citing *Nunez v City of New York*, 85 A.D.3d 885, 887-888 (2d Dep't 2011)).

* * *

For the reasons above, the Court should grant Defendants' application for a collateral-source hearing under CPLR 4545. We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s/ Timothy J. Collazzi

Timothy J. Collazzi

cc: All counsel of record (via ECF)