Landman Corsi
Ballaine & Ford P.C.

**Timothy J. Collazzi**

Member

tcollazzi@lcbf.com

**New Jersey Office**

One Gateway Center
22nd Floor
Newark, NJ 07102

**P:** 973.623.2700
**F:** 973.623.4496

**Delaware Office**

300 Delaware Avenue,
Suite 210
Wilmington, DE 19801

**P:** 302.268.6433
**F:** 302.514.6505

**New York Office**

120 Broadway
13th Floor
New York, NY 10271

**P:** 212.238.4800
**F:** 212.238.4848

**Pennsylvania Office**

One Penn Center
1617 JFK Boulevard, Suite 955
Philadelphia, PA 19103

**P:** 215.561.8540
**F:** 215.988.1215

lcbf.com

June 8, 2026

<u>*Via ECF*</u>
Hon. Frederic Block, U.S.D.J.
United States District Court
225 Cadman Plaza East
Brooklyn, NY  11201

> Re:  ***Harger Da Silva v. NYCTA, et al.***
> <u>**Docket No. 17-cv-04550 (FB) (VMS)**</u>

Your Honor:

As you know, this office represents Defendants New York City Transit Authority, Metropolitan Transportation Authority, and Raqia Shabazz ("Defendants") in the above-mentioned matter. Defendants respectfully submit this letter in reply to Plaintiff's untimely opposition (*see* Pltf. Opp., Doc. # 361) and in further support of their January 20, 2026 application for a collateral-source hearing pursuant to CPLR § 4545. (*See* Doc. # 360-6).

I.    **Preliminary Statement**

Before addressing Plaintiff's arguments, Defendants are left speechless by the number of instances in which Plaintiff: (1) misrepresents and/or mischaracterizes the holdings of the cases upon which she relies; and (2) attributes specific language to a case that does not appear therein.  To avoid distracting the Court from the operative question - - ***whether Defendants have "tender[ed] some competent evidence . . . that plaintiff's economic losses . . . may in the future be, replaced, or the plaintiff indemnified from collateral sources,"*** *see Liciaga v. New York City Transit Auth.*, 231 A.D.3d 250, 258 (2d Dep't 2024) - - Defendants have appended a chart identifying and explaining each occurrence.  (*See* **Appendix A**).

That aside, Plaintiff's opposition is a prime example of the tail wagging the dog.  Indeed, she spends most of her papers arguing that Defendants' application should be denied because, in her opinion, Defendants will be unable to satisfy their ultimate burden at the hearing, which is "reasonable certainty."   *See* CPLR § 4545. ***But it is well-established that the burden to obtain a hearing is lower than Defendants' ultimate burden***. *See Firmes v. Chase Manhattan Automotive Fin. Corp.*, 50 A.D.3d 18, 34-35 (2d Dep't 2008).

1

## II.    Plaintiff's Arguments Relying on a Heightened Burden Are Irrelevant

As stated, many of Plaintiff's arguments rest on applying a heavier burden to Defendants' proofs supporting their hearing request.  These arguments should be ignored completely.

It is well-established that a defendant requesting a collateral-source hearing need only put forth "some competent evidence" that a plaintiff's losses may be replaced from a collateral source; if it does, the court holds a hearing. *See Firmes*, 50 A.D.3d at 36.  A defendant only has the heavier burden of proving a collateral source exists by clear and convincing evidence (*i.e.* "reasonable certainty") **at the hearing**. *See id.* at 34-35.  The distinction is discussed in cases Plaintiff herself relies on.  *See id.* (the statute "contains no language applying the reasonable certainty standard to motions that merely seek . . .  a collateral source hearing," and "defendants' applications for collateral source hearings should be governed by a showing that is less than the ultimate hearing burden"); *see also Liciaga*, 231 A.D.3d at 257-58 (distinguishing the threshold "some competent evidence" standard from the clear and convincing proof the defendant must ultimately produce at a hearing).

Plaintiff herself concedes this point (*see* Pltf. Opp. at pp. 5, 6 [CPLR § 4545 has two stages and different burdens apply at each stage]), which is fatal to all of her arguments involving whether Defendants' proofs establish, with "reasonable certainty," that Plaintiff will be indemnified from collateral sources for her future medical care.  "Reasonable certainty" is *not* the relevant question before the Court.  Plaintiff is, of course, free to develop such arguments during the hearing.[1]

## III.    Plaintiff's Objections Do Not Bar a Collateral-Source Hearing

Plaintiff throws everything against the wall when objecting to Defendants' request, arguing that Defendants: (1) pled a collateral source affirmative defense but did not produce documents to support same during discovery and, therefore, Defendants are precluded from now relying on any evidence under Rule 37(c)(1); (2) are required to support their application with expert testimony, which they lack; and (3) lack *any* evidence because "arguments of counsel" are not "sworn testimony."  Plaintiff's arguments lack merit.

### a.    Defendants May Rely on Any Admissible Evidence in the Post-Trial Evidentiary Proceeding

Plaintiff's main argument is that Defendants rely on "undisclosed evidence" to support their application for a collateral source offset. In that regard, Plaintiff claims that because Defendants did not produce documents (or disclose an expert) supporting the current application in response to discovery demands, Rule 37(c)(1) automatically bars Defendants from offering *any*

---

[1]    Plaintiff also claims *Brown v. 271 Madison Co.*, 2025 N.Y. Slip Op. 31715(U), Sup. Ct. N.Y. Cnty. May 12, 2025) confirms the "burden-shifting architecture of CPLR 4545."  It does not.  The *Brown* court decided a motion to set aside a verdict and bears no relationship to a request for either a collateral-source hearing *or* the application of the collateral-source doctrine.

evidence at the hearing.  Plaintiff is wrong.

Preliminarily, Plaintiff specifically identifies only one discovery demand targeting this purported "undisclosed evidence," her April 5, 2018 Request for Production of Documents, which sought "[d]ocuments supporting any affirmative defenses stated in [Defendants'] answer."  *See* Pltf. Opp. at p. 2 (quoting Pltf. Exh. 3).  Plaintiff apparently forgets that the week before she served this RFP, ***the Court issued an order bifurcating damages and liability discovery.*** *See* Doc. # 32. Therefore, Plaintiff's Exhibit 3 cannot be read to include anything other than a demand for documents supporting Defendants' *liability* affirmative defenses.

More importantly, Defendants' right to a hearing (and to an ultimate reduction) ***does not*** rely on "undisclosed evidence". It relies on "some competent evidence" exchanged in discovery and presented at trial, including: (1) trial testimony from Plaintiff and her experts; and (2) Plaintiff's own treatment records, which is permissible. *See*, *e.g.*, *Firmes*, 50 A.D.3d at 35-36 (describing discovery mechanisms available for defendants to acquire collateral-source information, including demands for collateral-source information, deposition testimony, and demands for medical records).  At the hearing, Defendants intend to rely on, *e.g.*, testimony from Plaintiff's own treating physicians, including those located in Brazil, which is also permissible. *See, e.g., Gibson v. CSX Transp., Inc.*, No. 1:07-cv-156, 2008 WL 11355393 (N.D.N.Y. Nov. 3, 2008) (a plaintiff's treating physicians are competent to testify about future medical costs without being designated as experts).  Notably, Plaintiff herself, other than making this general, frivolous argument, does not identify *any* specific evidence cited in Defendants' application that was allegedly "undisclosed."

But even if Defendants did intend to rely on some undisclosed evidence, preclusion under Rule 37(c)(1) is not - - as Plaintiff contends - - automatic.  *New York v. United Parcel Service, Inc.*, 942 F.3d 554, 591 (2d Cir. 2019) (holding that "adequate pre-trial notice to counter" a party's claim is sufficient to affirm that a Rule 26 violation that may have occurred was harmless). Plaintiff disagrees and claims *Design Strategy, Inc. v. Davis*, supports her argument.  It does not and, in fact, expressly holds that the District Court "***err[ed] in its determination that 'preclusion is mandatory*** ' under Rule 37(c)(1)." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006).  In other words, the court rejected Plaintiff's bright-line rule for preclusion.  Instead, a court evaluating whether a purported violation of Rule 26 will result in Rule 37(c)(1) sanctions is a fact-sensitive inquiry that considers: (1) the offending party's explanation; (2) the importance of the precluded evidence; (3) the prejudice to the opposing party; and (4) the possibility of a continuance to cure the prejudice. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  This fact sensitive inquiry would be moot if preclusion were "automatic."[2]

Plaintiff's reliance on *iRobot Corp. v. Expeditors Int'l of Wash.*, is similarly misplaced. *See iRobot Corp. v. Expeditors Int'l of Wash.*, No. 23-cv-0580, 2026 WL 809964.  There, the court was deciding a motion for summary judgment, where a movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1 (citing Fed. R. Civ. P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Clearly, the

---

[2]    To the extent the Court entertains Plaintiff's argument, which it should not, all factors weigh in Defendants' favor.

standard for a request for a collateral-source hearing - - "some competent evidence"- - is lower than it is for a motion to decide a case on its merits. Furthermore, the cherry-picked language Plaintiff attributes to Judge Bulsara relates to his rejection of "facts" offered in a brief supporting a motion for summary judgment that were not in a party's statement of material facts, which is clearly inapplicable to the current issue.[3]

### b. Defendants' Request for a Hearing Relies on Sworn Testimony and Records Produced in Discovery, Not on the Argument of Counsel

Plaintiff next argues that Defendants offered "only a four-page letter from counsel" and that "Counsel's argument is not evidence." This argument warrants no attention as Plaintiff plainly ignores Defendants' proofs. *See* Defendants' 1/20 Letter ("Mov. Br.") at pp. 2-3 (Defendants' tendering "some evidence" that Plaintiff's future medical costs will be offset by a collateral source including: Dr. Kahn's trial testimony that Plaintiff has insurance and that her insurer or another third party would replace a wheelchair every five years [Tr. 742, 744]; and medical records showing Plaintiff's insurer, among other things, supplied both a power-assist wheelchair and an upper-limb prosthetic and approved an extended warranty and paid for a replacement socket on her lower-limb prosthetic [Da Silva 003605; 003630; 008281, 008319-008320; 008324-008327]).

### c. Defendants Are Not Required to Present Expert Testimony to Obtain a Hearing

Unable to contradict the trial testimony from her experts *or* the contents of her medical records, Plaintiff also invents an "evidentiary rule" that she claims Defendants failed to meet. Specifically, Plaintiff claims *Liciaga* requires a party requesting a collateral-source hearing to submit supporting affidavits from an insurance broker *and* a forensic economist. Plaintiff's argument is baseless.

Plaintiff misinterprets the *Liciaga* court's real holding, which states that a defendant need only "tender some competent evidence from available sources that the plaintiff's economic losses may . . . be replaced." *Liciaga*, 231 A.D.3d at 250 (quoting *Firmes v. Chase Manhattan Auto. Fin. Corp.*, 50 A.D.3d 18, 36 (2d Dep't 2008)). While the court found the defendant had satisfied its burden of submitting "some competent evidence" via expert affidavits, *the court did not hold that package of evidence is the minimum price of a hearing*. Therefore, it is simply untrue that *Liciaga* sets "the floor" for demonstrating a party's right to a collateral-source hearing.

Plaintiff erroneously points to *Dowdy v. Brooklyn Hospital Center* as supporting her

---

[3]   Similarly, Plaintiff's claim that *iRobot* requires a party "seeking judicial relief" to "set forth specific facts . . ." (*i.e.* "some hard evidence") rather than "rely[ing] on mere conclusory allegations [and] speculation" is inaccurate. *Plaintiff omits the critical context of these statements - - that the Court was making a merits-based decision at the summary-judgment stage*, where a party is required to set forth, in admissible form, the evidence supporting its entitlement to a merits judgment. CPLR § 4545 imposes no such requirement to obtain a hearing. If the Court were to impose such a requirement, it would obviate the need for a hearing; CPLR § 4545 determinations would be made on papers alone.

position and suggests it overruled *Firmes*. *See Dowdy v. Brooklyn Hospital Center*, No. 507103/16, 2026 WL 1155463 (2d Dep't Apr. 29, 2026). But *Dowdy* did not overrule *Firmes*; in fact, it relied on it when explaining that a defendant "must tender some competent evidence ***from available sources***" to receive a hearing.  *Id.* at 3 (quoting *Firmes*, 50 A.D.3d at 36) (emphasis added).  And the Second Department affirmed the trial court's denial of a hearing because "the defendant did not submit ***any*** evidence that the plaintiff could mitigate future medical expenses by obtaining a health insurance plan under the Patient Protection and Affordable Care Act ["ACA"]." *Dowdy*, 2026 WL 1155463 at \*3 (emphasis added).[4] Here, on the other hand, both Defendants and *Plaintiff herself* have put forth evidence that Plaintiff has insurance resources available to her and that at least some of her future medical costs will be offset from collateral sources.  (Mov. Br. at pp. 2-3). The strength of that evidence is a question for the Court to determine at a hearing, not Plaintiff.

*Riley v. Rupp*, another case on which Plaintiff relies, is similarly inapplicable. *See Riley v. Rupp*, 233 A.D.3d 1313 (3d Dep't 2024).  Indeed, *Riley* has nothing to do with a court's decision to grant or deny a collateral-source hearing; instead, it addresses whether a CPLR § 4545 reduction is available on a wrongful-birth claim and whether a summary judgment motion is an appropriate vehicle for obtaining such a reduction. Based on the record before it, the *Riley* court denied the request as lacking any support, noting "the sort of facts and arguments typically marshaled post-trial in a collateral source hearing [were] not established in [the] record," and as lacking "any meaningful information concerning the specific statutory provisions underlying their argument." *Id*. at 1316.  Again, the record here establishes the factual predicate regarding the nature of the benefits available to Plaintiff, and Defendants have provided meaningful information regarding the basis for their arguments.

Finally, Plaintiff again relies on *iRobot*, this time claiming it distinguishes *Liciaga* as a "narrow exception" and "adopts the broader rule that the duty to mitigate does not impose on a plaintiff a duty to seek recovery from insurance." (Pl. Br. at p. 3).  But *iRobot* does not make any such distinction, nor does it narrow *Liciaga*.  Instead, the court in *iRobot*, while refusing to "impose a specific obligation on how to [mitigate]," said that a court could evaluate whether a plaintiff's refusal to pursue insurance proceeds was reasonable. *iRobot*, 2026 WL 809964, at \*10. Notwithstanding same, the right to a collateral-source hearing under CPLR § 4545 as articulated in *Liciaga* is not a "narrow exception" to any rule related to a plaintiff's failure to mitigate - - it is, instead, ***the actual rule*** on collateral-source reductions. Whether a plaintiff chooses to avail herself of available insurance is irrelevant to the question under CPLR § 4545 and *Liciaga*, which is whether such insurance is or was available.

---

[4]    Notably, the "cf." signal that Plaintiff overemphasizes does not mean that parties are always required to provide the exact same evidence as the defendants in *Liciaga*. If the Second Department intended to read that requirement into CPLR § 4545, it would not have reiterated the requirement for evidence from "available sources" as articulated in *Firmes* - - it would have introduced a requirement for evidence from expert sources.



### II.    Plaintiff's Remaining Arguments are for the Hearing

#### A.    <u>Plaintiff Currently has Insurance and, in the Future, May Have Coverage Under the Affordable Car Act</u>

Plaintiff argues that Defendants failed to establish the certainty of any future collateral source.  First, Plaintiff argues: her right to future coverage under the Affordable Care Act ("ACA") is uncertain (including because her immigration status is unestablished); and that she cannot be required to relocate to Brazil to use its public health system.[5] She also argues that no future benefit is secured by a "contract or otherwise enforceable agreement." CPLR § 4545(a); *see Kihl v. Pfeffer*, 47 A.D.3d 154, 164 (2d Dep't 2007). Plaintiff concludes that any offset would lack the "direct correspondence" between an awarded loss and a collateral payment that the law requires. *Bryant v. New York City Health & Hosps. Corp.*, 93 N.Y.2d 592, 607 (1999); *accord Oden v. Chemung County Indus. Dev. Agency*, 87 N.Y.2d 81, 89 (1995); *Johnson v. New York City Transit Auth.*, 88 A.D.3d 321, 328 (1st Dep't 2011). These are questions for a hearing, as they all relate to whether Plaintiff's losses "will" (*i.e.*, with "reasonable certainty") be replaced from a collateral source. But again, here, the threshold is stated using a term of possibility and uncertainty - - "may." *Liciaga*, 231 A.D.3d at 258. Thus, Plaintiff's demand for certainty is premature.

Under the correct standard, Defendant's burden of proof is met. *Liciaga* held that "by showing that the plaintiff *could reduce* his own future medical expenses by millions of dollars by procuring an insurance policy available to him pursuant to the ACA, the defendant necessarily *satisfied its burden* of demonstrating that such expenses may be paid by a collateral source." *Liciaga*, 231 A.D.3d at 259 (emphasis added); *see also Nunez v. City of New York*, 85 A.D.3d 885, 887-888 (2d Dep't 2011).   Additionally, Plaintiff has a constitutionally protected right to healthcare in Brazil.  *See* CONSTITUIÇÃO DA REPÚBLICA FEDERATIVA DO BRASIL, Oct. 5, 1988, Art. VIII, § II. Plaintiff is also currently insured through her employer, and that coverage has already paid for the same categories of care the jury was asked to fund.  Defendants have thus shown that she could reduce her own future medical expenses through insurance or through the Brazilian healthcare system, necessarily satisfying their burden at this stage. Evidence that a collateral source that is paying these very losses today is not the speculative future contingency Plaintiff is attacking. In fact, it is evidence of replacement in the most concrete form, and it alone should clear the threshold that currently asks only whether losses "may" be replaced. The insurers have already paid for the very kinds of care the jury was asked to fund, including a wheelchair, occupational therapy, and prosthetics.

#### B.    <u>There is No "Double-Discount"</u>

Finally, Plaintiff argues a collateral source reduction would provide Defendants with a "double-discount" *because* (according to Plaintiff) the jury heard about insurance and, therefore, must have already reduced its award by accounting for same. However, the trial record does not

---

[5]    Defendants do not believe that Plaintiff's immigration status is relevant to her eligibility to health insurance under the ACA. To the extent Plaintiff feels differently (*see* Pltf. Opp. at p. 8), she is free to develop and argue that point at the hearing.

4916-2037-8547v.2

support that premise. ***This Court instructed the jury to not consider Plaintiff's insurance at all***, and "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions." *U.S. v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002). Moreover, the law would not let that award stand untouched, because a damages award "may not include medical expenses for which an insurer has paid." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 236 n.3 (2d Cir. 2014). Therefore, through a collateral-source hearing, the court removes the insured portion that the jury was never allowed to see, which prevents a double *recovery* from occurring. *In re September 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015); *Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534 (2002). That is the key, fatal flaw in Plaintiff's double-discount theory.

*   *   *

For the reasons above, and those set forth in Defendants' January 20, 2026 application, the Court should grant Defendants' request for a collateral-source hearing under CPLR § 4545. Granting the hearing decides nothing about the ultimate offset; instead, it provides the forum in which Plaintiff's objections and Defendants' proofs can be fully introduced and weighed on a full record.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s/ Timothy J. Collazzi

Timothy J. Collazzi

cc:   All counsel of record (via ECF)

4916-2037-8547v.2

# APPENDIX A

| Pl. Br. | Case Citation | Plaintiff's Claim | Explanation of Inaccuracy |
|---|---|---|---|
| p. 1 | *Liciaga v. New York City Transit Auth.*, 231 A.D.3d 250 (2d Dep't 2024). | "The *Liciaga* defendant only crossed the threshold for a hearing because it submitted affidavits from a licensed insurance broker identifying a specific Fidelis policy and from a forensic economist quantifying the offset." | The court in *Liciaga* did not hold that expert affidavits were **necessary** to entitle the defendants to a collateral-source hearing; it merely found that such evidence was "competent." The threshold to obtain a collateral-source hearing is not expert affidavits; it is "some competent evidence." |
| p. 2 | | "In a properly contested collateral source proceeding, the defendant typically retains and timely discloses (a) a licensed insurance broker who identifies a specific available policy with specific premiums, deductibles, out-of-pocket maximums, network composition, and benefit content; and (b) a forensic economist who quantifies the offset year-by-year over the damages period." | Preliminarily, Plaintiff's use of the word "typical" undermines her claim that experts are required. Notwithstanding same, *Liciaga* does not support the proposition that either of these experts are "typically retain[ed]" to support collateral-source proceedings. Nor does Plaintiff identify any other case in which a party seeking a CPLR 4545 hearing was required to disclose affidavits from a licensed insurance broker or a forensic economist. If there were such a case, certainly Plaintiff would have pointed to it. |
| p. 4 | | "The *Liciaga* defendant met that bar *only because* it submitted 'affidavits from a licensed insurance broker and a forensic economist.'" | This is a fundamental misrepresentation of *Liciaga*. While *Liciaga* did find that those items were *sufficient* to reach the threshold, it did not hold that they were *necessary*. Instead, *Liciaga* explained that each situation must be "judged on its own unique facts and merits" and relied on *Firmes v. Chase Manhattan Auto. Fin. Corp.*, which outlines the many types of evidence that may be sufficient to satisfy the "some competent evidence" standard. |
| p. 5 | | "The Second Department's holding in *Liciaga* turned on the specificity of the defense evidentiary package." | *Liciaga* makes no such statement. Nowhere does the *Liciaga* court suggest that its decision that a CPLR 4545 hearing was appropriate required those particular materials. It merely explains why those particular materials were sufficient in that case. In fact, it notes that CPLR 4545 supports "afford[ing] the defendant the opportunity to present its evidence at a collateral source hearing." The "some competent evidence" standard *Liciaga* articulates is a far cry from the much higher standard - - specifically requiring a particular type of expert affidavits - - that Plaintiff reads it to impose. |

| | | | |
|---|---|---|---|
| p. 1-2 | *Dowdy v. Brookyln Hospital Center*, ---N.Y.S.3d---, 2026 WL 1155463, 2026 Slip Op. 02630 | The Second Department "denied a defendant's request for a CPLR 4545 hearing because 'the defendant did not submit any evidence that the plaintiff could mitigate future medical expenses by obtaining a health insurance plan under the Patient Protection and Affordable Care Act.'" | First, the defendant in *Dowdy* argued only that it was entitled to an offset based on the ACA, but it failed to submit *any* evidence supporting the availability of same. Here, Defendants have pointed to ample evidence in the record supporting the existence of available insurance.<br><br>Further, this quote is taken out of context. It ignores the prior sentence in *Dowdy*, which explains that a defendant "must tender **some competent evidence from available sources** that the plaintiff's economic losses may in the past have been, or may in the future be, replaced, or the plaintiff indemnified" and cites *Firmes v. Chase Manhattan Auto. Fin. Corp.*, 50 A.D.3d 18 (2d Dep't 2008) (emphasis added). *Firmes* explains that there are many ways, under New York's procedural rules, to satisfy this burden: demands for collateral source information, pretrial depositions, collateral source providers, medical records, employment records, and trial testimony. These are exactly the types of proofs upon which Defendants rely. |
| p. 5 | | "The [cf] signal tells the reader: this is what *Liciaga* would have looked like if the defendant had not submitted broker and economist affidavits." | This signal is in reference to the *Dowdy* defendant's failure to provide any evidence that the plaintiff could obtain an ACA plan, the only insurance for which it sought an offset, in comparison to *Liciaga*, where the defendant did submit such proof. It does not mean that a defendant needs an insurance expert and an economist. It means a defendant arguing that a plaintiff could obtain an ACA plan needs "some evidence" that the plaintiff could obtain an ACA policy - - there is no basis to believe it requires an expert. |
| p. 2 | *Kihl v. Pfeffer*, 47 A.D.3d 154 | "Future ACA-marketplace coverage, future Medicaid eligibility (for a non-citizen, foreign-trained professional), and theoretical Brazilian SUS coverage are speculative as a matter of law and cannot meet the 'reasonably certainty'/ 'highly probable' burden." | This case does not find as "as a matter of law" that future coverage is "speculative." Instead, in a fact-sensitive inquiry, the court determined that the plaintiff's husband's employer-sponsored healthcare was not reasonably certain to continue because there had been layoffs at his company and he did not intend to remain at his present job. Here, Plaintiff's testimony at trial supports that she likes her job, that she intends to secure a license in New York to work as an architect, and that she is licensed to work as an architect and urban planner in Brazil. Further, her experts testified regarding her work-life expectancy. At a hearing, the court will be able to determine whether, based on Plaintiff's testimony regarding her job and her work-life expectancy, Defendants are entitled to an offset on that basis. |

| | | | Also, *Kihl* did not determine that a defendant was not entitled to a hearing on this basis; the trial court *granted* the defendants a hearing and, after hearing their evidence, denied their requested offset. |
|---|---|---|---|
| p. 3 | *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) | "The Second Circuit has held that preclusion under Rule 37(c)(1) is 'self-executing' and 'automatic.'" | The Second Circuit does not and has not issued such a holding. The Court used the phrase "self-executing" once in *Design Strategy* - - in quoting a holding from the First Circuit that the **Second Circuit explicitly declined to adopt**. The Court also explicitly finds that preclusion is *not* automatic; it explains that the characterization of preclusion sanctions as "automatic . . . cannot be squared with the plain language" of the rule. |
| p. 3 | *iRobot Corp. v. Expeditors International of Washington*, No. 23-cv-0580, 2026 WL 809964 (E.D.N.Y. Mar. 24, 2026) | "Judge Bulsara held that Local Civil Rule 56.1 and Rule 26 disclosure obligations are strictly enforced." | Judge Bulsara held no such thing. Judge Bulsara's opinion does not even mention Rule 26. And Local Rule 56.1 does not impose "disclosure obligations" - - it articulates the requirements for a summary judgment motion's statement of facts. |
| p. 3 | | "Judge Bulsara held that Local Civil Rule 56.1 and Rule 26 disclosure obligations are strictly enforced: 'much of the evidence the parties rely on in their briefs and for their arguments is nowhere to be found in the Rule 56.1 statements – specifically the findings of [the defendant's] experts . . . As such, the Court does not include those statements below or in deciding the motions themselves.'" | This is a misrepresentation of Judge Bulsara's holding and overall decision. In context, the parties - - who had filed cross-motions for summary judgment - - had included in their briefs material facts that were not in their Rule 56.1 statements of material facts. The language Plaintiff cites comes from Judge Bulsara's decision not to consider those facts left out of their Rule 56.1 statements. |
| p. 3 | | "A party seeking judicial relief 'must set forth specific facts…; he or she may not rely on mere conclusory allegations nor speculation but instead must offer some hard evidence.'" | First, this quote comes from a parenthetical explaining a case the court cited related to admissibility concerns. Second, ***Plaintiff omits the beginning and middle of the sentence*** because the omitted language makes it clear the court is referring to summary judgment standards: "[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" |

| p. 3 | | | "And critically, '[l]egal arguments are impermissible' as a substitute for evidence; they 'are to be disregarded.'" | Again, **Plaintiff omits the middle of a sentence** because it makes clear the court is referring to summary judgment requirements, which require a showing on the merits that a party is entitled to judgment: "Furthermore, '[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.'" |
| p. 3 | | | "*iRobot* expressly distinguishes *Liciaga* as a narrow exception and adopts the broader rule that the duty to mitigate does not impose on a plaintiff a duty to seek recovery from insurance." | *iRobot* does not distinguish *Liciaga* as a narrow exception to a broad rule; instead, the Court explains that in the context of mitigation of damages, it could not find as a matter of law that a party's failure to mitigate its damages by utilizing its insurance was *unreasonable*. It explains that *Liciaga* was "inapposite" to the facts of *iRobot* - - in *Liciaga*, as a matter of law, the plaintiff was legally required to obtain insurance pursuant to the ACA.<br><br>But even if this were an accurate statement of law, it would be irrelevant. Whether Plaintiff failed to mitigate her damages - - or if she is required to mitigate her damages by procuring insurance - - is irrelevant to the question asked under CPLR 4545, which is whether collateral sources are or will be *available*. |
| p. 4 | *United States v. Lumiere*, 249 F. Supp. 3d 748, 766 (S.D.N.Y. 2017) | | "It is well-settled that 'Counsel's argument is not evidence.'" | This quote does not appear in *Lumiere* and *Lumiere*, which denies a motion to vacate a guilty verdict in a criminal case, does not address at all how courts consider the arguments of counsel in briefs. And the pin cite leads to: (1) a discussion of the propriety of a jury charge related to a criminal defendant's knowledge of illegal conduct and the evidence that supported the charge; and (2) a discussion of the propriety of a jury charge that contained a hypothetical. |
| p. 4 | *Kulhawik v. Holder*, 571 F.3d 296 (2d Cir. 2009) | | "An attorney's unsworn statements in a brief are not evidence." | While *Kulhawik* articulates this principle, this statement is out of context in two key respects: first, in *Kulhawik*, the parties were making an evidentiary record regarding whether a petitioner in an immigration hearing had exceptional circumstances leading to his failure to appear for a hearing. Here, the purpose of Defendants' motion is not to make an evidentiary record - - it is to seek an opportunity to make one.<br><br>Second, the Court in *Kulhawik* required the trial court to consider an attorney's statements under penalty of perjury in an affidavit or an affirmation. Aside from the fact that it has long been the parties' practice before this Court to submit letter briefs with |

| | | | factual contentions, the evidentiary statements Defendants ask the Court to consider are all part of the evidentiary record or refer to legal principles; they are not mere statements of counsel. |
|---|---|---|---|
| p. 5 | *Nunez v. City of New York*, 85 A.D.3d 885 (2d Dep't 2011) | "Without specificity there is no threshold showing tender, and no hearing. *See also Nunez* . . . (offset based on expert showing of available coverage)" | *Nunez* says no such thing. And *Nunez* contains no information whatsoever regarding the substance of Defendants evidentiary showing and certainly does not state that the defendant utilized expert evidence or proffered an insurance policy. It merely states that "Because the defendant proffered evidence showing its entitlement to a collateral-source hearing, the Supreme Court erred in denying that branch of its motion." |
| p. 5-6 | *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) | Absent guidance from the New York Court of Appeals, a court should give substantial weight to the most recent and on-point Appellate Division decision. | There is no support for this contention at Plaintiff's pin cite, which describes the Appellate Division's cases as "not entirely persuasive" and then distinguishes them from the case at issue.<br><br>It does not suggest that federal courts should give them "substantial weight" - - it describes Appellate Division opinions as "helpful indicator[s] of how the New York Court of Appeals would rule on [an] issue" and makes no reference to the recency of the Appellate Division's opinion as a factor, let alone an important or decisive one. |
| p. 7 | *Riley v. Rupp,* 233 A.D.3d 1313 (3d Dep't 2024) | *Riley* held that "the defendant's papers were wholly inadequate for resolution of defendants' collateral source contentions" where no factual record had been developed. | This misstates *Riley*'s holding and procedural posture. In *Riley*, the defendant sought summary judgment on the collateral-source issue before trial, and the court held that CPLR 4545 required that any offset occur after trial.<br><br>Further, the *Riley* defendants were not seeking a collateral-source hearing; they were seeking a decision on the merits at summary judgment.<br><br>Additionally, the Court found that the record was inadequate to resolve the defendants' contentions that they were entitled to a collateral-source reduction; the court did not resolve the issue, meaning that whether defendants were entitled to a reduction remained an open question. |

| | | | Further, the court did not find that "no factual record had been developed" - - instead, *in dicta*, it found that the defendants cited to no proof that supported their contentions. In contrast, Defendants here cite ample record evidence. |
|---|---|---|---|
| p. 6 | *Brown v. 271 Madison Co.*, No. 152267/2015, 2025 N.Y. Slip. Op. 31715(U) (N.Y. Cnty. May 12, 2025) | Justice d'Auguste's decision . . . confirms the burden-shifting architecture of CPLR 4545. | *Brown* does no analysis of CPLR 4545. *Brown* is a decision on a motion to set aside the verdict related to: (1) whether there was a reasonable basis for the jury to find defendant liable; (2) the admissibility of expert testimony; (3) whether a jury can make a negative inference from destruction of evidence without an instruction; (4) whether there was a reasonable basis for the jury's evaluation of the scope of the plaintiff's injuries; (5) a challenge to the reasonableness of the jury's award; and (6) improper comments during trial. Its only reference to CPLR 4545 is a footnote stating that "[t]he Court will conduct a collateral source hearing, as requested by defendant." |
| | | In *Brown*, the defendant cleared the threshold by tendering specific ACA exchange policies, a licensed insurance broker's affidavit, and a forensic economist's quantified offset calculations—precisely the evidentiary package *Liciaga* describes. Only then did any obligation arise on plaintiff to respond. | Putting aside that *Brown* has no relevance to CPLR 4545 at all, *Brown* contains no reference to ACA policies. Its **only** reference to insurance relates to an insurance company's destruction of video footage. Its only reference to an economist relates to the plaintiff's economist's testimony related to the cost of future personal assistance needs. And it makes no reference whatsoever to offset calculations. |
| p. 7 | *In re September 11 Litigation*, 802 F.3d 314 (2d Cir. 2015) | Plaintiff cites this case to support the proposition that "CPLR 4545 was intended to eliminate double recoveries, not provide defendants and their insurers with an undeserved windfall." | This case's only reference to CPLR 4545 is affirming the district court's issuance of an offset where it included a deduction for costs the insured would incur to investigate its own claims. |
| p. 10 | | Plaintiff claims this case supports the proposition that "[w]here a jury has heard insurance testimony and accordingly discounted its award, a court-ordered | This case does not support that proposition. The trial underlying this appeal was a bench trial and the offset was determined before the liability and damages trials. And the Second Circuit made clear that the trial court did *not* err in reducing the potential tort awards by the value of the insurance recoveries for the same category of loss. Further, this addressed only past losses and recoveries - - where the plaintiff had already been |

| | | offset is not anti-duplication but anti-recovery." | reimbursed for a loss that would not increase in the future - - whereas, here, Defendants seek an offset only for future expenses because the jury made no award for past expenses. |
|---|---|---|---|
| p. 10 | *Hyosung America v. Sumagh Textile*, 25 F. Supp. 2d 376, 389 (S.D.N.Y. 1998) | "The duty to mitigate damages does not require an injured plaintiff to relocate to a foreign country." | This case says nothing about the necessity of relocating to a foreign country, even by analogy (which Plaintiff does not provide). At Plaintiff's pin cite, the court finds that the duty to mitigate does not impose on a plaintiff a duty to obtain compensation from its insurers, which relates to use of, and not availability of, insurance. Plaintiff also forgets she testified about her intent to return to Brazil. |
| p. 10 | *Malmberg v. United States*, 816 F.3d 185, 196 (2d Cir. 2016) | Plaintiff cites this case for the proposition that the court "reject[ed] analogous 'forced VA care theory.'" | While the Court did reject such a theory, it did not do so on an analogous basis. Instead, the Court was answering the question of "whether an injured plaintiff is subject to an offset because he is entitled to receive services from a tortfeasor responsible for his injuries." |
| p. 10 | *Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534 (2002) | Plaintiff claims this case supports the proposition that "[w]here a jury has heard insurance testimony and accordingly discounted its award, a court-ordered offset is not anti-duplication but anti-recovery." | This case does not support this proposition. It has nothing to do with a jury discounting an award. Instead, it addresses, in a real property context, whether the collateral-source payments correspond to the plaintiff's real property loss. |
| p. 10 | *Bryant v. New York City Health & Hosps. Corp.*, 93 N.Y.2d 592 (1999) | Plaintiff claims this case supports the proposition that "[w]here a jury has heard insurance testimony and accordingly discounted its award, a court-ordered offset is not anti-duplication but anti-recovery." | This case does not support this proposition. It has nothing to do with a jury discounting an award. Instead, it explains that because the Social Security Act's child survivor benefits are intended to replace a parent's earnings, an offset is appropriate. |